**30**

Holly S. Burgess (SBN 104757)
LAW OFFICES OF HOLLY S. BURGESS
680 Auburn Folsom Road, Suite 109
Auburn, CA  95661
Telephone:  (530) 889-8900
Facsimile:   (530) 889-8988
hollyburgess@lohsb.com

Attorney for Plaintiffs,
CHRISTIAN PEDERSEN and SONIKA TINKER

THE UNITED STATES DISTRICT COURT

THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| CHRISTIAN PEDERSEN and SONIKA TINKER, <br><br> Plaintiffs; <br><br> vs. <br><br> GREENPOINT MORTGAGE FUNDING, INC., *a New York corporation*; MARIN CONVEYANCING CORP.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; QUALITY LOAN SERVICE CORP.; AURORA LOAN SERVICES; LSI TITLE COMPANY; GREENPOINT MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR1; and DOES 1 THROUGH 20, <br><br> Defendants. | ) **CASE NO:** <br> ) <br> ) **COMPLAINT FOR:** <br> ) 1. VIOLATION OF HOMEOWNERS <br> )     EQUITY PROTECTION ACT; <br> ) 2. VIOLATIONS OF REAL ESTATE <br> )     SETTLEMENT PROCEDURES ACT; <br> ) 3. VIOLATIONS OF TRUTH IN <br> )     LENDING ACT; <br> ) 4. VIOLATIONS OF FAIR CREDIT <br> )     REPORTING ACT; <br> ) 5. FRAUDULENT MISREPRESENTA- <br> )     TION; <br> ) 6. BREACH OF FIDUCIARY DUTIES; <br> ) 7. UNJUST ENRICHMENT; <br> ) 8. CIVIL CONSPIRACY; <br> ) 9. CIVIL RICO VIOLATIONS; <br> ) 10. QUIET TITLE <br> ) 11. USURY AND FRAUD; <br> ) 12. WRONGFUL FORECLOSURE; <br> ) 13. BREACH OF SECURITY <br> )     INSTRUMENT <br> ) <br> ) **PLAINTIFFS DEMANDS A JURY** <br> ) **TRIAL** |

## PARTIES

1.      Plaintiffs CHRISTIAN PEDERSEN and SONIKA TINKER ("Plaintiffs" or

"TINKER"), are the owners of real property located at 1977 Green Meadow Lane, Meadow Vista,

California 95722, APN: 072-043-043-000 ("the Subject Property").  The legal description of the

- 1 -

Subject Property is fully described in **Exhibit "A"**, attached hereto and incorporated herein by reference.

2.      Defendant GREENPOINT MORTGAGE FUNDING, INC., *a New York corporation* ("GREENPOINT MORTGAGE"), was at all times mentioned herein engaged in the business of banking services, in the county of Placer, California.

3.      Defendant MARIN CONVEYANCING CORP  ("MARIN CONVEYANCING"), on information and belief, at all times mentioned in this Complaint was engaged in the business of title insurance, banking services, including foreclosure, and acting as trustee for banks, mortgage holders and lien holders in the county of Placer, California.

4.      Defendant QUALITY LOAN SERVICES CORPORATION ("QUALITY LOAN") on information and belief,  at all times mentioned in this Complaint was engaged in the business of title insurance, banking services, including foreclosure, and acting as trustee for banks, mortgage holders and lien holders in the county of Placer, California.

5.      Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") at all times relevant herein was incorporated in the state of Delaware, with its principal place of business in Reston, Virginia.  MERS was conducting business including, but not limited to, operating a database, assigning mortgages (specifically including an attempt to assign the subject mortgage herein) in violation of California Corporations Code section 191(d) in the county of Placer, California.

6.      Defendant AURORA LOAN SERVICES on information and belief, at all times mentioned in this Complaint was engaged in the business of banking services and servicing of residential mortgages in the county of Placer, California.

7.      Defendant LSI TITLE COMPANY ("LSI"), on information and belief, at all times mentioned in this Complaint was engaged in the business of title insurance, banking services, including foreclosure, and acting as trustee for banks, mortgage holders and lien holders in the county of Placer, California.

- 2-

**COMPLAINT**

8.      GREENPOINTMORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR1 ("GREENPOINT TRUST") is an unregistered entity in California, based on information and belief, was at all relevant times mentioned herein a pooling and servicing trust of mortgages, in which the Subject mortgage and Property were placed.  Based on information and belief, GREENPOINT TRUST is or was the holder of the subject mortgage note.

9.      Defendants Doe 1 through Doe 10 are believed to be the current beneficiaries of the Deed of Trust, if the lien has not been extinguished by operation of law.

10.     Plaintiffs do not know the true names, capacities, or basis for liability of Defendants sued as Doe 1 through Doe 10, i.e., the Beneficiaries.  Each fictitiously named Defendant is in some manner liable to Plaintiffs, claims some right, title, or interest in the Subject Property, or both.

11.     Plaintiffs do not know the true names, capacities, or basis of liability of Defendants sued as Doe 11 through Doe 20.  Each fictitiously named Defendant is in some manner liable to Plaintiffs, claims some right, title, or interest in the Subject Property, or both.

12.     At all times relevant to this Complaint, each of the Defendants was the agent or employee of each of the remaining Defendants, and was acting within the course and scope of such agency or employment.

13.     At all times relevant to this Complaint, each of the Defendants was the agent or employee of each of the remaining Defendants, and was acting within the course and scope of such agency or employment.

## JURISDICTION

14.     Pursuant to 28 U.S.C.A. §1331, this court has original based on the laws of the United States, as alleged herein.

15.     Pursuant to 28 U.S.C. §1367(a), this court has supplemental jurisdiction over the related state court claims.

## FACTS COMMON TO ALL CAUSES OF ACTION

16.     Not only are the Plaintiffs the victim of fraud, unlawful and predatory lending and an underlying conspiracy to commit fraud, but Plaintiffs are also facing the pending loss of their home

- 3-

**COMPLAINT**

1  through foreclosure initiated and advanced by Defendants in violation of the notice and standing

2  requirements of California foreclosure law.

3      17.    In addition, the challenged foreclosure is based upon a Deed of Trust and a Note in the

4  mortgage that is no longer held by the same entity or party.  Further, the foreclosure is based upon a

5  Deed of Trust that was flawed at the date of origination of the loan.  The "lender" on the Deed of

6  Trust, GREENPOINT MORTGAGE, was not the actual lender or source of the monies that funded

7  the loan. The money to fund the loan came from investors.  GREENPOINT MORTGAGE acted

8  merely as a broker for the purpose of obtaining Plaintiff TINKER's signature on loan documents and,

9  therefore, GREENPOINT MORTGAGE was merely the servicer of the loan, but never the lender or

10 owner of the beneficial interest in the Deed of Trust or the obligation purportedly secured thereby.

