**McCARTHY & HOLTHUS, LLP**
James Hester, Esq. (SBN: 122133)
Melissa Robbins Coutts, Esq. (SBN: 246723)
1770 Fourth Avenue
San Diego, CA 92101
Telephone:     (619) 685-4800
Facsimile:      (619) 685-4811
Email:          jhester@mccarthyholthus.com
                mcoutts@mccarthyholthus.com

Attorneys for Defendants,
Aurora Loan Services LLC and
Mortgage Electronic Registration Systems, Inc.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN PEDERSEN and SONIKA TINKER,<br><br>                                    Plaintiffs,<br><br>v.<br><br>GREENPOINT MORTGAGE FUNDING, INC., a *New York corporation*, MARIN CONVEYANCING CORP.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; QUALITY LOAN SERVICE CORP.; AURORA LOAN SERVICES; LSI TITLE COMPANY; GREENPOINT MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR1; and DOES 1 THROUGH 20,<br><br>                                    Defendants. | Case No.  2:11-CV-00642-KJM -EFB<br><br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6); AND MOTION TO EXPUNGE RECORDED LIS PENDENS**<br><br>Date: May 25, 2011<br>Time: 10:00 a.m.<br>Ctrm: 3<br>Judge: Hon. Kimberly J. Mueller |

        Defendants Aurora Loan Services LLC and Mortgage Electroinc Registration Systems,

Inc. respectfully request this Court take judicial notice of the following in support of their Motion

to Dismiss Pursuant to Rule 12(b)(6).  Exhibits "A" through "G" are records of the San Diego

County Recorder, an executive Department of the County of San Diego in the State of California.

Federal Rule of Evidence 201, states in pertinent part:

        Judicial Notice of Adjudicative Facts . . . (b) Kinds of facts.  A judicially noticed
        fact must be one not subject to reasonable dispute in that is is either (1) generally
        known within the territorial jurisdiction of the trial court; or (2) capable of
        accurate and ready determination by resort to sources whose accuracy cannot
        reasonably be questioned . . . .

*McCARTHY & HOLTHUS, LLP*
*ATTORNEYS AT LAW*
*1770 FOURTH AVENUE*
*SAN DIEGO, CALIFORNIA 92101*
*TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810*

Thus, under Rule 201 of the Federal Rules of Evidence, the following exhibits are properly the subject of a request for judicial notice.  See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (2001).  These documents may be considered in ruling on Rule 12(b)(6) motion to dismiss. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).

| Exhibit | Description |
|---|---|
| "A" | Deed of Trust executed on April 3, 2007 and recorded on April 17, 2007 at the Placer County Recorder's Office as Instrument Number 2007-0038200. |
| "B" | Corporate Assignment of Deed of Trust recorded on September 2, 2010, in the Placer County Recorder's Office as Instrument Number 10-69647. |
| "C" | Notice of Default recorded on December 15, 2008 in the Placer County Recorder's Office as Instrument Number 08-96118. |
| "D" | Substitution of Trustee recorded on January 28, 2009 in the Placer County Recorder's Office as Instrument Number 09-5852. |
| "E" | Notice of Trustee's Sale recorded on March 17, 2009 in the Placer County Recorder's Office as Instrument Number 09-21109. |
| "F" | Notice of Trustee's Sale recorded on February 15, 2011 in the Placer County Recorder's Office as Instrument Number 11-12688. |
| "G" | Lis Pendens recorded on April 8, 2011 in the Placer County Recorder's Office as Instrument Number 2011-0028166 |

Dated:  April 15, 2011

Respectfully submitted,
**McCARTHY & HOLTHUS, LLP**

By:    /s/ Melissa Robbins Coutts
Melissa Robbins Coutts, Esq.
Attorney for Defendants,
Aurora Loan Services LLC and
Mortgage Electronic Registration Systems, Inc.

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
1770 FOURTH AVENUE
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4810

# Exhibit A

Recording Requested By: *Alliance Title*
GreenPoint Mortgage Funding, Inc.
Return To: | 2503793-863-SP
GreenPoint Mortgage Funding, Inc.
981 Airway Court, Suite E
Santa Rosa, CA 95403-2049

PLACER, County Recorder
JIM MCCAULEY
DOC- 2007-0038200-00
Acct 36-Alliance Title
Tuesday, APR 17, 2007 08:00:00
MIC    $3.00:AUT    $25.00:SBS    $24.00
REC    $27.00:
Ttl Pd    $79.00              Nbr-0001638268
                              baj/BJ/1-25

Prepared By:
GreenPoint Mortgage Funding, Inc.
100 Wood Hollow Drive,
Novato, CA 94945

———————————————[Space Above This Line For Recording Data]———————————————

# DEED OF TRUST

"RECORDING REQUESTED BY
ALLIANCE TITLE"

MIN 100013800921252777

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **April 3, 2007**
together with all Riders to this document.
**(B) "Borrower"** is **Sonika J. E. Tinker, a single woman**

Borrower's address is **1977 Green Meadow Lane, Meadow Vista, CA 95722**
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **GreenPoint Mortgage Funding, Inc.**

Lender is a **Corporation**
organized and existing under the laws of **the State of New York**

5277

CALIFORNIA-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01

VMP -6A(CA) (0207).01
Page 1 of 15

VMP Mortgage Forms, Inc.

