1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHRISTIAN PEDERSEN and
     SONIKA TINKER,
11
                    Plaintiffs,                          CIV No. S-11-0642 KJM EFB
12           vs.

13   GREENPOINT MORTGATE FUNDING,
     Inc., a New York Corporation; MARIN
14   CONVEYANCING CORP.: MORTGAGE
     ELECTRONIC REGISTRATION SYSTEMS
15   INC.; QUALITY LOAN SERVICE CORP.;                   ORDER
     AURORA LOAN SERVICES; LSI TITLE
16   COMPANY; GREENPOINT MORTGAGE
     FUNDING TRUST MORTGAGE PASS-
17   THROUGH CERTIFICATES, SERIES 2007-AR1 and
     DOES ONE THROUGH 20,
18
                    Defendants.
19   _____/

20                  On June 8, 2011, the court heard argument on plaintiffs' motion for a preliminary

21   injunction and defendants' motion to dismiss.  Holly S. Burgess appeared for plaintiffs, who

22   were present in court; Matthew Learned of McCarthy & Holthus, LLP, appeared telephonically

23   for defendants Aurora Loan Services LLC (Aurora) and Mortgage Electronic Registration

24   Services, Inc. (MERS).

25   /////

26   /////

                                                1

I. Background

On March 8, 2011, plaintiffs filed an action against Aurora and MERS, as well as Greenpoint Mortgage Funding, Inc., Marin Conveyancing Corp., Quality Loan Service Corp., LSI Title Company, Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-ARI, and twenty Doe defendants, alleging violations of the Homeowners Equity Protection Act (HOEPA), 15 U.S.C. § 1639, *et seq.*; the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*; the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.* and Regulation Z § 226.4; fraudulent misrepresentation; breach of fiduciary duty; unjust enrichment; civil conspiracy; RICO; quiet title; usury and fraud; wrongful foreclosure; and breach of trust instruments.

On April 7, 2011, plaintiffs filed a motion for a temporary restraining order, alleging that a trustee's sale of their house was scheduled for April 11, 2011, but that defendants did not have the legal authority to foreclose on plaintiffs' property. ECF No. 9. Although plaintiffs gave defendants notice of their application for a restraining order, defendants did not respond. ECF No. 14. The court denied the application on April 8, 2011.

Defendants Aurora and MERS filed a motion to dismiss and to expunge a lis pendens on April 15, 2011, in tandem with a request for judicial notice. ECF Nos. 16 & 17. Plaintiffs have asked the court to take judicial notice of additional materials in connection with their opposition to the motion to dismiss. ECF Nos. 25-26, 29.

On April 20, 2011, plaintiffs filed a motion for a preliminary injunction and asked the court to take judicial notice of still more documents. ECF Nos. 20-22. Defendants have submitted even more materials as part of their opposition to the request for injunctive relief. ECF No. 27.

On April 20, 2011, defendants Quality Loan Service Corporation and LSI Title Company filed Declarations of Non-Monetary Status under Cal. Civil Code § 2924*l*. ECF No. 18. On May 18, 2011, plaintiffs filed objections to these declarations. ECF No. 34.

## II.  Standards For A Motion To Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  A motion to dismiss under this rule may also challenge the sufficiency of fraud allegations under the more particularlized standard of Rule 9(b) of the Federal Rules of Civil Procedure.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S.___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'"  *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S.Ct. at 1950.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject

1  to judicial notice" or to material attached to or incorporated by reference into the complaint.

2  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

3  consideration of documents attached to a complaint or incorporated by reference or matter

4  subject to judicial notice will not convert a motion to dismiss into a motion for summary

5  judgment.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks School of Business*

6  *v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. CNN*, 284 F.3d 977,

7  980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

8  dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

9  III.  <u>Requests For Judicial Notice</u>

10            Defendants ask the court to take judicial notice of a number of documents

11  recorded in Placer County, all relating to the acquisition of and foreclosure on 1977 Green

12  Meadow Lane, Meadow Vista, California.  Defendants' Request For Judicial Notice (DRFJN),

13  ECF No. 17, Exs. A-E.  Under Rule 201 of the Federal Rules of Evidence, a court may take

14  judicial notice of adjudicative facts "not subject to reasonable dispute" because they are "capable

15  of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

16  questioned."  Plaintiff does not object to the court's consideration of these documents, most of

17  which are attached to the complaint.  These are properly before the court.  *Champlaie v. BAC*

18  *Home Loans Servicing, LP,* 706 F.Supp.2d 1029, 1040 (E.D. Cal. 2009); *Lee v. County of Los*

19  *Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public

20  record).

21            Plaintiffs have asked the court to take judicial notice of several types of

22  information.  The first is a decision in a bankruptcy court matter, which they believe supports

23  their position.  *See In re Salazar*, 448 B.R. 814 (Bankr. S.D. Cal. 2011).  Second, they have

24  proffered a Consent Order, Stipulation and Consent to Issuance of Consent Order, Amended

25  Order to Cease and Desist, all stemming from proceedings in the federal Office of Thrift

26  Supervision, *In the Matter Of Aurora Bank FSB*, NE-11-16 and NE-10-33, and a Consent Order

and Stipulation and Consent To The Issuance of a Consent Order issued by the Office of Thrift Supervision in *In the Matter of MERSCORP, Inc.*, AA-EC-11-20.  Third, they have presented the declaration of Daniel Edstrom, concerning his search for the Trust Agreement, the Prospectus Supplement, the monthly certificateholders' statement and the monthly loan level files related to the Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-AR1. Edstrom avers that he has traced plaintiffs' loan, number 0124382367, and has provided the loan level file from March 25, 2011, which he pasted into a spreadsheet and which, he avers, demonstrates that "the payments on Plaintiffs' loan are being made."  ECF No. 29, Declaration of Daniel Edstrom, ¶¶ 12, 15 & Ex. 3.

The court declines to take judicial notice of *In re Salazar*, *supra*, as the decision itself is not an adjudicative fact.  *See* FED. R. EV. 201, comment ("'adjudicative facts are those to which the law is applied in the process of adjudication.  They are the facts that normally go to the jury in a jury case.  They relate to the parties, their activities, their properties, their businesses'").  Nevertheless, to the extent the decision has any bearing on the pending motions, the court will consider it in resolving those motions.

The court will take judicial notice of the various orders and stipulations relating to OTS's orders and decrees involving Aurora Bank and MERS, as these are federal government documents, readily available on the Office of Thrift Supervision's website.  *See Serrano v. World Savings Bank*, 2011 WL 1668631, at *2 (N.D. Cal. May 3, 2011) (government documents not subject to reasonable dispute and so judicially noticeable).

Finally, the court declines to take judicial notice of Daniel Edstrom's declaration and its attached exhibits.  While the Greenpoint Mortgage trust document and prospectus may be publicly available on the SEC's website, the court does not find them relevant to the issues posed by the pending motions.  Exhibit 3, which Edstrom describes as a manipulated record of the activity in plaintiffs' loan, is not subject to judicial notice: there is nothing else in the record connecting the loan number Edstrom searched to plaintiffs and nothing clearly demonstrating

1  that payments are being made on plaintiffs' loan, as he claims.  This information is not subject to

2  accurate and ready determination in light of the record before the court.

3  IV.  The Complaint

4            As noted, the complaint alleges violations of the Homeowners Equity Protection

5  Act (HOEPA), 15 U.S.C. § 1639 *et seq.*; the Real Estate Settlement Procedures Act (RESPA), 12

6  U.S.C. § 2601, *et seq.*; the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.* and

7  Regulation Z § 226.4; fraudulent misrepresentation; breach of fiduciary duty; unjust enrichment;

8  civil conspiracy; RICO; quiet title; usury and fraud; wrongful foreclosure; and breach of trust

9  instruments.  Many of the allegations in the complaint listed under "Facts Common To All

10  Causes Of Action" are not specific to this action, but are a screed against the mortgage industry

11  and the securitization of mortgages generally.[1]  Complaint (Compl.) ¶¶ 16-32.

12            With respect to their case in particular, plaintiffs do allege that on April 17, 2007,

13  Tinker executed a Deed of Trust and security instrument with Greenpoint Mortgage as the lender

14  and Marin Conveyancing as the Trustee.  *Id.* ¶ 38.  They identify Greenpoint Mortgage Funding,

15  Inc. as a New York Corporation in the business of banking services; defendant MERS as a

16  business that operates a database and assigned mortgages in violation of California Corporations

17  Code § 191(d); and defendant Aurora as a business engaged in banking services and the

18  servicing of residential mortgages.

19  /////

20

21            [1]  For example, plaintiffs assert that "[t]he foreclosing entity and its agents regularly
commit perjury in their testimony," without providing a single instance of alleged perjury in this

22  or any other case and that employees of Quality Loan "executed and notarized forged documents
as to the ownership of the loan," again without providing a concrete example to support the

23  claim, and that "the multiple transfers of title of the mortgage loan between the originator.. . the
REIT Trust, the Depositor and the REMIC Trust is simply ignored as it [*sic*] never can be proved

24  or shown to the Court."  Compl. ¶¶ 17, 22, 37.  These contentions do not advance plaintiffs'
case.  *Cf. In re Macklin*, 2011 WL 2015520, at *13 (Bankr. E.D. Cal. May 19, 2011) (motion

25  "packed with claims, contentions and inflammatory comments indicting the mortgage system"
did not assist the court in reaching the single issue with merit).  Similarly, the claim plaintiffs

26  make, that their "mortgage obligation has been paid" and their "alleged 'default' is a fiction,"
has been characterized as "illogical."  *Id.* at *5.

