IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTIAN PEDERSEN, et al.,

        Plaintiffs,                             CIV No. S-11-0642 KJM EFB

      vs.

                                              ORDER

GREENPOINT MORTGATE FUNDING,
Inc., et al.,

        Defendants.

_____/

I. <u>Background</u>

        On March 8, 2011, plaintiffs filed an action against Aurora Loan Services, LLC

(Aurora) and Mortgage Electronic Registration Systems (MERS), as well as Greenpoint

Mortgage Funding, Inc. (Greenpoint), Marin Conveyancing Corp. (Marin), Quality Loan Service

Corp., LSI Title Company, Greenpoint Mortgage Funding Trust Mortgage Pass-Through

Certificates, Series 2007-ARI, and twenty Doe defendants[1], alleging violations of the

---

[1] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff is warned, however, that such defendants will be dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on

Homeowners Equity Protection Act (HOEPA), 15 U.S.C. § 1639, *et seq.*; the Real Estate

Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*; the Truth in Lending Act

(TILA), 15 U.S.C. § 1601, *et seq.* and Regulation Z § 226.4; fraudulent misrepresentation;

breach of fiduciary duty; unjust enrichment; civil conspiracy; RICO; quiet title; usury and fraud;

wrongful foreclosure; and breach of trust instruments.

On April 7, 2011, plaintiffs filed a motion for a temporary restraining order,

alleging that a trustee's sale of their house was scheduled for April 11, 2011, but that defendants

did not have the legal authority to foreclose on plaintiffs' property.  ECF No. 9.  Although

plaintiffs gave defendants notice of their application for a restraining order, defendants did not

respond.  ECF No. 14.  The court denied the application on April 8, 2011.

Defendants Aurora and MERS filed a motion to dismiss and to expunge a lis

pendens on April 15, 2011, in tandem with a request for judicial notice.  ECF Nos. 16 & 17.

On April 20, 2011, plaintiffs filed a motion for a preliminary injunction and on

the same day,  defendants Quality Loan Service Corporation and LSI Title Company filed

Declarations of Non-Monetary Status under California Civil Code § 2924*l*.  ECF No. 18.  On

May 18, 2011, plaintiffs filed objections to these declarations.  ECF No. 34.

On August 29, 2011, the court granted defendants' motion to dismiss, giving

plaintiff leave to file an amended complaint as to some of the claims; overruled Quality and LSI

Title's declaration of non-monetary status; and denied the motion to expunge the lis pendens.  It

also denied plaintiffs' motion for a preliminary injunction.  ECF No. 56.

/////

other grounds.'" *Id.* (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is further warned that Federal
Rule of Civil Procedure 4(m), which states that the court must dismiss defendants who have not
been served within 120 days after the filing of the complaint unless plaintiff shows good cause,
is applicable to doe defendants. *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011
U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567
LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27, 2011).

1    Plaintiffs filed their first amended complaint (FAC) on September 16, 2011; it

2  raises seven claims: (1) TILA violations; (2) RESPA violations; (3) fraud; (4) unjust enrichment;

3  (5) civil RICO violations; (6) wrongful foreclosure; and (7) quiet title.  ECF No. 57.

4    Defendants Aurora and MERS have filed a motion to dismiss as have defendants

5  Greenpoint and Marin.  ECF Nos. 58, 59.  Both sets of defendants have asked the court to take

6  judicial notice of a number of documents recorded in Placer County, all relating to the

7  acquisition of and foreclosure on 1977 Green Meadow Lane, Meadow Vista, California.  ECF

8  No. 58-2 (Aurora & MERS RFJN); 60 (Greenpoint & Marin RFJN).  Plaintiff has opposed and

9  both sets of defendants have filed replies.  The court submitted the motions on the pleadings and

10  now GRANTS both motions to dismiss.