11 MERS was named as nominee of the "Lender" GREENPOINT MORTGAGE and as beneficiary on

12 the Deed of Trust, but MERS was not the true beneficiary; and the "Lender," on whose behalf MERS

13 was named as "nominee," was not the true lender.

14      In this case, foreclosure has been filed and the trustee's sale is currently scheduled for

15 March 10, 2011.  The foreclosing entity (QUALITY LOAN) filing the foreclosure is a third party and

16 has no pecuniary interest in the mortgage loan.   The entity lacks standing and the capacity to

17 foreclose.  The entity has no firsthand knowledge of the loan, no authority to testify or file affidavits

18 as to the validity of the loan documents or the existence of the loan.  The entity has no legal authority

19 to draft mortgage assignments relating to the loan.  The foreclosing entity and its agents regularly

20 commit perjury in relation to their testimony.

21      18.    GREENPOINT MORTGAGE, the lender on the original Promissory Note was not the

22 lender.  On information and belief, the "lender" GREENPOINT MORTGAGE did not actually loan

23 Plaintiffs any money.  The true originators of the loan immediately and simultaneously securitized

24 (allegedly) the note through the means of conversion of an Article III negotiable Instrument (U.C.C.)

25 into Article IX (U.C.C.), non-negotiable paper.  The beneficial interest in the Note was never in the

26 lender.  In this case QUALITY LOAN has declared a default and is not in privity with the lender.

27 The true owner (s) or beneficiary(s) of the mortgage loan has not declared a default, cannot declare a

28

**COMPLAINT**

1    default under its Trust Agreement, and does not have an interest in the Note that allows for any

2    remedial actions to be undertaken by the Beneficial Interest Holder(s).

3        19.    There is a complete break in the chain of title in this case as supposedly the Note and

4    the Deed of Trust were conveyed in 2010 by MERS to AURORA LOAN.  AURORA LOAN is a

5    stranger to Plaintiff's original Deed of Trust.

6        20.    The obligations reflected by the Note have been satisfied in whole or in part because

7    the investors who furnish the funding for these loans have been paid to the degree that

8    extinguishments of the debts has occurred with the result that there exist no obligations on which to

9    base any foreclosure on the Subject Property owned by Plaintiffs.  Defendants have and continue to

10   cloud the title and illegally collect payments and attempt to foreclose upon Plaintiffs' property when

11   they do not have lawful rights to foreclose, and are not holders-in-due-course of the Notes.

12       21.    The mortgage loan assigned to MERS, as nominee, is, at most, an unsecured debt.

13   The only parties entitled to collect on the unsecured debt would be the holder-in-due-course and

14   beneficial owner(s) of the original Promissory Note (the original "Lender of Record"), *if* the asset is

15   still booked as an asset and has not been sold and de-recognized as an asset under FASB 140.  Those

16   unknown parties have not come forward in this case.

17       22.    Certain individuals, who were the employees of the Servicer, QUALITY LOAN,

18   executed and notarized forged documents as to the ownership of the loan.  The affiants have

19   committed counts of fraud, perjury and forgery of the mortgage loan.

20       23.    Defendant QUALITY LOAN, represented itself as a "Trustee" coming to Court and

21   are actually not common law Trustees, rather, they are special Corporate Trustees with limited

22   ministerial duties. These rights, duties and obligations do not include any remedial actions as they

23   relate to the assets of the REMIC Trust.  The Servicers, like QUALITY LOAN, are merely

24   administrative entities, under limited power of attorney, who collect the mortgage payments and

25   escrow funds.  The Servicer has no greater power than its' Principal, the Trustee, and lacks the

26   authority to bring any action on behalf of the REMIC Trust.

27           The Trust participants have executed Trust Agreements, under oath, with the Security

28   Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass-

**COMPLAINT**

through" entities wherein they can never own or manage the mortgage loan assets in the REMIC Trust.  This allows them to qualify as a Tax Free Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT").  As long as the Trust is a qualified REMIC, no income tax will be charged to the beneficial certificateholders.

24.    Importantly, the "Trustee" or custodian, must have the mortgages recorded in the investors name as the beneficiaries of the Trust within 90 days of the "closing date" *(IRS Rule 860D (a)(4))*, as defined within the REMIC Trust Agreement.  Every mortgage in the Trust should have been publicly recorded in Placer County where the property is located with a mortgage in the name of  this Trust, which would have had to been recorded in this case in 2007.   No such recording exists in the Placer County records.

25.    The Promissory Note was never conveyed pursuant to the Trust mandates and the mortgages were never conveyed or recorded pursuant to the proper chain of custody and Assignment within the Trust Agreement(s).

26.    In this scenario, even if the foreclosing entity produces a copy of a note, or even an alleged original, the mortgage loan was not conveyed into the Trust under the requirements of the prospectus for the Trust or the REMIC requirements of the IRS.  Mere possession of an Instrument does not confer the status of a person entitled to enforce the Instrument.

27.    Consequentially, the end result is that the required Trust asset, or any part thereof (mortgage note or security interest), was not legally transferred to the Trust to allow the Trust to ever be considered a "holder" of a mortgage loan.  Neither the "Trust" nor the Servicer, QUALITY LOAN, would ever be entitled to bring a foreclosure or declaratory action.  The Trust will never have standing or be a real party in interest before this Court.

28.    The transfer of mortgage loans into the Trust in which the Trustee after the "**cut-off date**" (in this case February 1, 2007), destroys the Trust's REMIC tax exempt status, and this Trust would owe millions of dollars to the IRS and the State of California as the income would be taxed at one hundred percent (100%), if the Court were to find in favor of the Defendant(s).  Subsequent to the "cut-off date" listed in the prospectus, whereby the mortgage notes and security for these notes

- 6-

1   had to be identified, and the Note and Mortgages transferred, within 90 days, and thereafter, the pool

2   is <u>permanently closed</u> to future transfers of mortgage assets.

3        29.      Defendants fraudulently conveyed Plaintiffs' mortgage loan, which was fraudulently

4   recorded on or about April 17, 2007, in an attempt to transfer a Mortgage Assignment into a REMIC

5   after that REMIC's "cut-off" and "closing dates".  Neither QUALITY LOAN nor any other party in

6   the chain of title has ever been assigned the beneficiary interest in the Deed of Trust and the Note.

7        30.      Therefore, the lack of lawful acquisition of Plaintiffs' mortgage loan violates the

8   prospectus presented to the investors and the IRS REMIC requirements.

9        31.      Plaintiff signed a Promissory Note and Mortgage.  She was unknowingly converting

10  her property into an alleged asset of a Trust, while her credit and signature was used to sell

11  securities, the profits of which were to used to fund the predatory "loan", (unbeknownst to Debtor,

12  the loan papers were processed with an inflated appraisal and inflated income) without her consent

13  or knowledge of the terms and conditions of the contract.