Customized by GreenPoint Mortgage Funding, Inc.

Lender's address is 100 Wood Hollow Drive, Novato, CA 94945

**(D) "Trustee"** is Marin Conveyancing Corp.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated April 3, 2007
The Note states that Borrower owes Lender six hundred thousand and 00/100

Dollars

(U.S. $600,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2037

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |
| [x] Occupancy Rider | [ ] Interim Interest Rider | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

5277



**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | Placer | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**As more particularly described in exhibit "A" attached hereto and made a part hereof.**

Parcel ID Number: **072-043-043-000**                    which currently has the address of

**1977 Green Meadow Lane**                                                           [Street]

**Meadow Vista**                                    [City], California **95722**        [Zip Code]

("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

5277



of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

5277

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

5277

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

5277

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

5277

**(b)** **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

5277

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

5277

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

5277

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

5277

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

5277

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
Sonika J. E. Tinker                          -Borrower

_____        _____ (Seal)
                                                            -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                                -Borrower

5277

State of California
County of *Placer*                                    } ss.

On *April 10, 2007*   before me. *Marilyn L. Latham, Notary Public*
                                                         personally appeared
Sonika J. E. Tinker

                                                         , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies). and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                    (Seal)



                                                                    5277

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **3rd** day of **April, 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **GreenPoint Mortgage Funding, Inc.** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**1977 Green Meadow Lane, Meadow Vista, CA 95722**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN $690,000.00. THE INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and monthly payments as follows:

**2. INTEREST**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.875%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
**(A) Time and Place of Payments**
I will make my monthly payments on the first day of each month beginning on **June 1, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before **Principal**, if any. If, on **May 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 79363, City of Industry, CA 91716-9363**, or at a different place if required by the Note holder.

5277

**(B)     Amount of My Monthly Payments**

I will pay interest by making payments in the amount of U.S. **$1,937.50** (the "Minimum Payment") every month until either (i) the first Interest Rate Change Date set forth in section 4(A), or (ii) payment of the Minimum Payment on my next scheduled payment date would cause my principal balance to exceed the Maximum Limit set forth in section 3(D), whichever event occurs first (the "Option Period"). The Minimum Payment is calculated based upon the amount of interest that will accrue each month at a rate equal to **3.875%**. Payment of the Minimum Payment amount will result in accrued but unpaid interest being added to Principal. The unpaid Principal and any accrued but unpaid interest will then accrue additional interest at the rate then in effect. This practice is known as negative amortization.

After the expiration of the Option Period, I will pay interest by making payments in an amount sufficient to pay interest as it accrues every month until **June 1, 2017** (the "Interest Only Period"). This amount will be determined by the Note Holder as set forth in Section 4(C). In addition, if I make payments of principal and/or accrued unpaid interest during the Interest Only Period, my monthly interest-only payment amount will change and will be based on the remaining Principal and my then current interest rate.

After the expiration of the Interest Only Period, I will pay principal and interest by making payments every month for the remaining term (the "Full Amortization Period"). The amount of payments during the Full Amortization Period will be determined by the Note Holder as set forth in Section 4(C).

**(C)     Additions to My Unpaid Principal**

During the Option Period, my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

**(D)     Limit on My unpaid Principal; Increased Minimum Payment**

My unpaid Principal can never exceed the Maximum Limit equal to **115%** of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to additions to my unpaid Principal described in Section 3(C). If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, then my monthly payment will be adjusted to an amount equal to the Interest Only Payment described in Section 3(E)(i). I will continue to pay that amount until the Interest Only Period expires.

**(E)     Additional Payment Options**

During the Option Period, the Note Holder may provide me with up to two (2) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i) Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments, at the then current interest rate.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**(F)     Notice of Changes**

The Note Holder will deliver or mail to me notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5277

**(G)     Date of First Payment and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Due Date") shall be that date which is ten year(s) from the first payment due date, as reflected in Section 3(A) of the Note.

**4.     ADJUSTABLE INTEREST RATE**

**(A) Interest Rate Change Dates**

The interest rate I will pay will change on the first day of **May, 2012**, and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my interest rate may change is called an "Interest Rate Change Date."

**(B) The Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index"

If the index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters** percentage points (**2.750%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below this rounded amount will be my new interest rate until the next Interest Rate Change Date.