1    Plaintiffs also allege that "the chain of title is hopelessly confused and

2    convoluted" and it reveals "a slew of other illegal actions." *Id.* ¶ 40.  After discussing the

3    alleged problems in the chain of title and the Notice of Default, plaintiffs assert that Tinker

4    called an unidentified "lender/service" to request a loan modification or other means to avoid

5    foreclosure, but that the lender/servicer refused to work with plaintiffs or to disclose any options

6    available to avoid foreclosure.  *Id.* ¶¶ 41-44, 45-46, 48.  Instead, while refusing or neglecting to

7    give plaintiffs "the opportunity to cooperate in resolving the debt," the defendants "purposefully

8    deceived plaintiffs that the Mortgage modification was proceeding as planned and deceptively

9    and purposefully wrongfully foreclosed on Plaintiffs' property." *Id.* ¶¶ 51, 52.

10    Finally, plaintiffs aver that "[b]ecause it is not clear who was actually in interest

11    at the time of the actions described below, Plaintiffs allege this Cause of Action in the alternative

12    against each of the possible parties at fault." *Id.* ¶ 65.  In connection with their HOEPA cause of

13    action, but realleged in each subsequent cause of action by reference to the preceding

14    paragraphs, plaintiffs ask rescission of the mortgage loan transaction, termination of the

15    mortgage and security interest in the property, return of any money or property paid by plaintiffs;

16    an amount equal to twice the finance charges; relinquishment of the right to retain any proceeds

17    and actual damages.  *Id.* ¶ 64.  In their prayer for relief, plaintiffs ask for an order compelling the

18    defendants to transfer legal title in the subject property to plaintiffs, a declaration that defendants

19    have no right or interest in the property, an order enjoining defendants from claiming any interest

20    in the property; and a declaration that the foreclosure is void, among other things. *Id.* at 28-29.

21    Plaintiffs' separate causes of action are set forth and analyzed in light of the

22    pending motion, below.

23    V.  <u>The Motion To Dismiss</u>

24    A.  <u>TILA and HOEPA</u>

25    Plaintiffs allege that defendants' disclosure of the finance charges was improper

26    and that they failed to provide the required notice of the right to rescind the transaction, in

1  violation of 15 U.S.C. § 1601, *et seq*., and failed to provide accurate TILA disclosures about the

2  amount being financed.  Compl. ¶¶ 61, 71-73.  They also claim that defendants failed to make

3  the disclosure required under HOEPA, 15 U.S.C. § 1639(A)(1); offered credit to plaintiff Tinker

4  without regard to her ability to pay; and failed to notify her of the right to rescind the transaction.

5   Compl. ¶¶ 56-60.  In addition, they aver that the fact that the loan was "actually the proceeds

6  from the sale of securities, and not a loan as it is defined under the laws of California, was a

7  'material disclosure' which was deliberately and intentionally undisclosed."  *Id*. ¶ 32.  They

8  assert that they "first learned" of defendants' actions in September 2010, which should be the

9  trigger date for the statute of limitations.  Compl. ¶¶ 67, 77.

10         Defendants argue that plaintiffs' claims are too vague to satisfy the pleading

11  requirements of Federal Rule of Civil Procedure 8(a)(2) and that the claims are time-barred.

12  Motion To Dismiss (MTD), ECF No. 16-1, at 9-11.[2]  Plaintiffs counter that they are entitled to

13  equitable tolling and argue, without citation to authority, that when the ground for rescission is

14  fraud or mistake, the statute does not begin to run until the aggrieved party discovers the facts

15  constituting the fraud.  Opposition (Opp'n), ECF No. 25 at 12-13.

16         Under the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq*., and its implementing

17  regulations, 12 C.F.R. § 226.1, *et seq*., a lender must make certain disclosures to a borrower

18  before the consummation of a loan, including the finance charges, the annual percentage rate,

19  and the right to rescind the transaction.  15 U.S.C. § 1638(a) & (b); 12 C.F.R. §§ 226.17(b),

20  226.23(b); *see Yamamoto v. Bank of New York*, 329 F.3d 1167, 1169 (9th Cir. 2003).  TILA

21  provides causes of action for rescission and damages if the lender does not make the required

22  disclosures.

23         HOEPA is an amendment to TILA, designed to "combat predatory lending,"

24  which applies only to certain high cost loans.  *In re First Alliance Mortgage Co.*, 471 F.3d 977,

25

26         [2]  The court relies on the page numbers assigned by its CM/ECF system.

8

1    984 n.1 (9th Cir. 2006); *Hamilton v. Bank of Blue Valley*, 746 F.Supp.2d 1160, 1179 (E.D. Cal.

2    2010) (HOEPA is amendment to TILA); 15 U.S.C. §§ 1602(aa) & 1639.  To plead a HOEPA

3    violation, a plaintiff must allege facts that the loan is one covered by the statutes.  *Yulaeva v.*

4    *Greenpoint Mortgage Funding, Inc*., 2010 WL 5394859, at *4 (E.D. Cal. Dec. 21, 2010).

5    Plaintiffs' allegations fall short of this standard.

6            Both TILA and HOEPA allow for rescission of certain loans and for damages, so

7    long as the borrower acts within specified time periods.  Under 15 U.S.C. § 1635(f), if the lender

8    fails to provide notice of rescission rights, the usual three day period is extended to three years

9    from the date of the consummation of the transaction.  Under 15 U.S.C. § 1640(e), if the

10   borrower seeks damages from TILA and HOEPA violations, he must file his action within one

11   year of the transaction.  *Miguel v. Country Funding Corp*., 309 F.3d 1161, 1163 (9th Cir. 2002)

12   (rescission); *Edstrom v. Ndex West, LLC*, 2010 WL 4069482, at *3 (E.D. Cal. Oct. 18, 2010)

13   (damages).

14           The Ninth Circuit has observed that "the failure to make the required disclosures

15   occurred, if at all, at the time the loan documents were signed."  *Meyer v. Ameriquest Mortgage*,

16   342 F.3d 899, 902 (9th Cir. 2003); *see also King v. State of California*, 784 F.2d 910, 915 (9th

17   Cir. 1986).  In this case, the loan documents were signed in April 2007, rendering the TILA and

18   HOEPA actions untimely.  Compl. ¶ 38.

19           Plaintiffs argue they are entitled to equitable tolling, based on their threadbare

20   allegation that they did not learn of the violations, because of defendants' fraud, until September

21   2010.  ECF No. 25 at 12-13; Compl. ¶¶ 67, 77.  They fail to acknowledge, however, that

22   § 1635(f) is a statute of repose, not a statute of limitations, and as such is not subject to equitable

23   tolling.  *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998) ("we . . . hold that § 1635(f)

24   completely extinguishes the right of rescission at the end of the 3-year period"); *Lane v. Vitek*

25   *Real Estate Industries Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010).  Even assuming that

26   /////

1    plaintiffs' mortgage was subject to rescission, this action comes too late.  *See Champlaie v. BAC*

2    *Home Loans Servicing, LP*, 706 F.Supp.2d 1029, 1042 (E.D. Cal. 2009).

3              Plaintiffs may be entitled to equitable tolling for their TILA damages claim, but

4    their complaint as pled is too conclusory to support the assertion.  "To establish excusable delay,

5    plaintiffs must show 'fraudulent conduct by the defendant[s] resulting in their concealment of the

6    operative facts, [their] failure . . . to discover the operative facts that are the basis of [their] cause

7    of action within the limitations period, and [their] *due diligence . . . until discovery of those*

8    *facts.*'"  *Edstrom v. Ndex West. LLC*, 2010 WL 4069482, at *3 (quoting *Federal Election Com'n.*

9    *v. Williams*, 104 F.3d 237, 240-41 (9th Cir. 1996) (emphasis in original)).  Plaintiffs' assertion

10   that they did not discover the violations until September 2010 "is insufficient to establish the

11   necessity for equitable tolling under even the pleading standards of Federal Rule of Civil

12   Procedure 8(a)."  *Lane,* 713 F.Supp. at 1100.  Plaintiffs will be given leave to amend this portion

13   of their TILA claim, if they are able to do so in light of Federal Rule of Civil Procedure 11.

14             They will not, however, be given leave to amend their HOEPA damage claims.

15        A high-cost HOEPA loan 'is a consumer credit transaction that is
          secured by the consumer's principal dwelling, other than a
16        residential mortgage transaction, . . . if . . . the total points and fees
          payable by a consumer at or before closing will exceed the greater
17        of . . . 8 percent of the total loan amount; or . . . $400.' *Id.*
          §1602(aa)(1).
18

19   *Cunningham v. Nationscredit Financial Services*, 497 F.3d 714, 717 (7th Cir. 2007).  A

20   residential mortgage transaction is "a transaction in which a . . . deed of trust. . is created or

21   retained against the consumer's dwelling to finance the acquisition . . . of such dwelling."  15

22   U.S.C. § 1602(w).  Nothing in the complaint suggests that the loan at issue in this case was taken

23   to refinance the home at issue or to fund construction.  HOEPA does not, therefore, apply to this

24   transaction.  *Yulaeva v. Greenpoint Mortgage Funding, Inc.*, 2010 WL 5394859, at *4.