11  II.  <u>Standards For A Motion To Dismiss</u>

12    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

13  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

14  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

15  under a cognizable legal theory."  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699

16  (9th Cir. 1990).  A motion to dismiss under this rule may also challenge the sufficiency of fraud

17  allegations under the more particularlized standard of Rule 9(b) of the Federal Rules of Civil

18  Procedure.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

19    Although a complaint need contain only "a short and plain statement of the claim

20  showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), in order to survive a

21  motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to

22  'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

23  (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must

24  include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation"

25  or "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'"

26  *Id*. (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion

1   to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court

2   to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry

3   focuses on the interplay between the factual allegations of the complaint and the dispositive

4   issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

5          In making this context-specific evaluation, this court must construe the complaint

6   in the light most favorable to the plaintiff and accept as true the factual allegations of the

7   complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

8   conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986)

9   (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject

10  to judicial notice" or to material attached to or incorporated by reference into the complaint.

11  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

12  consideration of documents attached to a complaint or incorporated by reference or a matter

13  subject to judicial notice will not convert a motion to dismiss into a motion for summary

14  judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks School of Business*

15  *v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. CNN*, 284 F.3d 977,

16  980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

17  dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

18  III.  Requests For Judicial Notice

19          As noted, both sets of defendants ask the court to take judicial notice of a number

20  of documents recorded in Placer County related to 1977 Green Meadow Lane, Meadow Vista,

21  California.   Plaintiffs have provided the same set of documents, among others, as exhibits to

22  their complaint. Under Rule 201 of the Federal Rules of Evidence, a court may take judicial

23  notice of adjudicative facts "not subject to reasonable dispute" because they are "capable of

24  accurate and ready determination by resort to sources whose accuracy cannot reasonably be

25  questioned."  Plaintiff does not object to the court's consideration of these documents.  They are

26  properly before the court. *Champlaie v. BAC Home Loans Servicing, LP,* 706 F.Supp.2d 1029,

1    1040 (E.D. Cal. 2009); *Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (court

2    may take judicial notice of matters of public record).

3    IV.  Analysis

4         A.  The Acquisition Of And Foreclosure On 1977 Green Meadow Lane

5              On April 17, 2007, a deed of trust was recorded in Placer County concerning

6    1977 Green Meadow Vista Lane, Meadow Vista, identifying plaintiff Tinker as the borrower,

7    GreenPoint Mortgage Funding, Inc. as the lender, the trustee as Marin Conveyancing Corp., and

8    MERS as the beneficiary.[2]  ECF No. 60-1 at 2-3.  The deed continues:

9              TRANSFER OF RIGHTS IN THE PROPERTY.  The beneficiary
             of this Security Interest is MERS (solely as nominee[3] for Lender
10            and Lender's successors and assigns) and the successors and
             assigns of MERS.  This Security Instrument secures to Lender:
11            (i) the repayment of the Loan, and all renewals, extensions and
             modifications of the Note; and (ii) the performance of the
12            Borrower's covenants and agreements under this Security
             Instrument and the Note.  For this purpose, Borrower irrevocably
13            grants and conveys to Trustee, in trust, with power of sale, the . . .
             described property. . . .

14
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
15
             Borrower understands and agrees that MERS holds only legal title
16            to the interests granted by Borrower in this Security Instrument,
             but if necessary to comply with law or custom, MERS (as nominee
17            for Lender and Lender's successors and assigns) has the right: to
             exercise any or all of those interests, including, but not limited to,

18

19

20            [2]  MERS is "a national electronic registry that tracks the transfer of ownership interests
       and servicing rights in mortgage loans."  *Gomes v. Countrywide Home Loans, Inc.*,
21     192 Cal.App.4th 1149, 121 Cal. Rptr. 3d 819, 822 (2011).  "Through the MERS System, MERS
       becomes the mortgagee of record for participating members through assignment of the members'
22     interests to MERS.  MERS is listed as the grantee in the official records maintained at county
       register of deeds offices.  The lenders retain the promissory notes, as well as the servicing rights
23     to the mortgages.  The lenders can then sell these interests to investors without having to record
       the transaction in the public record."  *Lane v. Vitek Real Estate Industries Group*, 713 F. Supp.
24     2d 1092, 1098-99 (E.D Cal. May 13, 2012).

25            [3]  A "nominee" is "a person designated to act in place of another" or one "who holds bare
       legal title for the benefit of others or who receives and distributes funds for the benefit of
26     others."  *Black's Law Dictionary* at 1072 (9th ed. 2009).

the right to foreclose and sell the Property; and to take any action
required of Lender including, but not limited to, releasing and
cancelling this Security Instrument.