14        Under the controlling Trust documents, a percentage of the homeowner's monthly

15  payment stream was used as a guarantee.  This guarantee and payment under the guarantee has

16  resulted in accounting documents that Plaintiffs believe show all payments have been made on

17  Plaintiffs' alleged obligation.  A portion of Plaintiffs' monthly mortgage payment was used to insure

18  and pay their alleged obligation without their knowledge or consent and the payment is believed to

19  be current.

20        California Commercial Code §3602(a) and UCC 3-602(a) provide that an obligation

21  paid is an obligation extinguished.  Plaintiffs were never informed of the nature of the scheme.

22  TINKER was deliberately induced into signing a Negotiable Instrument which was never intended

23  as such, but intended as collateral for the sale of securities.  Under the terms of the typical Pooling

24  and Servicing Agreement ("PSA"), Plaintiffs' mortgage obligation has been paid.  Plaintiffs' alleged

25  "default" is a fiction.

26        32.      The fact that this "loan" was actually the proceeds from the sale of securities, and not

27  a loan as it is defined under the laws of California, was a "material disclosure" which was

28  deliberately and intentionally undisclosed.  The failure to disclose the identity of the true lender at

1  closing was also a "material disclosure"; the nature of which would make the deed of trust void

2  under California contract law.

3       33.     As required by SEC, this Trust has a PSA and must be publicly filed.  The only

4  purpose for the PSA is for the administration and distribution of funds to the investors and the

5  obligation of the so called Trustee in administering the Trust.  The investors who put up money for

6  the Trust and who received the securities certificates or Bonds, are purported to not be parties to the

7  PSA. However, under the Step Transaction Doctrine, as adopted by the Courts, these transactions

8  are interdependent of one another and interrelated and, therefore, fall under the scope of a "single

9  transaction", as defined by the Doctrine. The Borrowers and the Investors are the true Principals to

10  the transaction, with the only financial and pecuniary interest in the transaction(s).

11       34.     The PSA merely sets forth what happens after the mortgages are bundled together.

12  However, the PSA also sets forth a *Cut-Off Date*.  The cut-off date is the date on which all mortgage

13  loans in the Trust must be identified and set out in the SEC required list of mortgage loans.

14       35.     Like the cut-off date, this Trust had a ***Closing Date***.  The Closing Date is the date that

15  the individually identified mortgages were to be transferred through the Custodian for the benefit of

16  the investors.  The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has

17  possession of the original Promissory Note, all original endorsements and assignments transferring

18  the Note and proof that the ownership of the Note has been lawfully transferred for the benefit of the

19  investors.  Further proof of the ownership of a mortgage loan is required by a public recording of the

20  Mortgage or Assignment of the mortgage itself.  This MUST have occurred by the Closing Date.

21       36.     In this case, Plaintiffs' mortgage was never part of the Trust scheme because the

22  alleged assignment of the mortgage did not occur in 2007, wherein the Trust closing date has a 90-

23  day window.

24       37.     Whoever claims to be acting on behalf of the Trust and claims that it has acquired the

25  loan from GREENPOINT MORTGAGE, was not the party in the original Deed of Trust.  The

26  multiple transfers of title of the mortgage loan between the originator, GREENPOINT

27  MORTGAGE, The REIT Trust, the Depositor and the REMIC Trust is simply ignored as it can

28  never be proved or shown to the Court.  Chain of Mortgage assignment is broken as the assignees in

**COMPLAINT**

the chain of title were never the mortgagee of record under a Mortgage Assignment and have absolutely no legal tie to the investors in the Trust.

38.     On or about April 17, 2007, TINKER executed a written DEED of TRUST and security instrument, with GREENPOINT MORTGAGE as the lender and MARIN CONVEYANCING as the trustee.  A copy of the DEED of TRUST is attached as **Exhibit "B"** and incorporated herein by reference.  The DEED of TRUST and Security Instrument has never been transferred from GREENPOINT MORTGAGE, to the foreclosing entity, QUALITY LOAN. Plaintiffs are informed and believe the Deed of Trust has been transferred to an unknown entity as the time of execution in April 17, 2007, or was transferred to other unnamed entities and that the parties claiming a right or beneficial interest in the Deed of Trust, in fact have not legitimate claims, as more fully explored below, in the TWELFTH CAUSE OF ACTION for WRONGFUL FORECLOSURE.

39.     All Defendants, if any of the Defendants has any interest in the Note and Deed of Trust (referred to collectively as "Mortgage"), are responsible and liable herein for all the actions of its predecessor-in-interest, the owner of the subject mortgage loan and the servicer/agent.

**Chain of Title Problems**

40.     The chain of title is hopelessly confused and convoluted, with multiple entities claiming a pecuniary interest in the Subject Property.  At the time of the Notice of Default, the recorded interests contradict the assertion that AURORA LOAN and/or QUALITY LOAN was the foreclosing beneficiary, and reveal a slew of other illegal actions.  Starting from the beginning, the chain of recordation is as follows:

| Filed: 4/17/2007  Trust's **cut-off date** 2/1/2007 | **DEED OF TRUST**  **[Attached as Exhibit "B"]** | Borrower: | Sonika J. E. Tinker |
|---|---|---|---|
| | | Lender: | GREENPOINT MORTGAGE |
| | | Trustee: | MARIN CONVEYANCING |
| | | beneficiary/ nominee: | MERS |
| | | Loan Amount: | $600,000 |

- 9-

| | | | |
|---|---|---|---|
| Filed: 9/4/2007 | **INTERSPOUSAL TRANSFER DEED**<br><br>**[Attached as Exhibit "C"]** | Grantor: | Sonika J. E. Tinker |
| | | Grantee: | Christian R. Pedersen & Sonika J. E. Tinker, as husband and wife as community property |
| Filed: 9/4/2007 | **TRUST TRANSFER DEED**<br><br>**[Attached as Exhibit "D"]** | Grantors: | Christian R. Pedersen & Sonika J. E. Tinker |
| | | grantees/trustees: | Christian R. Pedersen & Sonika J. E. Tinker, as Trustees of the Pedersen Tinker Family Trust |
| | | Notarized | 8/18/2007 |
| Filed: 12/15/2008 | **NOTICE OF DEFAULT & ELECTION TO SELL UNDER DEED OF TRUST**<br><br>**\*\* *NO Declaration of Default* \*\***<br><br>**[Attached as Exhibit "E"]** | Trustor: | Sonika J. E. Tinker |
| | | contact to stop foreclosure | AURORA LOAN c/o QUALITY LOAN |
| | | Present Beneficiary: | Executed "Declaration of Default" \*\* |
| | | Signers: | QUALITY LOAN, as agent for beneficiary By LSI TITLE [illegible signature] as "Authorized Agent" |
| | | DATE signed: | 12/15/2008 |
| Dated: 1/13/2009 | **DEBT VALIDATION NOTICE**<br><br>**[Attached as Exhibit "F"]** | Creditor: | MERS |
| | | Sender: | QUALITY LOAN |
| Filed: 1/28/2009 | **SUBSTITUTION OF TRUSTEE**<br><br>**[Attached as Exhibit "G"]** | Orig Trustor: | Sonika J. E. Tinker |
| | | Orig Trustee: | MARIN CONVEYANCING |
| | | New Trustee: | QUALITY LOAN |
| | | Orig beneficiary | MERS, as nominee for GREENPOINT |
| | | Present beneficiary | "the undersigned" |
| | | Signer: | MERS<br>By Mary Jane Sarne<br>Vice President |
| | | **Date mailed to trustor Tinker:** | 12/29/2008 |
| | | **Date signed:** | **12/15/2008** |
| | | **Date notarized:** | **12/15/2008 crossed out & new date inserted: 12/29/2008** |