The Note Holder will then determine the amount of the monthly payment. If the Interest Rate Change Date occurs during the Interest Only Period, the new monthly interest-only payment will be based on the unpaid Principal that I am expected to owe at the Interest Rate Change Date and my new interest rate. If the Interest Rate Change Date occurs during the Full Amortization Period, my new monthly payment will be in an amount sufficient to repay the unpaid Principal that I am expected to owe at the Interest Rate Change Date at my new interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Rate Change Date will not be greater than **11.875%** or less than **2.750%**. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 1.000% from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than **11.875%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

5277

**B.      TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.       Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.       When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform covenant 18 of the Security Instrument shall be amended to read as follows

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

5277

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Borrower)          _____ (Borrower)
Sonika J. E. Tinker

_____ (Borrower)          _____ (Borrower)

_____ (Borrower)          _____ (Borrower)

_____ (Borrower)          _____ (Borrower)

5277

Hybrid Option ARM Rider
GreenPoint Mortgage Funding, Inc.          Page 5 of 5          HYBOARMU (01/07)

# OCCUPANCY RIDER TO MORTGAGE/
# DEED OF TRUST/SECURITY DEED

THE OCCUPANCY RIDER is made this **3rd** day of **April, 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **GreenPoint Mortgage Funding, Inc.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**1977 Green Meadow Lane, Meadow Vista, CA  95722**

("Property Address")

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.  That the above-described property will be personally occupied by the Borrower as their principal residence within 60 days after the execution of the Security Instrument and Borrower shall continue to occupy the property as their principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld.
2.  That if residency is not established as promised above as well as in the Security Instrument, the Lender may, without further notice, take any or all of the following actions:
    a.  increase the interest rate on the Note by one-half of one percent (0.500%) per annum on a fixed-rate loan or increase the Margin on an Adjustable Rate Note by one-half of one percent (0.500%) per annum and to adjust the principal and interest payments to the amount required to pay the loan in full within the remaining term; and/or
    b.  charge a non-owner occupancy rate adjustment fee of two percent (2.00%) of the original principal balance and/or
    c.  require payment to reduce the unpaid principal balance of the loan to the lesser of (1) 70% of the purchase price of the property or (2) 70% of the appraised value at the time the loan was made. The reduction of the unpaid principal balance shall be due and payable within thirty (30) days following receipt of a written demand for payment, and if not paid within thirty (30) days will constitute a default under the terms and provisions of the Note and Security Instrument, and/or
    d.  declare a default under the terms of the Note and Security Instrument and begin foreclosure proceedings, which may result in the sale of the above-described property; and/or
    e.  refer what is believed to be fraudulent acts to the proper authorities for prosecution.  It is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements or reports for the purpose of influencing in any way the action of the Lender in granting a loan on the above property under the provisions of TITLE 18, UNITED STATES CODE, SECTIONS 1010 AND 1014.

It is further understood and agreed that any forbearance by the Lender in exercising any right or remedy given here, or by applicable law, shall not be a waiver of such right or remedy.

Should any clause, section or part of this Occupancy Rider be held or declared to be void or illegal for any reason, all other clauses, sections or parts of this Occupancy Rider which can be effected without such illegal clause, section or part shall nevertheless continue in full force and effect.

5277

It is further specifically agreed that the Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies set forth above, including but not limited to, reasonable attorney's fees.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Occupancy Rider.

_____ (Borrower)    _____ (Borrower)
Sonika J. E. Tinker

_____ (Borrower)    _____ (Borrower)

_____ (Borrower)    _____ (Borrower)

_____ (Borrower)    _____ (Borrower)

5277

**Occupancy Rider to Mortgage/Deed of Trust/Security Deed**
**GreenPoint Mortgage Funding, Inc.**          **Page 2 of 2**                    H74670MU 01/07

## EXHIBIT "A"
## LEGAL DESCRIPTION

All that certain real property in the Unincorporated Area, County of Placer, State of California, described as follows:

Parcel One:

A portion of the Southwest ¼ of Section 31, Township 14 North, Range 9 East, M.D.B. &M., also being a portion of Parcel "A" of Parcel Map No. 71364, recorded in Book 7 of Parcel Maps, at Page 93, more particularly described as shown as Parcel "A" of Parcel Map No. 73655, filed for record on April 6, 1981, in Book 18 of Parcel Maps, at Page 37, Placer County records.

Excepting therefrom that portion described in MBR No. 10179 A/B, Brentson to McCormick as follows:

A portion of the Southwest ¼ of Section 31, Township 14 North, Range 9 East, M.D.B. &M., also being a portion of Parcel Map P. 71448 filed in Book 8 of Parcel Maps, at Page 108, being more particularly described as follows:

Commencing at the Northeast corner of Parcel A of Parcel Map No. 73655 as said Parcel is shown and delineated on that certain Parcel Map filed April 6, 1981 in Book 18 of Parcel Maps at Page 37, Placer County records; thence, along the North line of said Parcel A, North 88 degrees 49 minutes 42 seconds West, 120.40 feet to the true point of beginning; thence, leaving said North line, South 01 degrees 10 minutes 18 seconds West, 12.0 feet; thence North 85 degrees 33 minutes 20 seconds West, 210.34 feet to the point on said North line; thence, along said North line, South 88 degrees 49 minutes 42 seconds East, 210.00 feet, more or less, to the true point of beginning.