25   /////

26   /////

10

B. <u>RESPA</u>

Under the Real Estate Procedures Act, a lender may not charge a borrower fees related to the mortgage other than for services actually performed.  12 U.S.C. § 2607(b); *Jensen v. Quality Loan Service Corp.*, 702 F.Supp.2d 1183, 1194 (E.D. Cal. 2010).  Plaintiffs allege, again in conclusory fashion, that "in connection with the mortgage loan to Plaintiffs, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed."  Compl. ¶ 70.  Defendants argue that the claim is too conclusory to survive a motion to dismiss and is barred by RESPA's statute of limitations.

Under 12 U.S.C. § 2614, a claim under § 2607 must be brought within a year after the "date of the occurrence of the violation. . . ."  *See Brewer v. Indymac Bank*, 609 F.Supp.2d 1104, 1117 (E.D. Cal. 2009).  As noted above, plaintiff Tinker consummated this real estate loan in April 2007; the instant action, filed in March 2011, is not timely.

Defendants do concede that the RESPA statute of limitations is subject to equitable tolling, but argue that plaintiffs' assertions do not support any such claim.  *Id*. at 1117-18; *Yuleva v. Greenpoint Mortgage Funding, Inc.* 2009 WL 2880393, at *14 (E.D. Cal. Sept. 3, 2009) (*Yuleva I*).  They are correct: as with plaintiffs' TILA claim, to plead their entitlement to equitable tolling, plaintiffs must do more than claim they were unable to discover the nature of their claim because of defendants' fraud, but rather must allege facts in support of a claim of excusable delay.  *Brewer*, 609 F.Supp.2d at 1117; *Edstrom*, 2010 WL 4069482, at *3.  Plaintiffs will be given leave to amend this claim if they are able, not only to provide specifics about equitable tolling but also to describe the nature of the fees charged and the basis for their claim that those fees did not relate to services performed.  *Compare Palmer v. GMAC Commercial Mortg.*, 628 F.Supp.2d 186, 193-94 (D.D.C. 2009) (complaint was adequate, if thin, when plaintiff alleged that excessive fees for the loan must have been for services not provided in light of her credit-worthiness).

/////

C. <u>Fair Credit Reporting Act</u>

The Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, *et seq*., was enacted in order to ensure that consumer reporting agencies "exercise their grave responsibilities with fairness. . . " 15 U.S.C. § 1681(a)(4).  It applies to consumer reporting agencies or users of reported information who wilfully or negligently violate its provisions.  *Rush v. Macy's New York*, 775 F.2d 1554, 1557 (11th Cir. 1985).  A "consumer reporting agency" is one that "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f); *Rush*, 775 F.2d at 1557.  A consumer report is "any . . . communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, general reputation, personal characteristics or mode of living which is used . . . or collected . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit. . . ." 15 U.S.C. § 1681a(d); *Mathis v. LHR, Inc.*, 2010 WL 316546, at *2 (S.D. Ga. Jan. 26, 2010).

Plaintiffs allege that defendants "wrongfully, improperly, and illegally reported negative credit information", including "an excessive amount of debt into which Plaintiffs were tricked into . . . signing," even though plaintiffs made every payment on time from closing until the time of default; this caused a decline in plaintiffs' credit score.  Compl. ¶ 79.  They describe defendant Aurora as an entity "engaged in the business of banking services and servicing of residential mortgages" and MERS as a business which was "operating a database, assigning mortgages. " Plaintiffs have not alleged any facts suggesting that defendants Aurora or MERS are in the business of compiling consumer credit information and thus subject to FCRA; in fact, their descriptions of these two defendants demonstrate that neither is in a business subject to the provisions of the act.  *Hedman v. Aurora Loan Services*, 2010 WL 3784170, at *4 (E.D. Cal. Sep. 27, 2010).  This cause of action is dismissed with prejudice.

/////

D. <u>Fraudulent Misrepresentation</u>

Plaintiffs allege that the defendants maliciously concealed information that should have been disclosed, "materially misrepresented material information" and "misrepresented the truth;" that plaintiff Tinker reasonably relied on defendants "in agreeing to execute the mortgage loan documents;" and that plaintiffs first learned of these misstatements and omissions in September 2010.  Compl. ¶¶ 84-87, 90.  In the section of the complaint providing "facts common to all counts," plaintiffs describe only one instance of concealment: they allege the defendants failed to disclose the identity of the "true lender," i.e., the members of the REMIC trust.  Compl. ¶ 32.

Defendants argue that these allegations do not state a claim for fraudulent misrepresentation under California law and do not meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b).  Plaintiffs do not discuss how the complaint's allegations meet the pleading requirements.  Instead they provide examples of defendants' allegedly fraudulent acts; they claim, for example, that defendants recorded spurious documents, which is prohibited by California law.  ECF No. 25 at 16.  Even if these arguments established the elements of fraudulent misrepresentation, the court could not consider them in evaluating the sufficiency of the complaint.  *Adams v. New York State Educ. Dept.*, 752 F.Supp.2d 420, 433 n.4 (S.D.N.Y. 2010) (court will not consider information in points and authorities in considering sufficiency of complaint); *Winn v. Lassen Canyon Nursery Inc.*, 2010 WL 4688798, at *2 (E.D. Cal. Nov. 10, 2010).

In California, a claim of fraudulent misrepresentation has five elements: (1) misrepresentation, which encompasses false representation, concealment and nondisclosure; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damage.  *Lazar v. Superior Court*, 12 Cal.4th 631, 637 (1996); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F.Supp.2d at 1058; *Dooms v. Federal Home Loan Mortgate Corporation,* 2011 WL 1232989, at *13 (E.D. Cal. 2011).  A fraud claim against a corporation must provide information about the

1   person who made the representations challenged as fraudulent, and his or her authority to speak.

2   *Dooms,* 2011 WL 1232989, at *14.

3          In addition to the usual pleading requirements of Rule 8, allegations of fraud must

4   meet heightened pleading standards.  Under Rule 9(b), a plaintiff who alleges fraud "must state

5   with particularity the circumstances constituting the fraud," but may "aver[] generally" the state

6   of mind animating the fraud.  The pleading must "'be specific enough to give defendants notice

7   of the particular misconduct . . . so that they can defend against the charge and not just deny that

8   they have done anything wrong.'"  *Sanford v. Memberworks, Inc.*, 625 F.3d 550, 558 (9th Cir.

9   2010) (quoting *Kearns v. Ford Motor Co.,* 567 F.3d. 1120, 1124 (9th Cir. 2009)).  To avoid

10  dismissal, the complaint must describe the time, place, and specific content of the false

11  representations and identify the parties to the misrepresentations.  *Id.*; *Dooms v. Federal Home*

12  *Loan Mortgage Corporation*, 2011 WL 1232989, at *14.  In addition, a plaintiff may not "lump

13  multiple defendants together" but rather must "differentiate their allegations."  *Destine v.*

14  *Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (quoting *Cisneros v. Instant Capital Funding Grp.,*

15  *Inc.*, 263 F.R.D. 595, 606-07 (E.D. Cal. 2009)).  Plaintiffs' conclusory claims – that defendants

16  failed to disclose the true identity of the lender – fall far short of the specificity required by the

17  federal rules and do not match the elements of the cause of action as defined by federal law.

18         Defendants also argue that the cause of action is barred by the three year statute

19  of limitations.  *See* Cal. Civ. Code § 338(d) (three year statute of limitations for actions "on the

20  ground of fraud or mistake," which does not accrue "until the discovery . . . of the facts

21  constituting the fraud").  A party is deemed to have discovered the fraud when he "'has reason at

22  least to suspect the factual basis for its elements."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th

23  797, 807 (2005) (quoting *Norgart v. The Upjohn Company*, 21 Cal.4th 383, 398 (1999)).  To rely

24  on a claim of delayed discovery, a plaintiff must allege facts showing that the facts could not

25  have been discovered earlier even in the exercise of reasonable diligence and identifying how

26  and when plaintiff discovered the fraud.  *Briosos v. Wells Fargo Bank*, 2011 WL 1740100, at *4

(N.D. Cal. May 5, 2011); *but see Bonds v. Nicoletti Oil, Inc.*, 2008 WL 2233511, at **7-8 (E.D. Cal. May 28, 2008) (questioning whether California pleading standards apply, but finding it plaintiff's burden to plead facts supporting delayed discovery).  Plaintiffs' bare claim that they did not discover the fraud until September 2010 does not save this claim from the operation of the statute of limitations.  They will be given leave to amend this portion of the complaint, if they are able.