*Id*. at 4.  The Deed contains additional terms in paragraph 20:

The Note or a partial interest in the Note (together with this
Security Instrument) can be sold one or more times without prior
notice to Borrower.  A sale might result in a change in the entity
(know as the "Loan Servicer") that collects Periodic Payments due
under the Note and this Security Instrument and performs other
mortgage servicing obligations under the Note, this Security
Instrument, and Applicable Law.  There also might be one or more
changes of the Loan Servicer unrelated to a sale of the Note.  If
there is a change of the Loan Servicer, Borrower will be given
written notice of the change which will state the name and address
of the new Loan Servicer, the address to which payments should
be made and any other information RESPA requires in connection
with a notice of transfer of servicing.  If the Note is sold and
thereafter the Loan is serviced by a Loan Servicer other than the
purchaser of the Note, the mortgage loan servicing obligations to
Borrower will remain with the Loan Servicer or be transferred to a
successor Loan Servicer and are not assumed by the Note
purchaser unless otherwise provided by the Note purchaser.

*Id*. at 12-13.  Other provisions give the lender the power of sale:

If Lender invokes the power of sale, Lender shall execute or cause
Trustee to execute a written notice of the occurrence of an event of
default and of Lender's election to cause the Property to be sold.
Trustee shall cause this notice to be recorded in each county in
which any part of the Property is located.  Lender or Trustee shall
mail copies of the notice . . . to Borrower . . . .  After the time
required by Applicable Law, Trustee, without demand on
Borrower, shall sell the property at public auction . . . .

Trustee shall deliver to the purchaser Trustee's deed conveying the
Property without covenant or warranty . . .

*Id*. at 14.

The deed in this case also provides:

Lender, at its option, may from time to time appoint a successor
trustee to any Trustee appointed hereunder by an instrument
executed and acknowledged by the Lender and recorded in the
office of the Recorder of the county in which the Property is
located.  The instrument shall contain the name of the original
Lender, Trustee and Borrower . . . and the name and address of the
successor trustee.  Without conveyance of the Property, the

6

1              successor trustee shall succeed to all the title, powers and duties
2              conferred upon the Trustee herein. . . .

3  *Id.*

4          On September 4, 2007, an Interspousal Transfer Deed was recorded, granting the

5  Meadow Vista property to Christian Pedersen and Sonika Tinker, husband and wife, as

6  community property.  *Id*. at 28.  On the same day, plaintiffs transferred the property into the

7  Pedersen Tinker Family Trust.  *Id*. at 32.

8          On December 15, 2008 at 2:46 p.m., the Placer County Recorder recorded a

9  "Notice of Default and Election To Sell Under Deed of Trust."  This provided:

10

11              NOTICE IS HEREBY GIVEN: That the undersigned is either the
            original trustee, the duly appointed substituted trustee, or acting as
12              agent for the trustee or beneficiary under a Deed of Trust dated
            April 3, 2007. . . .to secure certain obligations in favor of
13              MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
            INC., AS NOMINEE FOR GREENPOINT MORTGAGE
14              FUNDING, INC., as beneficiary, recorded 4/17/2007. . . .

15  *Id*. at 36.  The Notice continued: "the present beneficiary . . . has executed and delivered to . . .

16  [the] Trustee, a written Declaration of Default and Demand for same . . . and has elected and

17  does hereby elect to cause the trust property to be sold. . . ."  *Id*. at 37.  The document identifies

18  "Quality Loan Service Corp., AS AGENT FOR BENEFICIARY BY: LSI Title Company" and is

19  signed by "Karen Glenn as Authorized Agent."[4]  *Id*.

20          On January 28, 2009 at 10:18 a.m., the Placer County Recorder's Office recorded

21  a "Substitution of Trustee," by which MERS substituted Quality Loan Service Corporation as

22  trustee.  ECF No. 2-8 at 2.  Although the substitution was signed on December 15, 2008, by

23  Mary Jane Sarne, identified as Vice President of MERS, it was not notarized until December 29,

24  2008.  *Id*. at 39-40.

25

26         [4]  The signature is hard to read, but appears to be that shown here.

1    On March 17, 2009, at 9:37 a.m., Quality Loan Service Corp. recorded a Notice

2  of Trustee's Sale.  *Id*. at 43.