- 10-

| | | | |
|---|---|---|---|
| Filed: 3/17/2009 | **NOTICE OF TRUSTEE'S SALE**<br><br>**Sale date: 4/6/2009**<br><br>**[Attached as Exhibit "H"]** | Trustors:<br>Trustee:<br>Notice sent by:<br>Beneficiary:<br>Signer:<br>Date of Notice: | Sonika J. E. Tinker<br>QUALITY LOAN<br>QUALITY LOAN<br>[not named]<br>[unsigned]<br>3/16/2009 |
| Letter dated 3/4/2010 | **Letter from AURORA to Tinker: modification loan may be available** | Loan Servicer | AURORA LOAN |
| 2 Letters dated 3/8/2010 & 3/12/2010 | **Letter from AURORA to Tinker: denial of modification loan** | | |
| Letter dated 3/15/2010 | **Letter from AURORA to Tinker: loan is in default** | | |
| Letter dated 3/18/2010 | **SPECIAL FORBEARANCE AGREEMENT [Workout Agreement]**<br><br>**w/ AURORA's Cover Letter** | Agreement Between:<br>Borrower &<br>Debt collector:<br>Loan<br>Signer:<br>Date signed<br>Aurora's cover letter dated | Sonika J. E. Tinker<br><br>AURORA LOAN<br>#0124382367<br>**Signed by Tinker only, not Aurora**<br>3/29/2010<br><br>3/18/2010 |
| Letter dated 9/2/2010 | **Letter from AURORA to Tinker: loan is in default** | | |
| Filed: 9/2/2010<br><br>Notarized? ? | **CORPORATE ASSIGNMENT OF DEED OF TRUST**<br><br>**[Attached as Exhibit "I"]** | grantor:<br>grantee/ beneficiary:<br>Signer: Signature:<br>Date signed: | **MERS**<br><br>**AURORA LOAN**<br>**MERS**<br>**By JoAnn Rein, Vice President**<br>**12/15/2008** |

- 11-

**COMPLAINT**

| *NOT FILED*: | **NOTICE OF TRUSTEE'S SALE**<br><br>**Sale date: 3/10/2011**<br><br>**[Attached as Exhibit "J"]** | Trustor: | Sonika J. E. Tinker |
| | | Trustee: | QUALITY LOAN |
| | | Notice sent by: | QUALITY LOAN |
| | | Beneficiary | [not named] |
| | | Signer: | [unsigned] |
| | | Date of Notice: | NOT DATED |

41.     The Notice of Default (NOD), dated and recorded on December 15, 2008, was signed by LSI, a purported "agent" of QUALITY  LOAN, which claims to be an agent "for the beneficiary" who is unnamed.  The actual signature on the NOD is illegible and followed by the handwritten words: "as Authorized Agent".  No corporate *signatory* capacity whatsoever is stated as required by Corporations Code 313.

Additionally, there is no notarized Declaration of Compliance attached to the NOD as required by California Civil Code 2923.5.  As the NOD is non-compliant with California law, it is therefore invalid, should be stricken from the Official Records, the document expunged, and the Sale of the Subject Property should be set aside by the court.  The NOD is attached as **Exhibit "E".**

42.     GREENPOINT never filed a deed of reconveyance showing an assignment of conveyance from the original deed of trust signed by TINKER forward to the foreclosing entity QUALITY LOAN.

43.     Notice of Trustee's Sale, dated March 16, 2009, is also fatally defective.  It was signed by QUALITY LOAN, citing that it received a written Declaration of Default from the original beneficial interest holder under the Deed of Trust.  This was false as the NOD was filed by QUALITY LOAN, when GREENPOINT MORTGAGE was the original lender and beneficial interest holder.  Further, California Civil Code 2924c requires that the NOD provide the name and contact information of the beneficiary or mortgagee for borrowers to find out the amount they must

**COMPLAINT**

pay, or to arrange for payment to stop the foreclosure.  Here, the NOD states that the borrower should contact AURORA LOAN, which is a stranger to the Note and original Deed of Trust. (See **Exhibit "E"** Notice of Default).   The Notice is utterly void, ultra vires, powerless and without legal validity, for the reasons stated already.  The Notice of Trustee's Sale is attached as **Exhibit "H"** Plaintiffs did not learn of the acts of Defendants until September of 2010 as described herein.

44.     Defendant QUALITY LOAN also sent Plaintiffs an <u>undated</u> Notice of a Trustee's Sale scheduled for March 10, 2011.  This document is also fatally defective for the reasons stated in the above paragraph.  Additionally, even if the Defendants QUALITY LOAN and AURORA LOAN were the proper foreclosing entities, the March 10, 2011 Trustee's Sale would be illegal as the March 16, 2009 Notice of Trustee's Sale had been filed more than 365 days prior to the current sale date, and California Civil Code §§ 2924g.(c)(2) and 2924f.(b) (1) require that a new Notice be filed with the Placer County Recorder.  However, the undated Notice of Trustee's Sale was never filed. The undated Notice of Trustee's Sale is attached as **Exhibit "J".**

**Separate Failure to Resolve Prior to Sale**

45.     TINKER called the purported lender/servicer of the subject mortgage to advise about their financial situation and to request assistance in the form of a repayment plan or other modification relief designed to avoid foreclosure and the loss of their home.

46.     Despite Plaintiffs' efforts, the purported lender/servicer failed, refused and/or neglected to work with Plaintiffs in any reasonable way to avoid foreclosure during the time of her financial difficulties.

47.     Instead, the purported lender/servicer secretly was transferring the Deed of Trust and then has attempted to foreclose, without notice to Plaintiffs.

48.     The purported lender/servicer failed, refused and/or neglected to disclose to Plaintiffs what options were available to Plaintiffs to avoid foreclosure and the loss of their home.