Parcel Two:

All that property described in MBR No. 10179 A/B McCormick to Brentson as follows:

A portion of the Southwest ¼ of Section 31, Township 14 North, Range 9 East, M.D.B. &M., also being a portion of Parcel Map P. 71448 filed in Book 8 of Parcel Maps, at Page 108, being more particularly described as follows:

Beginning at the Southwest corner of Parcel A of Parcel Map No. P. 71448 as said Parcel is shown and delineated on that certain Parcel Map filed July 2, 1976, in Book 8 of Parcel Maps, at Page 108, Placer County records; thence, along the West line of said Parcel A, North 00 degrees 07 minutes 59 seconds West, 9.60 feet; thence, leaving said West line, South 86 degrees 43 minutes 34 seconds East, 261,61 feet to a point in the South line of said Parcel A; thence, along said South line, North 88 degrees 49 minutes 42 seconds West, 261.21 feet, more or less, to the point of beginning.

Parcel Three:

A non-exclusive easement for access, drainage and utility and public utility purposes shown and designated as Area "K" of Parcel Maps, recorded in Book 7 of Parcel Maps, at Page 93, and Book 18 of Parcel Maps, at Page 37, Placer County Official records.

Excepting therefrom that portion lying within Parcel One above.

Parcel Four:

A non-exclusive easement for public utility purposes shown and designated as Area "J" of Parcel Maps, recorded in Book 7 of Parcel Maps, at Page 93, and Book 18 of Parcel Maps, at Page 37, Placer County Official records.

Excepting therefrom that portion lying within Parcel One above.

Parcel Five:

An easement for road purposes being a strip of land 60 feet in width lying contiguous to the Easterly boundary line of the above described Parcel described as follows:

Beginning at a point on the center line of said Section 31, from which the South quarter corner of Section 31, bears South 88 degrees 44 minutes East 191.25 distant and running thence along the center line of said 60 foot strip North 4 degrees 39 minutes East 205.66 feet; thence North 11 degrees 07 minutes East 320.94 feet; thence North 5 degrees 10 minutes 30 seconds West 167.23 feet; thence North 15 degrees 30 minutes 30 seconds West 296.56 feet; thence North 16 degrees 58 minutes West 196.67 feet; thence North 18 degrees 50 minutes 30 seconds West 365.0 feet, more or less, to the center of an East and West Community Road.

Parcel Six:

A non-exclusive road and utility easement extending Westerly from the East line of Section 36, Township 14 North, Range 8 East M.D.B. &M., said easement being more particularly described in Deed to Henry Granat, recorded June 2, 1961, in Book 878 of Official records, at Page 409.

APN No:  072-043-043-000

GOVERNMENT CODE 27361.7

I certify under penalty of perjury that the Notary Seal on the document to which this statement is attached reads as follows:

Name of Notary: _Marilyn   L. Latham_

Date Commission Expires: _1/15/10_

Commission Number: _1638210_

County of Commission: _Sacramento_

State of Commission: _Ca_

Manufacturer Number: _MGC4_

Place of Execution: _Auburn Ca_

Signature: _[signature]_   Date: _4/15/07_

Firm Name: _Alliance_

26

Exhibit B

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE: **$18.00**

RECORDED ON: **September 2, 2010**

AS DOCUMENT NO: **10-69647**

BY: **s/ Cherie Valencia**

LSI TITLE COMPANY (CA)

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

Rhonda Gall
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

CA. 06- 222757-CL
PC

## CORPORATE ASSIGNMENT OF DEED OF TRUST

0S0136377

Placer, California
SELLER'S SERVICING #:0124382367  "E TINKER"
OLD SERVICING #:  0092125277

MERS #: 100013800921252777  VRU #: 1-888-679-6377

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. hereby grants, assigns and
tranfers to AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE  69361
all beneficial interest under that certain Deed of Trust dated 04/03/2007 , in the amount of $600,000.00, executed by
SONIKA J. E. TINKER, A SINGLE WOMAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS
NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. and Recorded:  04/17/2007  as Instrument No.:
2007-0038200-00 in Placer,  California

 Together with the note or notes therein described or referred to, in said Deed of Trust, the money due and to
become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On December 15th, 2008

JOANN REIN, Vice-President

*RRG*RRGALSI*12/15/2008 09:04:48 AM* ALSI01ALSIA00000000000000531662* CAPLACE* 0124382367 CASTATE_TRUST_ASSIGN_ASSN **RRGALSI*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

On December 15th, 2008 before me,  DARLINE DIETZ, Notary Public, personally appeared JOANN REIN ,  who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized  capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nebraska that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal,

DARLINE DIETZ
Notary Expires: 03/22/2010

GENERAL NOTARY-State of Nebraska
DARLINE DIETZ
My Comm. Exp. March 22, 2010

(This area for notarial seal)