E.  <u>Breach Of Fiduciary Duty</u>

Plaintiffs allege that defendants breached their fiduciary duty to Tinker by inducing her to "enter into a mortgage transaction which was contrary to TINKER'S stated intention; contrary to the Plaintiffs' interest; and contrary to Plaintiffs' preservation of their home."  Compl. ¶ 93.  They also allege that they "reposed trust and confidence" in defendants because plaintiffs are not bankers, mortgage brokers, mortgage lenders or securities dealers.  *Id.* ¶ 92.  Defendants argue that there is no fiduciary relationship between a lending institution and a borrower.  ECF No. 16-1 at 14.  Plaintiffs respond that defendant Aurora, a loan servicer, was a fiduciary because it was not a lender and that other defendants were fiduciaries because they were not the source of the funds and so are brokers only, not lenders.  ECF No. 25 at 17.  Nothing in their description of the transaction, however, suggests that either Aurora or MERS played any role in the loan origination, either as lender or broker.  Compl. ¶¶ 3-4, 17-18.

The elements of a claim of breach of fiduciary duty are (1) the existence of a fiduciary duty; (2) a breach of that duty; (3) damage as the result of the breach.  *Rosal v. First Federal Bank of California*, 671 F.Supp.2d 1111, 1128 (N.D. Cal. 2009).  Under California law, there is no fiduciary relationship between a lender and a borrower when "the institution's involvement in the loan transaction does not exceed the scope of its conventional role as mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096 (1991); *Rosal*, 671 F.Supp. 2d at 1129.  Courts have similarly determined that a loan servicer owes no fiduciary duty to a borrower "when its involvement in the transaction does not exceed

1   the scope of its conventional role as a loan servicer such that it assumed a fiduciary duty."

2   *Huerta v. Ocwen Loan Servicing, Inc.*, 2010 WL 728223, at *4 (N.D. Cal. Mar. 1, 2010);

3   *Walters v. Fidelity Mortgage of California, Inc.*, 730 F.Supp.2d 1185, 1205 (E.D. Cal. 2010).

4   Nothing in the complaint suggests that MERS, described as a corporation that operates a

5   database and assigns mortgages, has any fiduciary relationship with a mortgagor.  Nothing in its

6   role as nominee for the lender suggests that MERS owes any fiduciary duty to a trustor/borrower

7   and plaintiffs have not alleged as much.  This claim is properly dismissed.

8          F.  Unjust Enrichment

9        Plaintiffs allege that Tinker had an implied contract with defendants for them to

10  provide credit to Tinker without charging fees unrelated to the settlement of the loan and that

11  defendants cannot retain the fruits of their acts in charging a "higher interest rate, fees, rebates,

12  kickbacks, profits . . . gains and yield spread premium unrelated to the settlement services

13  provided at closing."  Compl. ¶¶ 98-99.

14        Defendants contend that unjust enrichment is not a cause of action but rather is a

15  general principle underlying other remedies.  ECF No. 16-1 at 14.  They note that plaintiffs'

16  claims all stem from the fees collected as part of the original loan transaction and that nothing in

17  the complaint suggests either MERS or Aurora were parties to that transaction.  *Id.*  Plaintiffs

18  counter that the claim of fees and kickbacks is pled generally, not only in connection with the

19  loan.  ECF No. 25 at 18.

20        The elements of an unjust enrichment claim are "'receipt of a benefit and [the]

21  unjust retention of the benefit at the expense of another.'"  *Peterson v. Cellco Partnership*, 164

22  Cal.App.4th 1583, 1593 (2008) (quoting *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726

23  (2000)).  It is, as defendants argue, not an independent cause of action, but rather is pled as part

24  of a quasi-contract claim "in order to avoid unjustly conferring a benefit upon a defendant where

25  there is no valid contract."  *Ram v. Wachovia Mortg., FSB*, 2011 WL 1135285, at *9 (E.D Cal.

26  Mar. 25, 2011).  Despite plaintiffs' argument, their claim of unjust enrichment is based on fees,

interest rates, kickbacks and profits, among other things, "unrelated to settlement services provided at closing."  They have not pled that Aurora or MERS had any part in the loan closing process, which is the basis of their claim of unjust enrichment.  This portion of the complaint fails to state a claim.  *See Jackson v. Ocwen Loan Servicing, LLC*, 2010 WL 3294397, at *6 (E.D. Cal. Aug. 20, 2010).

G. <u>Civil Conspiracy To Defraud</u>

Plaintiffs allege that "in connection with the application for and consummation of the mortgage loan . . . the Defendants agreed . . . to engage in actions in a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud Plaintiff, including . . . the commencement of foreclosure."  Compl. ¶ 105.  They also aver that the defendants agreed to engage in the conspiracy to defraud "for the common purpose of accruing economic gains for themselves . . .," and that as a result of the "actions of Defendants in combination resulting in fraud and breaches of fiduciary duty," plaintiffs have suffered damages.  Compl. ¶¶ 106, 108.

The elements of a cause of action for civil conspiracy in California are "the formation and operation of the conspiracy and damage resulting to the plaintiff from an act or acts done in furtherance of the common design."  *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 44 (1989); *Champlaie*, 706 F.Supp.2d at 1057.  "[T]ort liability arising from conspiracy presupposes that the conspirator is legally capable of committing the tort; i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty."  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511 (1994); *Champlaie*, 706 F.Supp.2d at 1057.  Plaintiffs have not identified any duty recognized by law that Aurora and MERS owes to them and so have not pled a civil conspiracy claim based on breach of a specific duty.

Plaintiffs do allege that defendants entered into a conspiracy to defraud.  Like civil conspiracy in general, a conspiracy to defraud is not an independent tort, but rather "only

17

serves as a theory of liability for claims of fraud." *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d at 1103; *Mehrtash v. Mehrtash*, 93 Cal.App.4th 75, 82 (2001) ("there is no separate tort of civil conspiracy, and there is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed . . . ."). In California, "nondisclosure is not ordinarily actionable unless the defendant is a fiduciary with a duty to disclose," but "active concealment or suppression of facts by a nonfiduciary is the equivalent of a false representation, i.e., actual fraud." *Younan v. Equifax, Inc*., 111 Cal.App.3d 498, 512-13 (1980). Because a conspiracy to defraud requires that the defendants engaged in fraud, the strict pleading requirements of Rule 9(b) apply. *Lane*, 713 F.Supp.2d at 1103. Plaintiffs have come nowhere near satisfying these requirements, but will be given the opportunity to do so if they are able.

## H. RICO

Plaintiffs allege that each of the defendants is "an enterprise Defendant" and that each one's use of "multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiffs constitutes 'an enterprise,'" designed to perpetrate a fraud "through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents." They also allege that defendants knew the other defendants were engaging in or planning to engage in the violations of law described in the body of the complaint and each abetted the acts of the other. Compl. ¶¶ 112-113, 119. Defendants argue that these allegations do not satisfy the pleading requirements for a civil RICO violation. As is typical of plaintiffs' opposition to the motion to dismiss, plaintiffs engage in no real analysis of the challenges to their pleading but rather fall back on the fact that this court must presume their allegations to be true and to draw all inferences in their favor. What plaintiffs ask, in essence, is for the court to supply essential allegations for their causes of action in the guise of drawing inferences. This the court cannot do, even when applying the liberal standard of evaluating *pro se* complaints; it certainly will not do so where, as here, counsel has drafted the complaint. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982); *Smith v. United States*,

1   561 F.3d 1090, 1096 (10th Cir. 2009) (court "will not supply additional factual allegations to

2   round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf.").

3           Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or

4   associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct

5   of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful

6   debt." "Racketeering activity" is defined as any of a number of "generically specified criminal

7   acts as well as the commission of one of a number of listed predicate offenses." *Sosa v.*

8   *DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006). A "pattern of racketeering activity" requires

9   at least two acts, and an unlawful debt is one stemming from illegal gambling. 18 U.S.C.

10  § 1961(1), (5) & (6).

11          Although § 1962 defines a crime, a plaintiff may seek civil remedies for RICO

12  violations if he has been "injured in his business or property by reason of a violation of section

13  1962. . . ." 18 U.S.C. § 1964(c). The elements of a RICO claim are "(1) conduct; (2) of an

14  enterprise; (3) through a pattern (4) of racketeering activities (known as 'predicate acts');

15  (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506,

16  510 (9th Cir. 1996). The fifth element has two subparts: the plaintiff must show that the injury

17  was proximately caused by the conduct and that he has suffered a concrete financial loss. *Chaset*

18  *v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1086 (9th Cir. 2002). "Congress enacted RICO 'to

19  combat organized crime, not to provide a federal cause of action and treble damages' for

20  personal injuries." *Id.* (quoting *Oscar v. University Students Coop. Ass'n.*, 965 F.3d 783, 785

21  (9th Cir. 1992) (en banc)).

22          Plaintiffs' RICO cause of action does not appear to be tethered to the statute, but

23  rather is pled simply as a general damages claim for which plaintiffs' seeks treble damages.

24  Nothing in the complaint suggests that the defendants have committed any of the crimes listed as

25  RICO predicate acts. To the extent the court can identify anything in this convoluted claim as a

26  predicate act, it is the perpetration of fraud on plaintiffs "by use of intentional nondisclosure,

material misrepresentation, and creation of the fraudulent loan documents."  Neither fraud, in and of itself, nor the creation of fraudulent loan documents are predicate offenses under RICO. *See Derakhshan v. Mortgage Electronic Registration Systems*, 2009 WL 3346780, at *4 (C.D. Cal. Oct.13, 2009) (predatory lending is not predicate offense for RICO).  This cause of action is not sufficiently pled.