3    On September 2, 2010, MERS recorded an assignment of its beneficial interest in

4  the deed of trust, "together with the note or notes therein described or referred to in said 'Deed of

5  Trust' to Aurora Loan Services LLC."  *Id*. at 48.

6    The Trustee's Sale was held in April; Quality Loan Service as Trustee issued a

7  Trustee's Deed Upon Sale, granting the deed to Aurora, the foreclosing beneficiary, and listing

8  the amount of unpaid debt as $713,552.88.  *Id*. at 49-52.

9    B.  <u>TILA</u>

10    The court dismissed the TILA claims in the original complaint as time-barred,

11  finding that plaintiffs had not adequately alleged they were entitled to equitable tolling of the one

12  year statute of limitations for the TILA damages claim.  The court dismissed the TILA rescission

13  claim with prejudice because 15 U.S.C. § 1635(f), which provides the right to rescind, is a

14  statute of repose, not a statute of limitations, and as such is not subject to equitable tolling.

15  *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998) ("we . . . hold that § 1635(f)

16  completely extinguishes the right of rescission at the end of the 3-year period").  Plaintiffs did

17  not seek reconsideration of this portion of the court's order, yet they have re-pleaded a TILA

18  rescission claim and asserted their right to equitable tolling in opposition to the motion to

19  dismiss.  FAC ¶ 111 ("Defendants'. . . failure to provide the required disclosures provides

20  Plaintiffs with the right to rescind the transaction . . . .").  The TILA rescission claim is not

21  properly before the court.

22    The court dismissed plaintiffs' TILA damages claim, giving them leave to amend

23  to address their entitlement to equitable tolling as to that claim.   In the FAC, plaintiffs attempt to

24  salvage their TILA damages claim by alleging that "a reasonable lay person who has no

25  experience in investment banking, securities dealings, mortgage lending or mortgage brokerage

26  would not have been able to discover Defendants' actions within the respective limitations

1   statutes." ECF No. 57 ¶ 78.  They further allege that "from the face of the documents, and with a

2   lay person's due diligence, it was <u>not possible for Plaintiffs to learn the following</u> . . . " list of

3   sixteen items.  *Id*. ¶ 82[5] (emphasis in original).

4           "When a complaint is otherwise time-barred on its face, the plaintiff must allege

5   specific facts explaining the failure to learn the basis for the claim within the statutory period

6   rather than relying on generalities."  *Abels v. Bank of America, N.A.*., No. 11-CV-208 YGR,

7   2012 WL 691790, at *3 (N.D. Cal. Mar. 2, 2012).  That plaintiffs allege defendants failed to

8   make the necessary TILA disclosures is not a sufficient basis for equitable tolling, "'because a

9   contrary rule would render the one-year statute of limitations meaningless, as it would be tolled

10  wherever there were improper disclosures.'"  *Ayon v. JPMorgan Chase Bank, N.A.*, No. CV F-

11  12-0355 LJO SKO, 2012 WL 1189455, at *9 (E.D. Cal. Apr. 9, 2012) (quoting *Garcia v.*

12  *Wachovia Mortgage Corp.*, 676 F. Supp. 2d 895, 906 (C. D. Cal. 2009)).   In this case, plaintiffs

13  have not alleged they did anything to discover the basis of the claims.  Nothing prevented them

14  from examining the Deed of Trust and other documents generated during the purchase of the

15  property or making inquiries and/or investigations during the limitations period.  *Cervantes v.*

16  *Countrywide Home Loans*, 656 F.3d 1034, 1045 (9th Cir. 2011).  The TILA damages claim is

17  dismissed without leave to amend.