49.     As a result, Plaintiffs were not provided with the specialized assistance and default loan servicing that the lender/servicer was obligated to provide that comported with Plaintiffs' ability to pay and that served to assist Plaintiffs in their efforts to avoid the default and the acceleration of the subject mortgage debt and foreclosure.

50.     Defendant failed, refused and/or neglected to evaluate the particular circumstances surrounding Plaintiffs' claimed default; failed to evaluate Plaintiffs or the subject property; failed to determine Plaintiffs' capacity to pay the monthly payment or a modified payment amount; failed to ascertain the reason for Plaintiffs' claimed default, or the extent of Plaintiffs' interest in keeping the Subject Property.

51.     The Defendants failed, refused and/or neglected to give Plaintiffs the opportunity to cooperate in resolving the debt.

52.     The Defendants purposefully deceived Plaintiffs that the Mortgage modification was proceeding as planned and deceptively and purposefully wrongfully foreclosed on Plaintiffs' property.

**FIRST CAUSE OF ACTION**

**Violations of the Home Ownership Equity Protection Act**

**(As to All Defendants and DOES)**

53.     Plaintiffs reaffirm and re-allege the above paragraphs 1 through 52 herein above as if set forth more fully herein below.

54.     In 1994, Congress enacted the Home Ownership Equity Protection Act, (HOEPA) which is codified at 15 USC §1639 et. seq. With the intention of protecting homeowners from predatory lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain disclosures and prohibits certain terms from being included in home loans.  In the event of noncompliance, HOEPA imposes civil liability for precision and statutory and actual damages.

55.     Plaintiffs are a "consumer" and each Defendant is a "creditor" as defined by HOEPA. In the mortgage loan transaction at issue here, Plaintiffs were required to pay excessive fees, expenses, and costs which exceeded more than 10% of the amount financed.

56.     Pursuant to HOEPA and specifically 15 USC §1639 (A.) (1), each Defendant is required to make certain disclosures to Plaintiffs which are to be made conspicuously and in writing

- 14-

1   no later than three (3) days prior to the closing.

2        57.     In the transaction at issue, Defendants are required to make the following disclosures

3   to Plaintiffs by no later than three (3) days prior to said closing:

4        "You are not required to complete this agreement merely because you have

5   received these disclosures or have signed a loan application.  If you obtain this loan,

6   the lender will have a mortgage on your home.  You could lose your home and any

7   money you have put into it, and if you do not meet your obligation under the loan."

8        58.     Defendants violated HOEPA to help up by numerous acts and material omissions,

9   including but not limited to:

10            A.     Failing to make the foregoing disclosures in the conspicuous fashion;

11            B.     Engaging in a pattern and practice of extending credit to Plaintiffs without

12   regard to her ability to pay and violation of 15 USC§ 1639

13        59.     By virtue of the Defendants' multiple violations of HOEPA, Plaintiffs have a legal

14   right to resend the consumer credit transaction the subject of this action pursuant to 15 USC§1635.

15   This complaint is to be construed, for these purposes, as formal and public notice of Plaintiffs'

16   notice and precision of the mortgage and note.

17        60.     Defendants further violated HOEPA by failing to make an additional disclosure,

18   including but not limited to, Plaintiffs not receiving the required disclosure of the right to rescind the

19   transactions;

20        61.     Defendants failed to provide accurate TILA disclosures and understated the amount

21   being financed.

22        62.     As a direct consequence of, and in connection with, Plaintiffs' legal and lawful

23   exercise of their right of rescission, the true "owner" is required, within twenty (20) days of the

24   notice of rescission, to:

25            A.     Desist from making any claims for finance charges in the transaction;

26            B.     Return all monies paid by Plaintiffs in connection with the transaction to

27   Plaintiffs;

28

C.      Satisfy all security interests, including mortgages, which were required in the transaction.

63.     Upon the true "lender's" full performance of its obligations under HOEPA, Plaintiffs shall tender all sums to which the true lender is entitled.

64.     Based on Defendants HOEPA violations, each of the Defendants is liable to the Plaintiffs for the following, which Plaintiffs demand as a relief:

A.      Rescission of the mortgage loan transaction;

B.      Termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transactions;

C.      Return of any money or property paid by Plaintiffs including all payment made in connection with the transaction;

D.      The amount of money equal to twice the finance charge in connection with the transactions;

E.      Relinquishment of the right to retain any proceeds; and

F.      Actual damages in an amount to be determined at trial, including, attorney's fees.

65.     Because it is not clear who was actually in interest at the time of the actions described below, Plaintiffs allege this Cause of Action in the alternative against each of the possible parties at fault.  Unless otherwise indicated, allegations will be lodged against "Defendant Actually in Interest, If any" for the purposes of this pleading, which will be amended upon discovery of which Defendant, on information and belief, if it was one of the defendants named.

66.     This Cause of Action is pled in the alternative to the more likely allegation that the Note has become an ownerless "phantom note" and litigation is necessary to determine who, if anyone has any right, under what transfer agreement, if any.

67.     Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in September of 2010.  Any applicable statute of limitations should run from this date.

COMPLAINT

**SECOND CAUSE OF ACTION**

**Violations of Real Estate Settlement Procedures Act**

**(As to All Defendants and DOES)**

68.     Plaintiffs reaffirm and re-allege paragraphs 1 through 67 herein as if specifically set forth herein below.

69.     As mortgage lenders, Defendants are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC §2601 et. seq.

70.     In violation of 12 USC §2607 and in connection with the mortgage loan to Plaintiffs, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

71.     As a result of the Defendants violations of  RESPA, Defendants are liable to Plaintiffs in an amount equal to three (3) times the amount of charges paid by Plaintiffs for "settlement services" pursuant to 12 USC §2607 (d) (2).

72.     Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in September of 2010.  Any applicable statute of limitations should run from this date.

**THIRD CAUSE OF ACTION**

**Violations of Truth In Lending Act**

**(As to All Defendants and DOES)**

73.     Plaintiffs reaffirm and re-allege paragraphs 1 through 72 above herein as if set forth fully below.

74.     Defendants failed to include and disclose certain charges in the finance charge shown on the TILA statement, which charges were imposed on Plaintiffs incident to the extension of credit to Plaintiffs and were required to be disclosed pursuant to 15 USC §1605 and Regulation Z §226.4, thus resulting in an improper disclosure of financial charges in violation of 15 USC §1601 et seq., Regulation Z §226.18(d).  Such undisclosed charges included some identified on the settlement statement listing the amount financed which is different from the sum listed in the original Note.

75.     By calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts, Defendants are in violation of 15 USC §1601 et seq., Regulation Z §226.18

1    (c), 18(d), and 22.D

2        76.    Defendants' failure to provide the required disclosures provides Plaintiffs with the

3    right to rescind the transaction, and Plaintiffs, through this public complaint which is intended to be

4    construe for purposes of this claim as a formal notice of rescission, hereby elect to rescind the

5    transaction.