*RRG*RRGALSI*12/15/2008 09:04:48 AM* ALSI01ALSIA00000000000000000531662* CAPLACE* 0124382367 CASTATE_TRUST_ASSIGN_ASSN **RRGALSI*

Exhibit C

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY
RECORDED ON:   **December 15, 2008**
AS DOCUMENT NO:   **08-96118  BK: / PG:**
BY:   **s/ Title Court Automation**
CHICAGO TITLE INSURANCE CO. (LSI DIVISION)

Space above this line for Recorder's use

TS No.: **CA-08-222757-CL**            Loan No.: REDACTED

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$9,071.63** as of **12/15/2008** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Aurora Loan Services**
**C/O Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711**

TS No.: CA-08-222757-CL
Loan No.: REDACTED
Notice of Default and Election To Sell Under Deed of Trust

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 4/3/2007, executed by SONIKA J. E. TINKER, A SINGLE WOMAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., as beneficiary, recorded 4/17/2007, as Instrument No. 2007-0038200-00, in Book xxx, Page xxx of Official Records in the Office of the Recorder of PLACER County, California describing land therein: as more fully described in said Deed of Trust.

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $600,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 9/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2935.5.

Dated: 12/15/2008          Quality Loan Service Corp., AS AGENT FOR BENEFICIARY
                           BY: LSI Title Company

                           _Kaul Glen_ as
                                         Authorized Agent

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Exhibit D

Recording requested by:

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY
RECORDED ON:   __January 28, 2009__
AS DOCUMENT NO:   __09-5852  BK: / PG:__
BY:   __s/ Title Court Automation__
CHICAGO TITLE INSURANCE CO. (LSI DIVISION)

---

Space above this line for recorders use

TS # CA-08-222757-CL           Order # 080136377-CA-DCI           Loan # 0124382367

# Substitution of Trustee

WHEREAS, SONIKA J. E. TINKER, A SINGLE WOMAN was the original Trustor, MARIN CONVEYANCING CORP. was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. was the original Beneficiary under that certain Deed of Trust dated 4/3/2007 and recorded on 4/17/2007 as Instrument No. 2007-0038200-00, in book xxx, page xxx of Official Records of PLACER County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE CORPORATION ,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Page 1

Substitution of Trustee – CA
TS # CA-08-222757-CL
Page 2

Dated: 12/15/2008

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC

By:  **Mary Jane Sarne, Vice President**

State of ___California___ )
                               ) ss.
County of ___San Diego___ )

On ~~12/15/2008~~ before me, **Bonnie J. Dawson** a notary public, personally appeared **Mary Jane Sarne**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(Seal)

Bonnie J. Dawson

BONNIE J. DAWSON
Commission # 1628086
Notary Public – California
San Diego County
My Comm. Expires Jan 6, 2010

## Affidavit of Mailing
## for Substitution of Trustee By Code

TS No.: **CA-08-222757-CL**
Trustor: SONIKA J. E. TINKER, A SINGLE WOMAN

I, Adelia Herrera, declare: That I am an employee of **Quality Loan Service Corp.**, an agent for beneficiary, whose business address is:

2141 5th Avenue
San Diego, CA 92101

I am over the age of eighteen years and in accordance with California Civil Code Section 2934, I caused a copy of the attached Substitution of Trustee to be mailed, in the manner provided in Section 2924(b) of the Civil Code of the State of California, to the trustee of record under the Deed of Trust described in said Substitution and to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Diego, CA on 12/29/2008.


Adelia Herrera

Exhibit E

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY
RECORDED ON:   **March 17, 2009**
AS DOCUMENT NO:   **09-21109  BK:  / PG:**
BY:   **s/ Title Court Automation**
CHICAGO TITLE INSURANCE CO. (LSI DIVISION)

TS # **CA-08-222757-CL**          Loan # REDACTED          SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/3/2007.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):      **SONIKA J. E. TINKER, A SINGLE WOMAN**
Recorded:       **4/17/2007** as Instrument No. **2007-0038200-00** in book xxx, page xxx of Official Records in the office of the
                Recorder of **PLACER** County, California;

Date of Sale:   **4/6/2009** at **10:00 AM**
Place of Sale:  **At the main entrance to the Municipal Courthouse, 11546 "B" Avenue, Auburn, CA.**
Amount of unpaid balance and other charges: **$650,186.42**
The purported property address is:       **1977 GREEN MEADOW LN**
                                         **MEADOW VISTA, CA 95722**

Assessors Parcel No. **072-043-043-000**

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

Date: **3/16/2009**              **Quality Loan Service Corp.**
                                 **2141 5th Avenue**
                                 **San Diego, CA 92101**
                                 **619-645-7711 For NON SALE information only**
                                 **Sale Line: 714-730-2727 or Login to: www.fidelityasap.com**
                                 **Reinstatement Line: 619-645-7711**

Quality Loan Service Corp. by: Nicole Fuentes, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Exhibit F

THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE:   **$18.00**
RECORDED ON:     **February 15, 2011**
AS DOCUMENT NO:  **11-12688**
BY:   **s/ Nancy Medina**
LSI TITLE COMPANY (CA)

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

TS #: **CA-08-222757-CL**
Order #: **080136377-CA-DCI**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/3/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s): **SONIKA J. E. TINKER, A SINGLE WOMAN**
Recorded: **4/17/2007** as Instrument No. **2007-0038200-00** in book xxx, page xxx of Official Records in the office of the Recorder of **PLACER** County, California;

Date of Sale: **3/10/2011 at 9:30 AM**
Place of Sale: **At the north entrance to the Bill Santucci Justice Center located at 10820 Justice Center Drive, Roseville, CA 95678**
Amount of unpaid balance and other charges: **$704,009.03**
The purported property address is:   **1977 GREEN MEADOW LN
MEADOW VISTA, CA 95722**

Assessor's Parcel No. **072-043-043-000**

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, please refer to the referenced legal description for property location. In the event no common address or common designation of the property is provided herein directions to the location of the property may be obtained within 10 days of the date of first publication of this Notice of Sale by sending a written request to **Aurora Loan Services LLC 10350 Park Meadows Dr. Littleton CO 80124**

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;

[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 .

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

Date: 2/11/2011

**Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711 For NON SALE information only**
**Sale Line: 714-730-2727 or Login to: www.fidelityasap.com**
**Reinstatement Line: 619-645-7711**

Quality Loan Service Corp. by: Erica Paul, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Exhibit G



PLACER, County Recorder
DOC- 2011-0028166-00
1091
FRIDAY,   APR 8,  2011  15:01:22
MIC    $3.00 | AUT    $6.00 | SBS    $5.00
ERD    $1.00 | RED    $1.00 | REC    $14.00
ADD    $0.00

Ttl Pd     $30.00    Rcpt # 02115436
                      clkfpmlfj1/GV/1-6

RECORDING REQUESTED BY
AND RETURN TO:

1 |

Holly S. Burgess (SBN 104757)
2 | LAW OFFICES OF HOLLY S. BURGESS
680 Auburn Folsom Road, Suite 109
3 | Auburn, CA 95661
Telephone: (530) 889-8900
4 | Facsimile: (530) 889-8988
*hollyburgess@lohsb.com*

5 | Attorney for Plaintiffs,
CHRISTIAN PEDERSEN and SONIKA TINKER
6 |

7 |                THE UNITED STATES DISTRICT COURT

               THE EASTERN DISTRICT OF CALIFORNIA
8 |
                     SACRAMENTO DIVISION

9 | CHRISTIAN PEDERSEN and          ) LIS PENDENS:
SONIKA TINKER,                   )
10 |                              ) CASE NO: 2:11-CV-00642-KJM
                                 ) -EFB
             Plaintiffs,         )
11 |                              )
                                 )
12 |      vs.                     )
                                 )
13 | GREENPOINT MORTGAGE FUNDING INC., a )
*New York corporation*; MARIN       )
14 | CONVEYANCING CORP.; MORTGAGE    )
ELECTRONIC REGISTRATION SYSTEMS, )
15 | INC.; QUALITY LOAN SERVICE CORP.; )
AURORA LOAN SERVICES; TITLE       )
16 | COMPANY; GREENPOINT MORTGAGE    )
FUNDING TRUST MORTGAGE PASS-      )
17 | THROUGH CERTIFICATES,           )
SERIES 2007-AR1; and DOES 1 THROUGH 20, )
18 |                              )
             Defendants.         )
19 |                              )

20 |

21 |      **NOTICE IS HEREBY** given that this Lis Pendens is filed by SONIKA TINKER, against

22 | the above-named parties.

23 |      1.     This Lis Pendens affects title to a specific parcel of real property and the right to

24 | lawful possession of the same. The location of the property is **1977 Green Meadow Lane, Meadow**