I. Quiet Title

Plaintiffs allege that defendants have no legal or equitable claim, right or interest to their property and further allege that "the real party in interest on the lender's side may be the owner of the asset-backed security issued by the servicing and pooling vendor, the insurer through some claimed equitable interests, or the Federal Government through the United States Department of the Treasury or the Federal Reserve.  The security is a 'securitized' bond deriving its value from the underlying mortgages, of which the subject mortgage is one.  Thus Plaintiffs are entitled to quiet title against Defendants, clearing title of the purported subject mortgage encumbrance."  Compl. ¶¶ 124-126.  Plaintiffs also claim they have attempted to rescind the loan, but do not know to whom the request should be addressed.  *Id.* ¶ 123.

Defendants argue that plaintiffs cannot quiet title, as they have not tendered the balance of the loan secured by the Deed of Trust.  ECF No. 16-1.  Plaintiffs counter that none of the defendants are the real parties in interest, as none of them funded the loan and that if tender is required, it would not be payable to any of the defendants.  ECF No. 25 at 20.

Tender of the indebtedness is required to quiet title in California.  *Aguilar v. Boci*, 39 Cal.App.3d 475, 477 (1974) ("the cloud upon his title persists until the debt is paid"); *Kelley v. Mortgage Electronic Registration Systems Inc*., 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). Plaintiffs have not suggested they are able to tender the amount due under the note, whether or not it is owed to defendants.  They will be given the opportunity to amend if they are able.

/////

/////

1          J.   Usury And Fraud

2                 Plaintiffs allege that the loan and mortgage were structured so as to create the

3    appearance that the property was worth more than the actual market value; that defendants

4    disguised the transaction so that neither the real party in interest nor the fees, rebates or

5    kickbacks were revealed to plaintiffs; that defendants' scheme was a plan to trick plaintiffs into

6    signing "what would become a negotiable security used to sell unregulated securities under

7    fraudulent and changed terms from the original note" and used to collect interest "in excess of

8    the legal rate."  Compl. ¶¶ 130-133.

9                 Defendants argue that these allegations fail to state a claim for usury because the

10   complaint asserts, without factual support, that the interest exceeds the legal rate.  ECF No. 16-1

11   at 18.  They also contend that California's usury laws are preempted by the Depository

12   Institutions and Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 183d, which

13   provides that loans secured by a first lien on residential property are exempted from state usury

14   laws.  *Id*.  They cite only a case discussing the preemption of Washington's laws without

15   addressing whether California law has opted out of the provisions preempting state usury laws.

16   *See* 12 U.S.C. § 1735f-7a(b)(2).  The court declines to make defendants' argument for them.

17                 In California, "the usury laws protect against the oppression of debtors through

18   excessive interest rates charged by lenders."  *Agapitov v. Lerner*, 108 Cal.App.4th 830, 838

19   (2003).  A usury claim has four elements: the transaction must be a loan or forbearance[3], the

20   interest must exceed the statutory maximum, the loan and interest must be absolutely repayable

21   by the borrower, and the lender must intend to enter into a usurious transaction.  *Ghirardo v.*

22   /////

23

24          [3]  "'A forbearance occurs when the creditor, in exchange for consideration, agrees to wait
     for a period of time to collect the debt.  A forbearance may also occur in credit sale transactions,
25   where the original note is modified to extend the period of payment.'"  *Roodenburg v. Pavestone
     Co., L.P.*, 171 Cal.App.4th 185, 192 (2009) (quoting *Sheehy v. Franchise Tax Bd.*, 84
26   Cal.App.4th 280, 284 (2000)).

1   *Antonioli*, 8 Cal.4th 791, 798 (1994).  An interest rate that exceeds ten percent per annum may

2   be usurious.  Cal. Const. Art. 15 § 1.

3          Plaintiffs do not disclose the interest rate on their loan or contend that it exceeded

4   the maximum rate allowed by law and so have not adequately pled a cause of action for usury.

5   *Solano v. America's Servicing Company ,*2011 WL 1669735, at *9 (E.D. Cal. May 3, 2010).

6   This claim will be dismissed with leave to amend.

7                    K.  Wrongful Foreclosure And Breach Of Trust Instruments

8          Plaintiffs allege that defendants are not the beneficiaries of the deed of trust, but

9   rather are acting as trustees of a REMIC[4] Loan Pool Trust; that "if the truth is that the Note was

10  separated from the Deed of Trust and transferred to the loan pool, . . . the Right Title and Interest

11  to the Deed of Trust followed the Note. . . and any subsequent purported Assignment is a lie. . .;"

12  the substitution of the trustee in this case is void because it was not executed by the lender and

13  did not comply with provisions of the California Civil Code; the Notice of Default was recorded

14  before the assignment; that the assignment of the mortgage with a power of sale must be

15  recorded in order for any sale under the mortgage to be proper; that the foreclosure violates

16  paragraph 20 of the Deed of Trust because defendants have not complied with its provisions.

17  Compl. ¶¶ 142-151.

18          Defendants argue that the Notice of Default was properly issued by Quality Loan

19  Services because it was acting as agent for the beneficiary even before it was formally

---

20          [4] "Real Estate Mortgage Investment Conduits or 'REMICS' . . . are trusts established to
21  facilitate under favorable tax consequences the issuance of asset-backed securities in the form of
    beneficial interests in large pools of real estate mortgages.  Typically an institutional lender or
22  'depositor' assembles a pool of mortgages which it or an affiliated investment bank deposits into
    a trust administered by a trustee, which then issues certificates of beneficial ownership to
23  investors.  The trust holds the mortgages for the benefit of the certificate holders.  When
    homeowners . . . make their monthly mortgage payments, or pay off their mortgages, or when
24  they sell or refinance, the payments go to the trust and are passed through to the certificate
    holders . . . ." *Deutsche Bank National Trust Company v. DeFranco*, 2011 WL 1759816, at *1
25  n.1 (Conn. Super. 3/14/11) (internal quotation & citation omitted; cited as provided by
    Connecticut Rules of Appellate Procedure, 2011 Connecticut Practice Book, Chapter 67, § 67-
26  11).

1    substituted as Trustee and that the substitution was proper under California law.  They also argue

2    that MERS, the beneficiary of the loan, has the authority to pursue foreclosure upon the

3    borrowers' default.  ECF No. 16-1 at 19-21.  Plaintiffs counter that the Notice of Default was

4    issued by parties who were strangers to the original transaction and that MERS' purported

5    substitution of the Trustee is invalid because MERS, as only the nominee of the beneficiary, did

6    not have authority under California law to take any actions.  ECF No. 25 at 20-23.

7           In this case, the deed of trust identified GreenPoint Mortgage Funding, Inc. as the

8    lender, the trustee as Marin Conveyancing Corp., and MERS as the beneficiary.[5]  ECF No. 2-3 at

9    3-4.  The deed continues:

10           TRANSFER OR RIGHTS IN THE PROPERTY.  The beneficiary
             of this Security Interest is MERS (solely as nominee[6] for Lender
11           and Lender's successors and assigns) and the successors and
             assigns of MERS.  This Security Instrument secures to Lender:
12           (i) the repayment of the Loan, and all renewals, extensions and
             modifications of the Note; and (ii) the performance of the
13           Borrower's covenants and agreements under this Security
             Instrument and the Note.  For this purpose, Borrower irrevocably
14           grants and conveys to Trustee, in trust, with power of sale, the . . .
             described property. . . .

15           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

16   /////

17   /////

18   /////

19

20          [5]  MERS is "a national electronic registry that tracks the transfer of ownership interests
     and servicing rights in mortgage loans."  *Gomes v. Countrywide Home Loans, Inc.*, 192
21   Cal.App.4th 1149, 121 Cal.Rptr. 3d 819, 822 (2011).  "Through the MERS System, MERS
     becomes the mortgagee of record for participating members through assignment of the members'
22   interests to MERS.  MERS is listed as the grantee in the official records maintained at county
     register of deeds offices.  The lenders retain the promissory notes, as well as the servicing rights
23   to the mortgages.  The lenders can then sell these interests to investors without having to record
     the transaction in the public record."  *Lane*, 713 F.Supp.2d at 1098-99; *see also Deutsche Bank
24   National Trust Co v. DeFranco*, 2011 WL 1759816, at *1 n.2 (describing MERS).

25          [6]  A "nominee" is "a person designated to act in place of another" or one "who holds bare
     legal title for the benefit of others or who receives and distributes funds for the benefit of
26   others."  *Black's Law Dictionary* at 1072 (9th Ed. 2009).

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

ECF No. 2-3 at 4.  The Deed contains additional terms in paragraph 20:

The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (know as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage servicing obligations under the Note, this Security Instrument, and Applicable Law.

ECF No. 2-3 at 12-13.  Other provisions give the lender the power of sale:

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice . . . to Borrower . . . .  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the property at public auction . . . .