18      C.  <u>RESPA</u>

19          In the order dismissing the original complaint, the court observed that plaintiffs'

20  RESPA claims – stemming from defendants' alleged acceptance of fees for services not actually

21  performed – were barred by RESPA's one year statute of limitations.  ECF No. 56 at 11.   In the

22  FAC, plaintiffs repeat this claim, but also argue that Aurora and the other defendants did not

23  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

24      [5]  Among the things plaintiffs claim it was not possible to know was the fact that a
    portion of the mortgage payments purchased mortgage default insurance.  FAC ¶82 f.  On its
    face, the Deed of Trust notifies plaintiff of the possibility that mortgage insurance will be part of
25  the loan transaction.  ECF No. 60-1 at 9.  In addition, some of the "facts" plaintiffs claim they
    were unable to discover are legal conclusions.  FAC ¶ 82h ("MERS's tracking system does not
26  create a legal chain of title").

provide written notice of their intention to sell the Note and Deed of Trust, 12 U.S.C. § 2605(c).
FAC ¶ 115.  They contend that Aurora is liable because it was the Master Servicer for
Greenpoint and so was involved in the loan origination.  *Id*. ¶ 118.

For the same reasons noted above with respect to the TILA claim, plaintiffs have
not sufficiently pleaded their entitlement to equitable tolling of the RESPA one-year statute of
limitations.

In addition, plaintiffs' claim that the defendants failed to notify them of any
intention to sell the Note and Deed of Trust is belied by the record: the Deed of Trust expressly
provided that the Note and Deed could be sold.  ECF No. 60-1 at 12.   The RESPA claim is
dismissed without leave to amend.

D.   Fraud

Plaintiffs allege a number of bases for their claim of fraud: the transaction was
structured so as to create the appearance that the property value was higher than the actual fair
market value; defendants disguised the transaction so the identity of the real party in interest on
the loan was not disclosed to them; the source of funding for the loan was not an entity registered
to do business in California or as a lending institution; the foreclosing entity has no pecuniary
interest in the loan; Aurora took payments under forbearance agreements yet did not apply those
payments to arrearages on the loan; MERS had no authority to transfer the loan and the
defendants used MERS' corporate assignment to foreclose on the loan; defendants did not
provide notice of the securitization of plaintiffs' loan; and the individuals who signed documents
on defendants' behalf created false documents.   FAC ¶¶ 120-128.

i.   Statute Of Limitations

Under section 338(d) of the California Code of Civil Procedure, a cause of action
for fraud must be brought within three years, although "[t]he cause of action in that case is not
deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the
fraud . . . ."   This discovery rule "postpones accrual of a cause of action until the plaintiff

10

1    discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co,* 21 Cal.4th 383,

2    397 (1999).  Under the rule, "[a] plaintiff need not be aware of the specific 'facts' necessary to

3    establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a

4    suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit

5    or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the

6    facts; she cannot wait for the facts to find her."  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111

7    (1998).

8            To rely on a claim of delayed discovery, a plaintiff must allege facts showing that

9    the facts could not have been discovered earlier even in the exercise of reasonable diligence and

10   identifying how and when plaintiff discovered the fraud. *Briosos v. Wells Fargo Bank*, No. C

11   10–02834 LB, 2011 WL 1740100, at *4 (N.D.Cal. May 5, 2011); *but see Bonds v. Nicoletti Oil,*

12   *Inc.*, No. CV-F-07-1600 OWW/DLB, 2008 WL 2233511, at *7–8 (E.D.Cal. May 28, 2008)

13   (questioning whether California pleading standards apply, but finding it plaintiff's burden to

14   plead facts supporting delayed discovery).

15           To the extent plaintiffs rely on claims of fraud related to the loan origination,

16   which occurred in 2007, the claim is untimely.  In light of plaintiffs' inability to support their

17   claims for equitable tolling of the TILA and RESPA violations, the court dismisses this portion

18   of the fraud claim without leave to amend.

19                          ii.  Claims Relating To The Chain Of Title

20           In California, a claim of fraud has five elements:  (1) the defendant made a false

21   representation as to a past or existing material fact; (2) the defendant knew the representation

22   was false at the time it was made; (3) in making the representation, the defendant intended to

23   deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and

24   (5) the plaintiff suffered resulting damages. *Lazar v. Superior Court,* 12 Cal.4th 631, 638

25   (1996); *Ali v. Humana, Inc.*, No. 12–cv–00509–AWI–GSA, 2010 WL 2376972, at *5 (E.D. Cal.