6        77.    Plaintiffs first learned of the actions of Defendants, including their failure to disclose

7    and the fraud committed upon them in September of 2010.  Any applicable statute of limitations

8    should run from this date.

9                        **FOURTH CAUSE OF ACTION**

10                  **Violations Of Fair Credit Reporting Act**
                   **(As to All Defendants and DOES)**

11       78.    Plaintiffs reaffirm and re-allege paragraphs 1 through 77 above as if set forth fully

12   herein below.

13       79.    At all times material, Defendants qualified as a provider of information to the Credit

14   Reporting Agencies, including but not limited to Experian, Equifax and Trans Union, under the fair

15   credit reporting act.  Defendants wrongfully, improperly, and illegally reported negative information

16   as to Plaintiffs to one or more credit reporting agencies, resulting in Plaintiffs having negative

17   information on their credit reports and the lowering of their FICO scores.

18           A.    The negative information included, but was not limited to, an excessive

19   amount of debt into which Plaintiffs were tricked into seed into signing;

20           B.    Notwithstanding the above, Plaintiffs have paid each and every payment on

21   time from the time of the closing of the loan and until Plaintiffs' default.

22       80.    Pursuant to 15 USC §1681 (s) (2) (b), Plaintiffs are entitled to maintain a private

23   cause of action against Defendants for an award of damages in an amount to be proven at the time of

24   trial for all violations of The Fair Credit Reporting Act which caused actual damages to Plaintiffs,

25   including emotional distress and humiliation.

26       81.    Plaintiffs are entitled to recover damages from Defendants for negligent non-

27   compliance with The Fair Credit Reporting Act pursuant to 15 USC§1681(n)(a)(2) in an amount to

28   be proven at the time of trial.

- 18-

82.     Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in September of 2010.  Any applicable statute of limitations should run from this date.

## FIFTH CAUSE OF ACTION
### Fraudulent Misrepresentation
### (As to All Defendants and DOES)

83.     Plaintiffs reaffirm and re-allege paragraphs 1 through 82 above as if set forth fully herein below.

84.     Defendants knowingly and intentionally concealed material information from Plaintiffs which is required by federal and state statutes and regulations to be disclosed to the Plaintiffs both before and after closing.

85.     Defendants also materially misrepresented material information to Plaintiffs with Defendants' full knowledge that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

86.     Under the circumstances, the Defendants' material omissions of material misrepresentations were malicious.

87.     TINKER, not being an investment banker, securities dealer, mortgage lender, or mortgage broker, reasonably relied upon the representations of the Defendants in agreeing to execute the mortgage loan documents.

88.     Had TINKER known of the falsity of Defendants' representations, Plaintiffs would not have entered into the transaction that is the subject of this action.

89.     As a direct and proximate cause of Defendants' material omissions and material misrepresentations, Plaintiffs have suffered damages, all according to proof at trial.

90.     Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in September of 2010.  Any applicable statute of limitations should run from this date.

## SIXTH CAUSE OF ACTION
### Breach Of Fiduciary Duty
### (As to All Defendants and DOES)

91.     Plaintiffs reaffirms and re-allege paragraphs 1 through 90 above as if set forth fully herein below.

92.     Defendants, by their actions and contracting to provide mortgage loan services and a loan program to Plaintiffs [which was not only to be best suited to Plaintiffs] given their income and expenses, but by which Plaintiffs would also be able to satisfy their obligations without risk of losing their home, were "fiduciaries" in which Plaintiffs reposed trust and confidence, especially given that Plaintiffs were not and are not an investment banker, securities dealer, mortgage lender or mortgage broker.

93.     Defendants breached their fiduciary duties to TINKER by fraudulently inducing TINKER to enter into a mortgage transaction which was contrary to TINKER's stated intentions; contrary to the Plaintiffs' interest; and contrary to Plaintiffs' preservation of their home.

94.     As a direct and proximate result of the Defendants' breaches of their fiduciary duties, Plaintiffs have suffered damages.

95.     Under the totality of the circumstances, the Defendants' actions were willful, wanton, intentional, and with a callous and reckless disregard for the rights of Plaintiffs justifying an award of not only actual compensatory damages, but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the named Defendants herein, but also to other persons or entities with similar inclination.

96.     Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in September of 2010.  Any applicable statute of limitations should run from this date.

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment
### (As to All Defendants and DOES)

97.     Plaintiffs reaffirm and re-allege paragraphs 1 through 96 above as if set forth fully herein below.

98.     Defendants had an implied contract with TINKER to ensure TINKER understood all fees which would be paid to the Defendants to obtain credit on Plaintiffs' behalf and not to charge any fees that were not related to the settlement of the loan and without full disclosure to Plaintiffs.

- 20-

99.     Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits (including, but not limited to, from the resale of mortgages and notes using Plaintiffs' identity, credit score and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and yield spread premium fees ("YSP") unrelated to the settlement services provided at closing.

100.    Defendants have been unjustly enriched at the expense of Plaintiffs, and maintenance of the enrichment would be contrary to the rules and principles of equity.

101.    Defendants have also been additionally enriched to the receipt of payment from third parties, including but not limited to, investors, insurers, the United States Department of the Treasury, the United States Federal Reserve, the FDIC and other banks.

102.    Plaintiffs demand restitution from the Defendants in the form of actual damages, exemplary damages, and attorney's fees.

103.    Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in September of 2010.  Any applicable statute of limitations should run from this date.

## EIGHTH CAUSE OF ACTION
### Civil Conspiracy
### (As to All Defendants and DOES)

104.    Plaintiffs reaffirm and re-allege paragraphs 1 through 103 above as if set forth fully herein below.

105.    In connection with the application for and the consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions in a course of conduct designed to further an illegal act or accomplish a legal act by an unlawful means, and to commit one or more overt act in furtherance of the conspiracy to defraud Plaintiff, including but not limited to, the commencement of foreclosure.

106.    Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to Plaintiffs.

107.    The acts of the Defendants were committed intentionally, willfully, wantonly, and

with reckless disregard for the rights of Plaintiffs.

108.    As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches of fiduciary duties, Plaintiffs have suffered damages, all according to proof at trial.

109.    Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in September of 2010.  Any applicable statute of limitations should run from this date.

**NINTH CAUSE OF ACTION**
**Civil RICO Violations**
**(As to All Defendants and DOES)**

110.    Plaintiffs reaffirm and re-allege paragraphs 1 through 109 above as if set forth fully herein below.

111.    Defendants and each of them participated in the conspiracy, the subject of this action, which has existed from date of application to the present, with the injuries and damages resulting therefrom being continuous.