1  Vista, CA 95722 ("the Subject Property").  The legal description of the Subject Property is:

2  PARCEL ONE:

3  A PORTION OF THE SOUTHWEST ¼ OF SECTION 32, TOWNSHIP 14 NORTH,
   RANGE 9 EAST, M.D.B.&M., ALSO BEING A PORTION OF PARCEL "A" OF PARCEL
4  MAP #71364 RECORDED IN BOOK 7 OF PARCEL MAPS, AT PAGE 93, MORE
   PARTICULARLY DESCRIBED AS SHOWN AS PARCEL "A" OF PARCEL MAP
5  #73655, FILED FOR RECORD ON APRIL 6, 1981, IN BOOK 18 OF PARCEL MAPS, AT
   PAGE 37, PLACER COUNTY RECORDS.
6  EXCEPTING THEREFROM THAT PORTION DESCRIBED IN MBR NO. 10179 A/B,
   BRENTSON TO MCCORMICK AS FOLLOWS:
7  A PORTION OF SECTION 31, TOWNSHIP 14 NORTH RANGE 9 EAST, M.D.B.&M.,
   ALSO BEING A PORTION OF PARCEL MAP P.71448 FILED IN BOOK 8 OF PARCEL
8  MAPS, AT PAGE 108, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:
   COMMENCING AT THE NORTHEAST CORNER OF PARCEL A OF PARCEL MAP
9  NO. 73655 AS SAID PARCEL IS SHOWN AND DELINEATED ON THAT CERTAIN
   PARCEL MAP FILED APRIL 6, 1981 IN BOOK 18 OF PARCEL MAPS AT PAGE 37,
10 PLACER COUNTY RECORDS; THENCE ALONG THE NORTH LINE OF SAID
   PARCEL A, NORTH 88 DEGREES 49 MINUTES 42 SECONDS WEST, 120.40 FEET TO
11 THE TRUE POINT OF BEGINNING; THENCE, LEAVING SAID NORTH LINE,
   SOUTH 01 DEGREES 10 MINUTES 18 SECONDS WEST, 12.0 FEET; THENCE
12 NORTH 85 DEGREES 33 MINUTES 20 SECONDS WEST, 210.34 FEET TO THE POINT
   ON SAID NORTH LINE; THENCE, ALONG SAID NORTH LINE, SOUTH 88
13 DEGREES 49 M8INUTES 42 SECONDS EAST, 210.00 FEET, MORE OR LESS, TO THE
   TRUE POINT OF BEGINNING.

14

15 PARCEL TWO:

16 ALL THAT PROPERTY DESCRIBED IN MBR NO. 10179 A/B, MCCORMICK TO
   BRENTSON AS FOLLOWS:
17 A PORTION OF SECTION 32, TOWNSHIP 14 NORTH, RANGE 9 EAST, M.D.B.&M.,
   ALSO BEING A PORTION OF PARCEL MAP P.71448 FILED IN BOOK 8 OF PARCEL
18 MAPS, AT PAGE 108, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:
   BEGINNING AT THE SOUTHWEST CORNER OF PARCEL A OF PARCEL MAP NO.
19 P.71448 AS SAID PARCEL IS SHOWN AND DELINEATED ON THAT CERTAIN
   PARCEL MAP FILED JULY 2, 1976, IN BOOK 8 OF PARCEL MAPS, AT PAGE 108,
20 PLACER COUNTY RECORDS; THENCE, ALONG THE WEST LINE OF SAID
   PARCEL A, NORTH 00 DEGREES 07 MINUTES 59 SECORNDS WEST, 9.60 FEET;
21 THENCE, LEAVING SAID WEST LINE, SOUTH 86 DEGREES 43 MINUTES 34
   SECONDS EAST, 261.61 FEET TO A POINT ON THE SOUTH LINE OF SAID PARCEL
22 A; THENCE, ALONG SAID SOUTH LINE, NORTH 88 DEGREES 49 MINUTES 42
   SECONDS WEST, 261.21 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

23 PARCEL THREE:

24 A NON-EXCLUSIVE EASEMENT FOR ACCESS, DRAINAGE AND UTILITY AND

-2-

1  PUBLIC UTILITY PURPOSES SHOWN AND DESGINATED AS AREA "K" OF
   PARCEL MAPS, RECORDED IN BOOK 7 OF PARCEL MAPS, AT PAGE 93, AND
2  BOOK 18 OF PARCEL MAPS, AT PAGE 37. PLACER COUNTY OFFICIALS
   RECORDS.
3  EXCEPTING THEREFROM THAT PORTION LYING WITHIN PARCEL ONE ABOVE.

4  PARCEL FOUR:

5  A NON-EXCLUSIVE EASEMENT FOR PUBLIC UTILITY PURPOSES SHOWN AND
   DESIGNATED AS AREA "J" OF PARCEL MAPS, RECORDED IN BOOK 7 OF
6  PARCEL MAPS, AT PAGE 93 AND BOOK 18 OF PARCEL MAPS, AT PAGE 37,
   PLACER COUNTY, OFFICIAL RECORDS.
7  EXCEPTING THEREFROM THAT PORTIN LYING WITHIN PARCEL ONE ABOVE.

8  PARCEL FIVE:

9  AN EASEMENT FOR ROAD PURPOSED BEING A STRIP OF LAND 60 FEET IN
   WIDTH LYING CONTIGUOUS TO THE EASTERLY BOUNDARY LINE OF THE
10 ABOVE DESCRIVED PARCEL DESCRIBED AS FOLLOWS:

11 BEGINNING AT THE POINT ON THE CENTER LINE OF SAID SECTION 31, FROM
   WHICH THE SOUTH QUARTER CORNER OF SECTION 32, BEARS SOUTH 88
12 DEGREES 44 MINUTES EAST 191.25 FEET DISXTANT AND RUNNING THENCE
   ALONG THE CENTER LINE OF SAID 60 FOOT STRIP NORTH 4 DEGREES 39
13 MINUTES EAST 205.66 FEET; THENCE NORTH 11 DEGREES 07 MINUTES EAST
   320.94 FEET; THENCE NORTH 5 DEGREES 10 MINUTES 30 SECONDS WEST 296.56
14 FEET; THENCE NORTH 16 DEGREES 58 MINUTES WEST 196.67 FEET; THENCE
   NORTH 18 DEGREES 50 MINUTES 30 SECONDS WEST 365.0 FEET, MORE OR
15 LESS, TO THE CENTER OF AN EAST AND WEST COMMUNITY ROAD.