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without covenant or warranty . . .

ECF No. 2-3 at 14, ¶ 22.

The deed in this case also provides:

Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by the Lender and recorded in the office of the Recorder of the county in which the Property is located.  The instrument shall contain the name of the original Lender, Trustee and Borrower . . . and the name and address of the successor trustee.  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein. . . .

ECF No. 2-3 at 14.

/////

On December 15, 2008 at 2:46 p.m., the Placer County Recorder recorded a "Notice of Default and Election To Sell Under Deed of Trust."  This provided:

> NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated April 3, 2007. . . .to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., as beneficiary, recorded 4/17/2007. . . .

ECF No. 2-6 at 3.  The Notice continued: "the present beneficiary . . . has executed and delivered to . . . [the] Trustee, a written Declaration of Default and Demand for same . . . and has elected and does hereby elect to cause the trust property to be sold. . . ." ECF No. 2-6 at 3.  The document identifies "Quality Loan Service Corp., AS AGENT FOR BENEFICIARY BY: LSI Title Company" and is signed by "Karen Glenn as Authorized Agent."[7]  *Id.*

On January 3, 2009,  Quality Loan Service Corp. sent a "Debt Validation Notice" to plaintiffs, relating to "a debt owed to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC." and listing the delinquency owed as of December 15, 2008 as $9,393.63. ECF No. 2-7 at 2.

On January 28, 2009 at 10:18 a.m., the Placer County Recorder's Office recorded a "Substitution of Trustee," by which MERS substituted Quality Loan Service Corporation as trustee. ECF No. 2-8 at 2.  Although it was signed on December 15, 2008, by Mary Jane Sarne, identified as Vice President of MERS, it was not notarized until December 29, 2008.  ECF No. 2-8 at 3.[8]

/////

-----

[7]  The signature is hard to read, but appears to be that shown here.

[8]  To the extent plaintiffs rely on the different dates on the substitution as evidence of some wrongdoing or fraud, they are mistaken: "notarization is an acknowledgment of the signer's identity and is not essential to a document's validity."  *In re Mi Arbolito, LLC*, 2010 WL 3829660, at *17 (Bankr. S.D. Cal. 2010); *see also Wilson v. Pacific Coast Title*, 106 Cal.App.2d 599, 602 (1951) (assignment valid even though it was not acknowledged until two years after it was signed).

1     On March 17, 2009, at 9:37 a.m., Quality Loan Service Corp. recorded a Notice

2  of Trustee's Sale.  ECF No. 2-9 at 2.

3     On September 2, 2010, MERS recorded an assignment of its beneficial interest in

4  the deed of trust, "together with the note or notes therein described or referred to in said 'Deed of

5  Trust' to Aurora Loan Services LLC."  ECF No. 2-10 at 2.  Plaintiffs corresponded with Aurora

6  in an attempt to remedy the default and prevent the sale.  ECF No. 9-12 at 1-54.

7     Quality Loan Service recorded another Notice of Trustee's Sale, setting the sale

8  for March 2011.  The sale was held in April; Quality Loan Service as Trustee issued a Trustee's

9  Deed Upon Sale, granting the deed to Aurora, the foreclosing beneficiary and listing the amount

10  of unpaid debt as $713,552.88.  ECF No. 36-1 at 4-5

11     Plaintiffs argue that the sale was not proper because neither Quality nor Aurora

12  had the authority to foreclose, as the chain of title purporting to convey this authority is "void or

13  illegal;" no entity had the authority to convey the beneficial interest because the "funding for the

14  loans came from the investors, and not from the 'Lender;'" and that MERS had no authority to

15  substitute Quality as trustee and advance the foreclosure; that Greenpoint, listed as the lender in

16  the Deed of Trust, made no assignments or substitutions.  ECF No. 25 at 21-23.  They rely on *In*

17  *re Salazar*, 448 B.R. 814 (Bankr. S.D. Cal. 2011), to argue that MERS does not have the

18  authority to assign the beneficial interest in the deed of trust and that the assignments were not

19  properly recorded under California Civil Code section 2932.5[9] before the Notice of Default was

20  recorded.  ECF No. 25 at 22.  Defendants counter correctly that *Salazar* is not binding precedent

21  and moreover that it misapplies California law, which does not require that an assignment be

22  recorded every time a beneficial interest in a note and deed of trust is sold.  They rely on a

23

---

24     [9]  Section 2932.5 provides: "Where a power to sell real property is given to a mortgagee
. . . in an instrument to secure the payment of money, the power is part of the security and vests
25  in any person who by assignment becomes entitled to payment of the money secured by the
instrument.  The power of sale may be exercised by the assignee if the assignment is duly
26  acknowledged and recorded."

1  number of cases that have found section 2932.5 to apply only to mortgages, not to deeds of trust.

2  ECF No. 36 at 10; *see, e.g., Parcay v. Shea Mortgage, Inc*., 2010 WL 1659369, at *11 (E.D. Cal.

3  Apr. 23, 2010); *Caballero v. Bank of America*, 2010 WL 4604031, at *3 (N.D. Cal. Nov. 4,

4  2010).

5          In *Salazar*, US Bank foreclosed on the debtor's house although it was not the

6  original beneficiary of record and there was no recorded assignment of the deed of trust to it.

7  The Bank then filed an unlawful detainer action against the debtor, and that action was close to

8  trial when the debtor filed bankruptcy.  US Bank sought relief from the stay in bankruptcy so it

9  could continue with the unlawful detainer action, but the court denied the request, finding that

10  the debtor had established a "prima facie case that the foreclosure sale was void."  *Id.* at 816-17.

11          To reach that conclusion, the court determined that for the foreclosure to have

12  been valid, US Bank had to be entitled to payment of the secured debt and its status as

13  foreclosing beneficiary had to be recorded before the sale, both required by section 2932.5.  *Id.*

14  at 820.  The court rejected the argument that section 2932.5 applied only to mortgages, finding

15  that the historical distinctions between the two forms of security for real property transactions

16  had been abolished and that it was more important than it had been during the Great Depression

17  for a borrower to know the identity of the entity with the power of sale.  *Id.* at 821-22.

18          The court in *Salazar* also rejected US Bank's argument that MERS' status as

19  nominee of the beneficiary obviated the need for recording of the assignment under section

20  2932.5.  *Id.* at 822.  It concluded that MERS' role as nominee of the beneficiary did not give it

21  authority to foreclose under the Deed of Trust, because that document reserved that power to the

22  lender, to be exercised by MERS only when "'necessary to comply with law or custom,'" which

23  was not defined.  *Id.* at 823.  The court then declined US Bank's "invitation to overlook the

24  statutory foreclosure mandates of California law" and rejected MERS as an alternative to public

25  recordation.  *Id.* at 824; *see also In re Doble*, 2011 WL 1465559 (Bankr. S.D. Cal. Apr. 24,

26  2011) (reaching similar conclusions).

1    Despite *Salazar's* appeal to compelling policy considerations, this court does not

2    find the case persuasive on either point in light of the current state of the law.

3    1.   Section 2932.5

4    In California, a mortgage is defined in the Civil Code as "a contract by which

5    specific property . . . is hypothecated for the performance of an act, with the necessity of a

6    change of possession."  Cal. Civ. Code § 2920.[10]  However, "there are no statutory provisions

7    dictating the form or stating the effect of deeds of trust."  *Domarad v. Fisher & Burke, Inc.*, 270

8    Cal.App.2d 543, 553 (1969) (internal quotation omitted).  Although both are used to secure the

9    purchase of real property, early California cases treated them differently, holding that a mortgage

10   created a lien on the property rather than passing title to the mortgagee, while title passed to the

11   trustee under a deed of trust.  *Bank of Italy Nat. Trust & Savings Ass'n v. Bentley*, 217 Cal. 644,

12   654-55 (1933).  Although the California Supreme Court found this distinction to have become

13   "well settled in our law [such that it] cannot now be disturbed," *id*. at 655, it also recognized that

14   despite the "anomalous nature" of deeds of trust, they are in essence "only a mortgage with

15   power of sale."  *Id*. at 656-57.  "In practical effect, if not in legal parlance, a deed of trust is a

16   lien on the property."  *Monterey S.P. Partnership v. W.L. Bangham, Inc*., 49 Cal.3d 454, 460

17   (1989).  "[M]ortgagees and trust deed beneficiaries alike hold security interests in property

18   encumbered by mortgages and deeds of trust. . . ."  *Id*. at 461; *Olympic Federal Savings and*

19   *Loan Association v. Regan*, 648 F.2d 1218, 1221 (9th Cir. 1981) ("security interests represented

20   by deeds of trust and those by mortgage liens are treated as if they were legally identical").

21   /////

22   /////

23   /////

24   /////

25   _____

26   [10]  All subsequent references to California statutes are to the Civil Code unless otherwise specified.

1     Despite their similarities, mortgages and deeds of trust are in fact different in a

2   number of ways:

3        *Parties.*  In the *mortgage*, there are two parties: the mortgagor and
          the mortgagee. . . . In the *deed of trust*, there are usually three

4        parties: the trustor, the trustee, and the beneficiary. . . .

5        *Title.*  In the *mortgage*, title remains with the mortgagor until a
          foreclosure sale; then it passes from the mortgagor to the

6        purchaser.  In the *deed of trust*, title passes to the trustee, who
          holds it until default; then, after sale, it goes from the trustee to the

7        purchaser.

8   4 Witkin, Summary of California Law, Chap. VIII § 5 (10th Ed. 2005) (emphases in original);

9   *see also Parcay v. Shea Mortgage Inc.*, 2010 WL 1659369 at *12 (E.D. Cal. Apr. 23, 2010) ("A

10  deed of trust generally involves three parties, the borrower/trustor . . . who conveys the right to

11  sell the property to the trustee for the benefit of the lender/beneficiary."); *Aviel v. Ng.* 161

12  Cal.App.4th 809, 816 (2008) ("there are three parties to a deed of trust: (1) the trustor, who owns

13  the property that is conveyed to (2) the trustee as security for the obligation owed to (3) the

14  beneficiary" [footnote, internal quotation omitted]).

15     Even though the trustee of a deed of trust holds title only "so far as may be

16  necessary to the execution of the trust," *Bank of Italy*, 217 Cal. at 656, this difference underlies

17  the different application of section 2932.5.  In *Stockwell v. Barnum*, 7 Cal.App. 413, 417 (1908),

18  the court found a directed sale valid, even though the assignment of the deed of trust to the

19  person who directed the sale had not been recorded.  It noted that section 858, the predecessor of

20  section 2932.5, did not apply to deeds of trust.  It reasoned that in a mortgage, the authority of

21  the mortgagee to sell must be clear, whereas with a deed of trust, the trustee holds the title, "thus

22  enabling him in executing the trust, to transfer to the purchaser a marketable record title. It is

23  immaterial who holds the note." *Id.; see also Caballero v. Bank of America*, 2010 WL 4604031,

24  at *3 (N.D. Cal. Nov. 4, 2010); *Selby v. Bank of America*, 2010 WL 4347629, at *3 (S.D. Cal.

25  Oct. 27, 2010).  "If the trustee's deed recites that all statutory notice requirements and

26  procedures required by law for the conduct of the foreclosure sale have been satisfied, a

1   rebuttable presumption arises that the sale has been conducted regularly and properly. . . ."

2   *Moeller v. Lien*, 25 Cal.App.4th 822, 831 (1994); *see also Hamilton v. Bank of Blue Valley*, 746

3   F.Supp.2d at 1174; *but see Tamburri v. Suntrust Mortgage, Inc*., 2011 WL 2654093, *5 (N.D.

4   Cal. July 6, 2011) (noting that *Stockwell* was decided before distinctions between mortgages and

5   deeds of trust were blurred.)

6          Section 2932.5 thus requires the recorded assignment of a mortgage so that a

7   prospective purchaser knows that the mortgagee in fact had the authority to exercise the power

8   of sale.  This is not necessary when a deed of trust is involved, as the trustee conducts the sale

9   and transfers title, which sale and transfer carry a presumption of regularity.  *See Domrad*, 270

10  Cal.App.2d at 554 ("The purpose of the recording statutes is to give notice to prospective

11  purchasers or mortgagees of land of all existing and outstanding estates, titles or interest,

12  whether valid or invalid, that may affect their rights as bona fide purchasers").

13          2.  The Role Of MERS

14          The Deed of Trust in this case lists MERS as the beneficiary, acting as nominee

15  for the lender, and gives MERS the authority to take certain actions, including instituting

16  foreclosure proceedings  ECF No. 2-3 at 4.  In *Salazar*, the court interpreted a similar deed of

17  trust and concluded that MERS did not have the authority to substitute the trustee or seek

18  foreclosure because that authority was reserved for the lender, while MERS was authorized to

19  act only "when necessary to comply with law or custom," a phrase which was not explained or

20  defined by any evidence in the record.  *Id*. at 823.

21          A number of courts considering the same language  have concluded that it confers

22  on MERS the rights of the beneficiary, from foreclosing on the property, to assigning its

23  beneficial interest, to substituting a new trustee.  *See Pantoja v. Countrywide Home Loans*, 640

24  F.Supp.2d 1177, 1188-89 (N.D. Cal. 2009) (foreclosing); *Hensley v. Bank of New York Mellon*,

25  2011 WL 2118810, at *2 (E.D. Cal. May 27, 2011) (assigning beneficial interest).   Courts that

26  have found the form deed of trust to give MERS broad authority have generally neither focused

1  on nor discussed the phrase "when necessary to comply with law or custom," suggesting the

2  phrase does not restrict MERS' authority under the deed.  Given the current state of the law, this

3  court also declines to find this language restricts MERS' ability to exercise the powers plaintiff

4  Tinker granted to it in the deed of trust.

5       Other courts have found that whatever the role a nominee may play when

6  "necessary to comply with law and custom," MERS acts as the agent of the lender.  *Gomes v.*

7  *Countrywide Home Loans, Inc.*, 192 Cal.App. 4th 1149, 1156 n.7 & 1157 (2011); *In re Macklin*,

8  2010 WL 2015520, at *5; *Perlas v. Mortgage Electronic Registration Systems,* Inc., 2010 WL

9  3079262, at *3 (N.D. Cal. Aug. 6, 2010); *Kurek v. America's Wholesale Lender*, 2011 WL

10  3240482, at *2 (N.D. Cal. 2011); *see also In re Martinez*, 444 B.R. 192, 206 (Bankr. D.Kan.

11  2011) ("nominee" and "agent" have "nearly identical legal definitions").  In this case, as

12  GreenPoint's agent, MERS can substitute a trustee or assign the beneficial interest under the

13  deed.

14       Finally, at least one court has considered the meaning of the phrase with which

15  the court in *Salazar* grappled: the form language in the deed of trust "'does not . . require that the

16  nominee have the power to act only when directed by law; rather, the nominee may act on behalf

17  of the Lender as authorized by the deed of trust.'" *Tapia v. U.S. Bank, N.A.*, 718 F.Supp.2d 689,

18  696 (E.D. Va. 2010) (quoting *Ruiz v. Samuel I. White P.C., et al.*, 2009 WL 4823933, at *1 (E.D.

19  Va. Dec. 11, 2009)).  This court agrees.  However unfortunately arcane and obscure, the

20  language does nothing more than restate in less than clear terms that the deed of trust authorizes

21  MERS to act on the lender's behalf.[11]

22

23       [11]  Other courts have suggested that the analysis of MERS' authority is different when, as

24  in *Salazar*, MERS or another party seeks affirmative relief, and that such an order does not
determine rights in property, which can only be resolved in an adversary proceeding in
bankruptcy.  *In re Emrich*, 2009 WL 3816174, at *1 (Bankr. N.D. Cal. Nov. 12, 2009); *In re*

25  *Mortgage Electronic Registration Systems Litigation*, 2011 WL 251453, at *4 (D. Ariz. Jan. 25,
2011).  This court declines to consider this issue in light of its conclusion that in this case in light

26  of the applicable law the deed of trust authorizes MERS to act.

3.  <u>The Foreclosure In This Case</u>

California's scheme of non-judicial forfeiture is contained in sections 2924 through 2924i.  *Garfinkle v. Superior Court*, 21 Cal.3d 268, 274 (1978).  These provisions "'cover every aspect'" of the foreclosure process.  *Phillips v. MERS*, 2099 WL 3233865, at *9 (E.D. Cal. Oct. 2, 2009) (quoting *I.E. Assoc. v. Safeco Title Ins. Co*., 39 Cal.3d 281, 285 (1985)); *see also Moeller,* 25 Cal. App.4th at 834.

> Under California Civil Code section 2924(a)(1), a 'trustee, mortgagee, or beneficiary or any of their authorized agents' may conduct the foreclosure process.  Under California Civil Code section 2924b(b)(4), a 'person authorized to record the notice of default or notice of sale' includes 'an agent for the mortgagee or beneficiary, an agent of the named trustee, or an agent of that substituted trustee.'  'Upon default by the trustor, the beneficiary many declare a default and proceed with a nonjudicial foreclosure sale.'  *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.  There is no stated requirement in California's non-judicial scheme that requires a beneficial interest in the Note to foreclose.  Rather, the statue broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate nonjudicial foreclosure.  Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale.

*Lane*, 713 F.Supp.2d at 1098-99.  Thus, under California law, a lender or its agents may ask the trustee to commence non-judicial foreclosure following default if the deed of trust contains a power of sale clause.  *Gzell v. Novastar Mortgage, Inc*., 2010 WL 3293537 at *9 (E.D. Cal. Aug. 19, 2010).  The first step in this process is the recording of a notice of default and election to sell by the trustee.  *Id*. (quoting *Moeller*, 25 Cal.App.4th at 830), § 2924(a)(1).  Thereafter, the trustee must wait three months before proceeding further.  *Moeller*, 25 Cal.App.4th at 830; § 2924(a)(2).[12] Twenty days before the sale, the trustee must publish, post and mail a notice of sale, which must be recorded fourteen days before the sale.  *Moeller*, 25 Cal.App.4th at 830; § 2924f(b)(1).  The borrower's opportunity to cure the default by paying the amounts in default continues until five days before the sale.  *Moeller*, 25 Cal.App.4th at 830; § 2924c(a)(1).

---

[12]  This section has been amended, effective January 11, 2011.  The court refers to the sections of the statute in effect at the time the notice of default was filed in this case.

1          In this case, the Notice of Default was recorded on December 15, 2008 in the

2    name of Quality Loan Service, as agent for the beneficiary, by LSI Title, and signed by someone

3    "as authorized agent."  A substitution of Quality for Marin Conveyancing as Trustee was

4    recorded on January 28, 2009, having been dated December 15, 2008, but not notarized until

5    December 29, 2008.  ECF Nos. 2-6 at 2-3 & 2-8 at 2-3.  Quality recorded the Notice of Sale on

6    March 17, 2009.  ECF No. 2-9 at 2.   Quality prepared subsequent Notices of Sale and in fact

7    conducted the trustee's sale.  ECF No. 2-11 at 2-3 & 27-1 at 4-5.  At the time of the sale, MERS

8    had conveyed its beneficial interest to Aurora.  ECF No. 2-10 at 2.

9          As noted above, MERS had the authority to assign its interest to Aurora; this has

10   no impact on the validity of the foreclosure and does not constitute a breach of the trust

11   instrument.

12         The substitution of Quality as trustee after the notice of default was recorded is

13   more troublesome, but ultimately not conclusive.  First, the notice of default is signed by

14   someone at LSI Title, acting as authorized agent.  Under section 2924(a)(1), "the trustee,

15   mortgagee, or beneficiary, or any of their authorized agents" are authorized to file the notice of

16   default.  Nothing in the record suggests that LSI Title or the person who actually signed the

17   Notice of Default was not authorized to act for the trustee or beneficiary.  And once the

18   substitution was recorded, Quality "suceed[ed] to all the powers, duties, authority, and title

19   granted and delegated to the trustee named in the deed of trust."  Section 2934a(a)(4).  Assuming

20   Notice of Default was properly filed by an agent of the trustee or beneficiary, Quality assumed

21   the trustee's powers upon the recording of the substitution and properly conducted the sale.

22         Even assuming that the Notice of Default was filed before Quality was

23   substituted, plaintiffs are not entitled to relief.  In *Ferguson v. Avelo Mortgage, LLC*, 195

24   Cal.App.4th 1618 (2011) (as modified on June 20, 2011), Quality recorded a notice of default

25   before it was properly substituted as trustee.  By the time it issued the notice of sale, it had been

26   properly substituted.  The court found the notice of sale, issued after the proper substitution, was

33

1  valid, as was the foreclosure, completed "long after its substitution as trustee took effect." *Id*. at

2  *6.  The court distinguished those cases that "voided a non judicial foreclosure sale when a party

3  other than the trustee initiated the proceeding and *completed* the sale without having been

4  substituted in as the trustee." *Id.* (emphasis in original); *see also U.S. Hertz, Inc. v. Niobrara*

5  *Farms*, 41 Cal.App.3d 68 (1974) (no prejudice when substitution was recorded one minute after

6  the notice of default); *compare Dimock v. Emerald Properties LLC*, 81 Cal.App.4th 868 (2000)

7  (entity that conducted the sale had been replaced as trustee; foreclosure void); *Pro Value*

8  *Properties, Inc. v. Quality Loan Service Corp.*, 170 Cal.App.4th 579 (2009) (substitution never

9  recorded; sale void).  In *Ferguson*, the court noted that the borrower "offers no authority for the

10  proposition that the defective nature of the initial notice of default corrupted all subsequent steps

11  in the nonjudicial foreclosure proceeding such that the sale was void, not merely voidable."

12  *Ferguson*, 195 Cal.App.4th at 1628.  When a sale is voidable rather than void because of

13  "irregularities in a nonjudicial trustee's sale, [they] may be grounds for setting it aside if they are

14  prejudicial to the party challenging the sale." *Id*. at 1624.  To set aside a sale, however, the party

15  challenging it must tender the amount of the debt or at least the amount of the default, because

16  the irregularities in the foreclosure procedures cannot be deemed to damage plaintiff when

17  plaintiff "could not redeem the property had sale procedures been proper." *Compare id.* (amount

18  of indebtedness) *with Miller v. Washington Mutual Bank*, 2011 WL 845935, at *4 (N.D. Cal.

19  Mar. 8, 2011) (amount in default).  In this case, as noted above, plaintiffs have not tendered the

20  amount owed, the amount they are in default, or even suggested they were willing and able to

21  tender the costs of the trustee's sale.  Moreover, at argument on the motion their lawyer

22  suggested that their loan was not actually in default, which suggests an unwillingness to tender

23  any amount.  Plaintiffs have not satisfactorily pled the ability to tender, which is necessary to

24  proceed on a claim of wrongful foreclosure.  They will, however, be given leave to amend this

25  portion of the complaint, if they can in good faith allege that they have the willingness and

26  ability to meet the tender requirement.

L.  Expunging The Lis Pendens

Plaintiffs have recorded a *lis pendens* on 1977 Green Meadow Lane, Meadow Vista, California, asserting that the Deed of Trust was improperly assigned or transferred.  ECF No. 17 at 476-479.  They assert that recording a *lis pendens* is mandatory when a party files a quiet title action.  ECF No. 19.  Defendants argue, however, that as none of plaintiffs' claims relating to an interest in property survives, this court must expunge the *lis pendens*.

"A lis pendens is a recorded document giving constructive notice that an action has been filed affecting right or title to possession of the real property described in the notice." *Park 1000 Investment Group II v. Ryan*, 180 Cal.App.4th 795, 807 (2010) (internal citation & quotation omitted).  A court should expunge a lis pendens if it determines that the action "as pled lacks evidentiary merit . . . " *Id.*; *see also Palmer v. Zaklama*, 109 Cal.App.4th 1367, 1378 (2003).  Because the court is giving plaintiffs leave to amend the complaint, it declines to expunge the *lis pendens* at this time.

V.  The Motion For A Preliminary Injunction

In support of their request for injunctive relief, plaintiffs have offered copies of stipulated Cease and Desist orders entered into by the Office of Thrift Supervision and Aurora and MERS.  Among the provisions are requirements that Aurora bring in an independent consultant to conduct foreclosure reviews to determine "whether at the time the foreclosure was initiated . . . the foreclosing party or agent of the party had properly documented ownership of the promissory note and mortgage (or deed of trust) under relevant state law, or was otherwise a proper party of the action. . . ." and "whether a foreclosure sale occurred when an application for a loan modification or other Loss Mitigation was under consideration when the loan was performing in accordance with a trial or permanent loan modification, or when the loan had not been in default for a sufficient period of time to authorize foreclosure pursuant to the terms of the mortgage loan documents . . . ."  ECF No. 29 at 30-31.  In connection with an earlier request for a temporary restraining order in this case, plaintiffs submitted documents suggesting that Aurora

1   offered and then rejected loan modifications more than once after the Notice of Default had been

2   filed.  ECF No. 19-1 at 30-51.

3          The court's determination that the current complaint fails to state a claim means

4   that it has no basis to issue an injunction: there is nothing currently before it suggesting that

5   plaintiffs have a chance of succeeding on the merits.  Nevertheless, in light of the OTS Cease

6   and Desist Orders and the review Aurora has agreed to undertake, plaintiffs may be harmed if

7   they were eligible for a modification that was improperly denied them and that might be

8   disclosed during this review.  If plaintiffs file an amended complaint they may renew their

9   request for a preliminary injunction.

10  VI.  Quality Loan Service And LSI Title's Declaration Of Non-Monetary Status

11         On April 20, 2011, Quality Loan Service and LSI Title filed Declarations of Non-

12  Monetary Status under section 2924*l*, averring that they reasonably believe they were named in

13  their capacities as trustees.  ECF Nos. 18, 18-1, 18-2.  On May 13, 2011, plaintiffs objected.

14         Under section 2924*l*(c) and (d), parties have fifteen days to object to such a

15  declaration and if there is no objection within that period, a trustee is not required to participate

16  in the litigation except for certain discovery requests and is bound by any order relating to the

17  deed of trust.  Plaintiffs' objections were not timely.

18         IT IS THEREFORE ORDERED that:

19         1.  Defendants' motion to dismiss (ECF No. 16) is granted as follows:

20             A.  Plaintiffs' causes of action for rescission under TILA, HOEPA, FCRA,

21  breach of fiduciary duty as to Aurora and MERS and unjust enrichment as to Aurora and MERS

22  are dismissed with prejudice;

23             B.  Plaintiffs' remaining causes of action are dismissed with leave to

24  amend;

25         2.  Defendants' request to expunge the *lis pendens* is denied without prejudice;

26  /////

3.  Plaintiffs' motion for a preliminary injunction (ECF No.19) is denied without prejudice;

4.  Plaintiffs' objections to defendants Quality Loan Services and LSI Title's declarations of non-monetary status are overruled;

5.  Plaintiffs' amended complaint is due twenty-one days from the date of this order; and

6.  The status conference previously set for August 24, 2011 will be reset after the filing of an amended complaint.

DATED:  August 26, 2011.

_____
UNITED STATES DISTRICT JUDGE