26   June 22, 2012).  Plaintiffs do not claim they relied on the documents they claim were falsely

1  created and recorded; their claim is that these documents allowed the defendants to act against

2  them.  This portion of the complaint is dismissed without leave to amend.  *See Canalaes v.*

3  *Federal  Home Loan Mortgage Corp.*, No. CV 11-2819 PSG (VBKx), 2011 WL 3320478, at *8

4  (C.D. Cal. Aug. 1, 2011) (fraud claim cannot be based on execution and recordation of

5  assignments of Deed of Trust, Substitution of Trustee, Notice of Trustee's Sale and Deed Upon

6  Sale).[6]

7              iii.  The Forbearance Agreements

8              Plaintiffs allege that beginning in 2009, Aurora induced them to enter into

9  forbearance agreements and to make payments in excess of their monthly mortgage amounts, yet

10  failed to tell them these payments would not be applied to the arrearage and then ultimately

11  denied them a loan modification despite having suggested plaintiffs were eligible.  Aurora does

12  not claim these actions are outside the statute of limitations, but does argue the pleadings do not

13  meet the heightened standard for fraud.

14              Under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff who alleges

15  fraud "must state with particularity the circumstances constituting the fraud," but may describe

16  generally the state of mind animating the fraud.  The pleading must "'be specific enough to give

17  defendants notice of the particular misconduct . . . so that they can defend against the charge and

18  not just deny that they have done anything wrong.'"  *Sanford v. Memberworks, Inc.*, 625 F.3d

19  550, 558 (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d. 1120, 1124 (9th Cir.

20  2009)).  To avoid dismissal, the complaint must describe the time, place, and specific content of

21  the false representations and identify the parties to the misrepresentations.  *Id.*; *Dooms v. Federal*

22  ―――――――――――――――――

23              [6] Even if plaintiffs could somehow claim that they relied on MERS' allegedly false
assignment, this is insufficient in light of the cases that recognize MERS' authority to act as
nominee and/or beneficiary.  *See Cervantes v. Countrywide Home Loans, Inc.* 656 F.3d at 1044;

24  *Pantoja v. Countrywide Home Loans*, 640 F. Supp. 2d 1177, 1188–89 (N.D. Cal. 2009);
*Hensley v. Bank of New York Mellon*, No. 1:10–CV–1316 AWI SMS,  2011 WL 2118810, at *2

25  (E.D. Cal. May 27, 2011) (MERS has authority to assign beneficial interest); *Gomes v.*
*Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1156 n.7 & 1157, *cert. denied*, 132 S.C.

26  419 (2011) (MERS acts as agent of the lender).

*Home Loan Mortgage Corporation*, No. CV F 11-0352 LJO DLF, 2011 WL 1232989, at *14 (E.D. Cal. Mar. 31, 2011).  The FAC satisfies most of Rule 9(b)'s requirements: it identifies the allegedly false representations and describes when plaintiffs received them.  Plaintiffs will be given leave to amend this claim of fraud against Aurora only.

E. <u>Unjust Enrichment</u>

Plaintiffs allege that defendants retained the benefits from charging higher interest rates, fees, rebates, kick-backs, profits, gains, and yield spread premium fees unrelated to the settlement services provided at closing.   FAC ¶ 136.  They also claim that "[d]efendants have been additionally enriched by the receipt of payment from third parties, including, but not limited to, investors, insurers, the United States Department of the Treasury, the United States Federal Reserve, the FDIC and other banks."  *Id*. ¶ 138.

Defendants argue that to the extent these claims stem from the purported fraud in the loan origination process, they are barred by the statute of limitations.  They are correct: to the extent the unjust enrichment claim is based on the loan origination, it is subject to the three year statute of limitations for fraud.  *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 347 (2008).   In light of plaintiffs' failure adequately to plead their entitlement to equitable tolling, this claim is dismissed with prejudice.

Moreover, the elements of an unjust enrichment claim are "'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008) (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).  Plaintiffs have made no showing that they are somehow entitled to claim that defendants' alleged receipt of payments from third parties implicates them.  This claim is dismissed with prejudice.

F. <u>RICO</u>

Plaintiffs allege that each defendant is an "enterprise Defendant;" that defendants' use of multiple corporate entities and concerted and predetermined actions constitutes an

1    enterprise designed to perpetrate a fraud by the creation of fraudulent loan documents; that the

2    predicate acts "cluster around violations of federal law involving mortgage lending, bank

3    regulations, and consumer credit laws;" that other predicate acts include bank fraud and mail

4    fraud; that defendants converted plaintiffs' note and Deed of Trust to a mortgage backed

5    security; that defendants charged plaintiffs for insurance, which has paid the Note, "thereby

6    falsely claiming a 'default' on the obligation;" these acts affected interstate commerce; and all

7    defendants committed two or more of the offenses.  FAC ¶¶ 143-151.

8          Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or

9    associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct

10   of such enterprise's affairs through a pattern of racketeering activity."  "Racketeering activity" is

11   defined as any one of certain "generically specified criminal acts as well as the commission of

12   one of a number of listed predicate offenses."  *Sosa v. Directv, Inc.*, 437 F.3d 923, 939 (9th Cir.

13   2006).  A "pattern of racketeering activity" requires at least two acts.  18 U.S.C. § 1961(1), (5) &

14   (6).

15         Although § 1962 defines a crime, a plaintiff may seek civil remedies for RICO

16   violations if he has been "injured in his business or property by reason of a violation of section

17   1962. . . ."  18 U.S.C. § 1964(c).  The elements of a RICO claim are "(1) conduct; (2) of an

18   enterprise; (3) through a pattern (4) of racketeering activities (known as 'predicate acts');

19   (5) causing injury to the plaintiff's 'business or property.'"  *Grimmett v. Brown*, 75 F.3d 506,

20   510 (9th Cir. 1996).  The fifth element has two subparts: the plaintiff must show that the injury

21   was proximately caused by the conduct and that he has suffered a concrete financial loss.  *Chaset*

22   *v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).

23         In addition, under §§ 1962(d) and 1964(c), a person may be civilly liable if he

24   conspired to violate any of the subsections of § 1962.  *Beck v. Prupis*, 529 U.S. 494, 500 (2000).

25   A RICO conspiracy presupposes the existence of a substantive violation of RICO, but a

26   conspirator may be liable even if he does not commit or agree to commit "the two or more

14

1  predicate acts requisite to the underlying offense." *Salinas v. United States*, 522 U.S. 52, 65

2  (1997); *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

3        Defendants argue that plaintiffs' claims cannot withstand the motion to dismiss.

4  As noted, plaintiffs claim that the predicate offenses are bank and mail fraud, but have utterly

5  failed to identify which acts constitute either wire fraud or bank fraud.  This is especially

6  problematic, as the heightened pleading standards of Rule 9(b) apply when the RICO predicate

7  acts are acts of fraud.  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004)

8  (citing *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1989)).  Under Rule

9  9(b)'s requirement, plaintiffs must plead with particularity the time, place, and manner of each

10  act of fraud, as well as the role of each defendant in each scheme. See FED.R.CIV.P. 9(b); *Sun*

11  *Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir.1987) (complaint pleaded fraud

12  with sufficient particularity by specifically alleging four instances of mail fraud, including "the

13  dates on which the letters were written, by whom and to whom the letters were sent, the letters'

14  content, and the letters' role in the fraudulent scheme").  Moreover, to the extent plaintiffs rely

15  generally on predatory lending and the creation of false documents, they have not pleaded a

16  RICO violation. *See Ohlendorf v. American Brokers Conduit,* No. CIV. S–11–293 LKK/EFB,

17  2012 WL 718682, at *11–12 (E.D.Cal. Mar. 5, 2012) ("Neither fraud, in and of itself, nor the

18  creation of fraudulent loan documents are predicate offenses under RICO."); *Derakhshan v.*

19  *Mortgage Electronic Registration Systems*, No. SACV08–1185 AG (RNBx), 2009 WL 3346780,

20  at *4 (C.D.Cal. Oct. 13, 2009) (predatory lending is not a predicate offense for RICO).

21      G.  <u>Wrongful Foreclosure</u>

22        In the order dismissing the complaint, the court rejected most of plaintiffs' claims

23  about the role of MERS and the chain of title, but did find that although the foreclosure was not

24  void, it might have been voidable because the Notice of Default was recorded before Quality was

25  substituted as trustee.  ECF No 56.  The court concluded, however, that no claim for wrongful

26  foreclosure could proceed because plaintiffs had not alleged the ability to tender, which is an

1   element of a claim of wrongful foreclosure.  Plaintiffs' wrongful foreclosure claim was

2   dismissed with leave to amend only "if they can in good faith allege that they have the

3   willingness and ability to meet the tender requirement."  *Id*. at 34.  Plaintiffs have utterly failed

4   to address their ability to tender, yet have realleged the same claims of wrongful foreclosure this

5   court has previously rejected.  They argue only that the egregious facts of this case excuse the

6   tender requirement.  These facts, however, are those previously offered in support of the claim of

7   wrongful foreclosure, which the court found to be unavailing.

8        The additional arguments plaintiffs have raised about the foreclosure do not

9   persuade the court they have stated a claim.  They argue that MERS's corporate assignment of the

10  beneficial interest to Aurora, which was recorded in Placer County in 2010, "was signed by

11  MERS's robo-signer Jo Ann Rein" without notarization on December 15, 2008.  FAC ¶ 45; *see*

12  *also* ECF No. 60-1 at 48-49 (assignment signed by Rein in 2008, notarized in 2010 and then

13  recorded).  Although this aspect of the documentation seems irregular, it does not appear to

14  undercut the validity of the assignment.  *Wilson v. Pacific Coast Title Ins. Co.*, 106 Cal. App.2d

15  599, 602 (1951) (unacknowledged and unrecorded assignment of deed of trust, acknowledged two

16  years after it was signed, effected "valid transfer of title"); CAL. CIV. CODE § 2934 (upon

17  recordation, assignment of beneficial interest under deed of trust gives constructive notice of its

18  contents to all persons); ECF No. 60-1 at 12 (note and Deed of Trust may be sold without notice

19  to borrower).  This court has rejected claims attacking MERS' ability to assign and substitute,

20  and claims that a failure to record under California Civil Code section 2932.5 invalidates the sale;

21  plaintiffs have presented nothing which persuades the court to reconsider its prior decisions at this

22  time.  *Wadhwa v. Aurora Loan Services*, Civ. No. S-11-1784 KJM KJN, 2012 WL 762020, at

23  *11-16 (E.D. Cal. Mar. 8, 2012).  The claim of wrongful foreclosure is dismissed without leave to

24  amend.

25  /////

26  /////

H.  <u>Quiet Title</u>

Tender of the indebtedness is required to quiet title in California.  *Aguilar v. Boci*, 39 Cal.App.3d 475, 477 (1974) ("the cloud upon his title persists until the debt is paid"); *Kelley v. Mortgage Electronic Registration Systems Inc*., 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009).  As with the wrongful foreclosure claim, the court rejects plaintiffs' argument that the tender requirement should be waived.  Their failure to tender the amount of the indebtedness despite being on notice of their need to means this claim is dismissed without leave to amend.

I.  *<u>Lis Pendens</u>*

Aurora asks that the *lis pendens* recorded on the property be expunged.

"A lis pendens is a recorded document giving constructive notice that an action has been filed affecting right or title to possession of the real property described in the notice."  *Park 1000 Investment Group II v. Ryan*, 180 Cal.App.4th 795, 807 (2010) (internal citation & quotation omitted).  A court should expunge a lis pendens if it determines that the action "as pled lacks evidentiary merit . . . " *Id*.; *see also Palmer v. Zaklama*, 109 Cal.App.4th 1367, 1378 (2003).

In this case, the only claim that may be realleged in a further amended complaint is fraud, which will not affect the right or title to possession of the property.  The request to expunge is granted.

IT IS THEREFORE ORDERED:

1.  The motion to dismiss filed by defendants Greenpoint and Marin (ECF No. 59) is granted and the claims against them are dismissed with prejudice;

2.  The motion to dismiss filed by defendant MERS is granted and the complaint against it is dismissed with prejudice;

3.  The motion to dismiss filed by defendant Aurora (ECF No. 58) is granted and the complaint is dismissed with prejudice as to plaintiffs' claim of fraud;

/////

1          4.  The motion to expunge the *lis pendens* filed by defendant Aurora (ECF No. 58)

2   is granted; and

3          5.  Plaintiffs' second amended complaint, limited to their fraud claim against

4   Aurora, is due within twenty-one days of the date of this order.

5   DATED:  September 30, 2012.

6

7

8                               UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26