112.    Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiffs constitutes an "enterprise," with the aim and objective of the enterprise being to perpetuate a fraud upon the through the use of intentional nondisclosure, material misrepresentation, and creation of the fraudulent loan documents.

113.    Each of the Defendants is an "enterprise Defendant."

114.    As a direct result of the actions of the Defendants, Plaintiffs have suffered and continue to suffer damages.

115.    Whenever references are made in this complaint to any act of any Defendants, that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

116.    Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged to its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

117.    At all times each Defendant committed the acts, Defendant directed others to commit

- 22-

COMPLAINT

1  the acts, or permitted others to commit the acts alleged in this complaint.

2      118.    Additionally, some or all of the Defendants acted as the agent of the other

3  Defendants, and all of the Defendants acted within the scope of their agency or is acting as an agent

4  of another.

5      119.    At all relevant times, each Defendant knew or realized that the other Defendants were

6  engaging in or plan to engage in the violations of law alleged in the complaint.  Knowing or

7  realizing that at the Defendants were in gauging and are planning to engage in unlawful conduct,

8  each Defendant nevertheless facilitated the commission of those unlawful acts.  Each Defendant

9  intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and

10  thereby aided and abetted the other Defendants in the unlawful conduct.

11      120.    At all relevant times, Defendants have engaged in a conspiracy, common enterprise,

12  and common course of conduct, the purpose of which is to engage in the violations of law alleged in

13  the complaint.  This conspiracy, common enterprise, and common course of conduct continue to the

14  present.

15      121.    Plaintiffs first learned of the actions of Defendants, including their failure to disclose

16  and the fraud committed upon them in September of 2010.  Any applicable statute of limitations

17  should run from this date.

18                          **TENTH CAUSE OF ACTION**

19                              **Quiet Title**

                          **(As to All Defendants and DOES)**

20      122.    Plaintiffs reaffirm and re-allege paragraphs 1 through 121 above as if set forth fully

21  herein below.

22      123.    Plaintiffs have sent or have caused to be sent notice of their intent to rescind the

23  subject loan transaction, but only sent those notices to the entities that have been disclosed.  Hence,

24  without this action, neither the rescission nor the reconveyance which Plaintiffs are entitled to file

25  gives Plaintiffs full and clear title to the Subject Property.

26      124.    The real party in interest on the lender's side may be the owner of the asset-backed

27  security issued by the servicing and pooling vendor, the insurer through some claim equitable

28  interests, or the Federal Government through the United States Department of the Treasury or the

**COMPLAINT**

1  Federal Reserve.  The security is a "securitized" bond deriving its value from the underlying

2  mortgages, of which the subject mortgage is one.  Thus Plaintiffs are entitled to quiet title against

3  Defendants, clearing title of the purported subject mortgage encumbrance.

4       125.    Plaintiffs are informed and believe and thereon alleges that each of the Defendants

5  claim an interest in the Subject Property.

6       126.    However, Defendants' claims are without any right whatsoever, and said Defendants

7  have no legal or equitable rights, claim, or interest in the Subject Property.

8       127.    Plaintiffs therefore seek a declaration that the title to the Subject Property is vested in

9  Plaintiffs alone and that the Defendants herein, and each of them, be declared to have no estate,

10  right, title or interest in the Subject Property and that said Defendants, and each of them, be forever

11  enjoined from asserting any estate, right, title or interest in the Subject Property adverse to the

12  Plaintiffs herein.

13       128.    Plaintiffs first learned of the actions of Defendants, including their failure to disclose

14  and the fraud committed upon them in September of 2010.  Any applicable statute of limitations

15  should run from this date.

16  **ELEVENTH CAUSE OF ACTION**

17  **Usury and Fraud**

18  **(As to All Defendants and DOES)**

19       129.    Plaintiffs reaffirm and re-allege the above paragraphs 1 through 128 above as if set

20  forth fully herein below.

21       130.    Plaintiffs are informed and believe that the subject loan, notes, and mortgage were

22  structured so as to create the appearance of a higher value of real property than the actual fair market

23  value.

24       131.    Defendants disguised the transaction to create the appearance of the lender being a

25  properly chartered and registered financial institution, authorized to do business and to enter into the

26  subject transaction, when in fact the real party in interest was not disclosed to Plaintiffs, and neither

27  were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who

28  participated in this unlawful scheme.

132.    Said real party in interest, i.e. the source of funding for the loan and the person to whom the note was transmitted or eventually "assigned" was neither a financial institution  nor an entity nor person authorized, chartered or register to do business in the state, nor to act as banking, lending or other financial institution anywhere else.

133.    As such, this fraudulent scheme (which was in actuality a plan to trick Plaintiffs into signing what would become a negotiable security used to sell unregulated securities under fraudulent and changed terms from the original notes) was in fact a sham to use Plaintiffs' interest in the real property to collect interest in excess of the legal rate.

134.    The transaction of all the loan of money pursuant to a written agreement, and as such, subject to the rate limitation set forth under state and federal law.  The "formula break" a reference to end these laws was exceeded by a factor in excess of 10 contrary to the applicable law and contrary to the requirements for disclosure under TILA and HOEPA.

135.    Under applicable law Plaintiffs are also entitled to demand that a permanent injunction be entered against the Defendants:

A.    Preventing them from taking any action or making any report in furtherance of collection on this alleged debt which was usurious;

B.    Requiring the records custodian of the county in which the alleged mortgage and other instruments are recorded to remove same from the record;

C.    Allowing the filing of said order in the office of the clerk of the property records where the Subject Property, "loan transaction" and any other documents relating to this transaction are located; and

D.    Dissolving any lis pendens or notice of pendency relating to the Defendants' purported claim.

136.    Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in September of 2010.  Any applicable statute of limitations should run from this date.

COMPLAINT

**TWELFTH CAUSE OF ACTION**

**Wrongful Foreclosure**

**(As to All Defendants and DOES)**

137.    Plaintiffs reaffirm and re-allege the above paragraphs 1 through 136 above as if set forth fully herein below.

138.    Plaintiffs bring this cause of action against all parties who had an apparent hand in the wrongful acts as set forth and described as to each of them below.  Furthermore, their participation seems to be a joint effort to hold each accountable for the actions of the rest.

139.    California Civil Code Section 2924 mandates that a non-judicial trustee's sale "SHALL NOT TAKE PLACE" unless it is done on behalf of the beneficiary of a deed of trust securing a note and certain technical procedures are met.

140.    California Civil Code Section 2924(g) allows the obligee on the note required by Section 2924 to make a "credit bid" at a foreclosure sale, thereby taking title without actually paying any money whatsoever for the Trustee to convey title to the property.

141.    Defendants in this case had a duty to Plaintiffs to follow the laws, including the foreclosure laws.

142.    Defendants are not the beneficiaries of the mortgage at the time of the scheduled sale. Defendants are acting as a Trustee of a REMIC Loan Pool Trust pursuant to a Pooling and Servicing Agreement (PSA).  The PSA under which Defendants purport to be acting is a public record kept by the Securities and Exchange Commission, whose website EDGAR.com contains the provisions of the PSA.

143.    If the truth is that the Note was separated from the Deed of Trust and transferred to the loan pool, then Under Civil Code Section 2936, the Right Title and Interest to the Deed of Trust followed the Note on that date, and any subsequent purported Assignment is a lie, its declaration a fraud, and its true legal effect null notwithstanding recordation.  Any beneficiary was divested of interest upon the transfer of the Note under California Law and lacked power to assign any interest. Thus any attempt to foreclose on the Subject Property was null and void under California Law and should be prevented from occurring.

144.    Due to Defendants' actions, Plaintiffs have been damaged, both financially and are

- 26-

1   being deprived of their residence, which is a unique asset to them.  Plaintiffs demand damages for

2   these harms and a permanent injunction against Defendants, to prevent them from being evicted

3   from their home.

4          145.    Plaintiffs first learned of the actions of Defendants, including their failure to disclose

5   and the fraud committed upon them in September of 2010.  Any applicable statute of limitations

6   should run from this date.

### THIRTEENTH CAUSE OF ACTION
### Breach of Trust Instrument
### As to All Defendants and DOES)

10          146.    Plaintiffs reaffirm and re-allege the above paragraphs 1 through 144 above as if set

11   forth fully herein below.

12          147.    The Deed of Trust is the document which allows a non-judicial foreclosure to

13   proceed and gives Power of Sale to the duly appointed Trustee.  Per the Deed of Trust, only the

14   Lender can invoke the foreclosure (See, Deed of Trust, **Exhibit "B",** paragraph 22).  Per Deed of

15   Trust paragraph 44, the Lender may appoint a trustee.  The Substitution of Trustee in this case is

16   void, due to fraud, and was not executed in compliance with California Civil Code§2934(a).  The

17   Substitution of Trustee was invalid also because it was not executed by the Lender, per requirement

18   of the Deed of Trust.  The duly appointed Trustee under the Deed of Trust as of the recording of the

19   Notice of Default on March 23, 2010 was MARIN CONVEYANCING.  Neither QUALITY LOAN

20   nor AURORA LOAN was ever effectively substituted as trustee.  (See Substitution of Trustee,

21   **Exhibit "G")**  The Notice of Default was recorded PRIOR to the assignment, which if it were the

22   true holder-in-due-course, it would be mandatory to obtain beneficial interest in the Deed of Trust,

23   prior to invoking foreclosure.   In the case of a Mortgage with a power of sale, an assignee can only

24   enforce the power of sale if the assignment is recorded, since the assignee's authority to conduct the

25   sale must appear in the public records.

26          148.    The fraudulent assignment was recorded AFTER the Notice of Default, which proves

27   the Notice of Default was void at its inception and recording on March 23, 2010.  A non-judicial

28   foreclosure sale under the power-of-sale in a deed of trust or mortgage, on the other hand, must be

conducted in strict compliance with its provisions and applicable statutory law. A trustee's powers and rights are limited to those set forth in the deed of trust and laws applicable thereto.

149.    The notice of acceleration and notice to cure given to borrower pursuant to Section 22 and the notice of  acceleration given to borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

150.    When there is an agreement between the Beneficiary and Trustor, such as the Condition Precedent expressed in Paragraph 20 of the Deed of Trust, a Foreclosure cannot take place before the condition is satisfied.  If the Beneficiary fails to carry out its obligation, a subsequent foreclosure is invalid.   Defendants have not complied with any expressed provisions of the Deed of Trust, have speciously trespassed upon the Deed of Trust and Plaintiffs' property, and the foreclosure and impending sale must be rendered void and rescinded under California Civil Code § 3513.  Any one may waive the advantage of a law intended solely for her benefit.  But a law established for a public reason cannot be contravened by a private agreement.  <u>California Civil Code § 3514.</u>  One must so use his own rights as not to infringe upon the rights of another.  All the acts of Defendants as described in this Complaint are a breach of the security instrument, the Deed of Trust.

151.    Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in September of 2010.  Any applicable statute of limitations should run from this date.

**WHEREFORE**, Plaintiffs pray this court to enter judgment against Defendants and each of them, as follows:

1.    For an order compelling said Defendants, and each of them, to transfer or release legal title and any alleged encumbrances thereon, and possession of the subject property to the Plaintiffs herein;

2.    For a declaration and determination that Plaintiffs are the rightful holder of title to the Subject Property and that Defendants herein, and each of them, be declared to have no estate, right, title or interest in said property;

3.    For a judgment forever enjoining said Defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

4.    For a declaration that the foreclosure which was instituted be deemed and declared

illegal and void, and that further proceedings in connection with the foreclosure be enjoined;

5.      For attorney's fees according to statutes;

6.      For actual, compensatory and punitive damages;

7.       For costs of the suit herein incurred;

8.      For such other further relief as the court may deem just and proper.


Dated:  March 8, 2011                    Respectfully submitted,


                                         LAW OFFICES OF HOLLY S. BURGESS


                                         By:___/s/   **Holly S. Burgess**_____/
                                         HOLLY S. BURGESS
                                         Attorney for Plaintiffs,
                                CHRISTIAN PEDERSEN and SONIKA TINKER

**COMPLAINT**

1

**VERIFICATION**

2

3          I/we, CHRISTIAN PEDERSEN and SONIKA TINKER, declare as follows:

4          I/we have read the foregoing Complaint: for 1)Violation of Homeowners Equity Protection

5   Act; 2)Violations of Real Estate Settlement Procedures Act; 3)Violations of Truth in Lending Act;

6   4)Violations of Fair Credit Reporting Act; 5)Fraudulent Misrepresentation; 6) Breach of Fiduciary

7   Duties; 7)Unjust Enrichment; 8)Civil Conspiracy; 9)Civil RICO Violations; 10) Quiet Title;

8   11)Usury and Fraud; 12)Wrongful Foreclosure; 13)Breach of Security Instrument.

9          Except for matters stated on information and belief, the facts stated therein are true on

10  my/our own knowledge, and as to those matters stated on information and belief, I/we believe them

11  to be true.

12         I declare under penalty of perjury under the laws of the United States that the foregoing is

13  true and correct and that this verification was executed this 8th day of  March, 2011, at Placer

14  County, California.

15

16         _____

17                   CHRISTIAN PEDERSEN

18         I declare under penalty of perjury under the laws of the United States that the foregoing is true

19  and correct and that this verification was executed this 8th day of  March, 2011, at Placer County,

20  California.

21

22

23         _____

                      SONIKA TINKER

24

25

26

27

28

- 30-

**COMPLAINT**