16 PARCEL SIX:

17 A NON-EXCLUSIVE ROAD AND UTILITY EASEMENT EXTENDING WESTERLY
   FROM THE EAST LINE OF SECTION 36, TOWNSHIP 14 NORTH, RANGE 8 EAST
18 M.D.B.&M., SAID EASEMENT BEING MORE PARTICULARLY DESCRIBED IN
   DEED TO HENRY GRANAT, RECORDED JUNE 2, 1961, IN BOOK 878 OF OFFICIAL
19 RECORDS, AT PAGE 409.
   APN: 072-043-043.
20
           The Deed of Trust was illegally and improperly assigned or transferred.  The
21
   foreclosing entities GREENPOINT MORTGAGE FUNDING, INC., *a New York*
22
   /// .
23
   ///
24
   ///

                                      -3-

                                                              **LIS PENDENS**

1 | *corporation*; MARIN CONVEYANCING CORP.; MORTGAGE ELECTRONIC REGISTRATION

2 | SYSTEMS, INC.; QUALITY LOAN SERVICE CORP.; AURORA

3 | LOAN SERVICES; LSI TITLE COMPANY; GREENPOINT MORTGAGE FUNDING

4 | TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR1; and DOES

5 | 1 THROUGH 20, did not have duly perfected title upon which the foreclosure sale was based.

6 |

7 | Dated:   April 8, 2011                    LAW OFFICES OF HOLLY S. BURGESS

8 |                                         By:_____

9 |                                         HOLLY S. BURGESS
  |                                         Attorney for Plaintiffs,
  |                                         CHRISTIAN PEDERSEN and SONIKA TINKER

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

-4-

1

## PROOF OF SERVICE

2

3

 I am a citizen of the United States of America and a resident of the State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 680 Auburn Folsom Road, Suite 109, Auburn, California 95603.

4

5

6

 I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given appropriate postage and deposited in a United States mailbox in the City of Auburn, California, after the close of the day's business.

7

 On April 8, 2011, I served the following document(s):

8

## LIS PENDENS

9

10

XXXX        by placing, or causing to be placed, a true copy thereof, enclosed in a sealed Envelope with postage thereon fully prepaid, in the United States mail at Auburn, California, addressed as set forth below.

11

_____    by personally delivering, or causing to be delivered, a true copy thereof to the person(s) and at the address(es) set forth below.

12

_____    by causing a true copy thereof to be delivered to the person(s) at the address(es) Set forth below, by and/or through the services of:

13

14          a.    _____    Federal Express
            b.    _____    Express Mail

15          c.    _____    FAX from Facsimile Number (530) 889-8988 to Facsimile Number _____. (Followed by 1st class

16                transmission and this transmission was reported as complete and without error.

17

18

## SERVICE LIST ATTACHED

19

20

21

22

 I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

23

 Executed on April 8, 2011, at Auburn, California.

24

25                SUE ANN MOORE

26

27

28

                            LIS PENDENS

 BEST COPY AVAILABLE

## SERVICE LIST FOR LIS PENDENS:

United States District Court

Eastern District of California

***Pedersen and Tinker v. Greenpoint Mortgage Funding, et al.***

Case No. 2:11-CV-00642-KJM-EFB

DEFENDANTS AND THEIR AGENTS FOR SERVICE OF PROCESS

Aurora Loan Services, Inc.:
Agent for service of process:
CSC-Lawyers Incorporating Service
2730 Gateway Oaks Dr., Suite 100
Sacramento, CA  95833

Greenpoint Mortgage Funding, Inc.:
Agent for service of process:
CSC-Lawyers Incorporating Service
2730 Gateway Oaks Dr., Suite 100
Sacramento, CA  95833

Quality Loan Service Corp.:
Agent for service of process:
Dan Goulding
2141 5th Ave.
San Diego, CA  92101

LSI Title Company:
Agent for service of process:
CT Corporation
818 W. 7th St.
Los Angeles, CA  90017

Marin Conveyancing Corp.:
Agent for service of process:
CSC-Lawyers Incorporating Service
2730 Gateway Oaks Dr., Suite 100
Sacramento, CA  95833

Mortgage Electronic Registration System, Inc.:
Agent for service of process:
Genpact Registered Agent, Inc.
15420 Laguna Canyon Rd., Suite 100
Irvine, CA  92618

Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-ARI:
Agent for service of process: