UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN PEDERSEN and SONIKA TINKER,<br><br>                Plaintiffs,<br><br>        v.<br><br>GREENPOINT MORTGAGE FUNDING, INC., a New York Corporation; MARIN CONVEYANCING CORP.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; QUALITY LOAN SERVICE CORP.; AURORA LOAN SERVICES; LSI TITLE COMPANY; GREENPOINT MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR1; and DOES 1 THROUGH 20,<br><br>                Defendants. | No.  2:11-cv-00642-KJM-EFB<br><br><br><br><br><br>ORDER |

I.        FACTUAL AND PROCEDURAL BACKGROUND

            On March 8, 2011, plaintiffs filed an action against Aurora Loan Services, LLC (Aurora) and Mortgage Electronic Registration Systems (MERS), as well as Greenpoint Mortgage Funding, Inc. (Greenpoint), Marin Conveyancing Corp. (Marin), Quality Loan Service Corp., LSI Title Company, Greenpoint Mortgage Funding Trust Mortgage Pass-Through

1

Certificates, Series 2007-ARI, and twenty Doe defendants,[1] alleging violations of the Homeowners Equity Protection Act (HOEPA), 15 U.S.C. § 1639, *et seq.*; the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*; the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.* and Regulation Z § 226.4; fraudulent misrepresentation; breach of fiduciary duty; unjust enrichment; civil conspiracy; RICO; quiet title; usury and fraud; wrongful foreclosure; and breach of trust instruments.

On April 7, 2011, plaintiffs filed a motion for a temporary restraining order, alleging that a trustee's sale of their house was scheduled for April 11, 2011, but that defendants did not have the legal authority to foreclose on plaintiffs' property. (ECF 9.) Although plaintiffs gave defendants notice of their application for a restraining order, defendants did not respond. (ECF 14.) The court denied the application on April 8, 2011. (ECF 15.)

Defendants Aurora and MERS filed a motion to dismiss and to expunge a lis pendens on April 15, 2011, in tandem with a request for judicial notice. (ECF 16, 17.)

On April 20, 2011, plaintiffs filed a motion for a preliminary injunction and on the same day, defendants Quality Loan Service Corporation and LSI Title Company filed Declarations of Non-Monetary Status under California Civil Code § 2924l. (ECF 18.) On May 18, 2011, plaintiffs filed objections to these declarations. (ECF 34.)

On August 29, 2011, the court granted defendants' motion to dismiss, giving plaintiff leave to file an amended complaint as to some of the claims; overruled Quality and LSI

/////

---

[1] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff is warned, however, that such defendants will be dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Id.* (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless plaintiff shows good cause, is applicable to doe defendants. *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27, 2011).

1    Title's declaration of non-monetary status; and denied the motion to expunge the lis pendens. It

2    also denied plaintiffs' motion for a preliminary injunction.  (ECF 56.)

3          Plaintiffs filed their first amended complaint (FAC) on September 16, 2011; it

4    raises seven claims: (1) TILA violations; (2) RESPA violations; (3) fraud; (4) unjust enrichment;

5    (5) civil RICO violations; (6) wrongful foreclosure; and (7) quiet title.  (ECF 57.)

6          On September 30, 2012, the court granted defendant's motion to dismiss, giving

7    plaintiff leave to file an amended complaint as to the fraud claim against defendant Aurora only.

8    (ECF 75.)

9          Plaintiffs filed their second amended complaint (SAC) on October 22, 2012.  (ECF

10   76.)  The complaint is limited to a single cause of action for fraud, but alleges six individual

11   communications, each of which individually alleges fraud.  (*Id.* ¶¶ 42-66.)  The first three

12   representations are workout agreements, which plaintiffs alleged falsely represent they would be

13   considered for a loan modification and that the payments would be applied to the arrearage.  (*Id.*

14   ¶¶ 42-44.)  The fourth representation is that plaintiffs were in default.  (*Id.* ¶¶ 45-46.)  The fifth

15   representation is that Aurora had considered plaintiffs for a HAMP loan.  (*Id.* ¶¶ 47-60.)  The

16   sixth representation is that Aurora had authority to foreclose on plaintiff's home.  (*Id.* ¶ 61.)

17         Defendants moved to dismiss on December 5, 2012, arguing that the complaint

18   exceeded the scope of amendment, failed to meet the requisite specificity requirements, failed to

19   allege the elements of fraud, and that one plaintiff lacked standing.  (ECF 79.)  Plaintiffs opposed

20   the motion on January 4 (ECF 81), 2013, and defendants replied on January 9, 2013.  (ECF 84.)

21         The court now grants defendant's motion in part and denies it in part.

22   II.    LEGAL STANDARDS

23         Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

24   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

25   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

26   under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699

27   (9th Cir. 1990).  A motion to dismiss under this rule may also challenge the sufficiency of fraud

28

3

allegations under the more particularized standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. See *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or which contradicts material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or a matter subject to judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks School of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); compare *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III.   JUDICIAL NOTICE

Defendant asks the court to take judicial notice of a number of documents recorded in Placer County related to 1977 Green Meadow Lane, Meadow Vista, California. The court has previously taken judicial notice of Exhibits 1 and 3 through 7 in its order of September 30, 2012. (ECF 75 at 4-5.) Because Exhibit 2, the Corporate Assignment of the Deed of Trust, does not pertain to the questions before the court, the court declines to take judicial notice of that document.

IV.   ANALYSIS

A.   Standing

Defendant argues initially that Pedersen lacks standing[2] because he was not a party to the Deed of Trust or Promissory Note, citing as support *Zinnel v. CitiMortgage, Inc.*, No. CIV S-10-2406 GEB DAD PS, 2011 WL 4048517, at *7 (E.D. Cal. Sept. 9, 2011) and *Thomas v. Guild Mortg. Co.*, No. CV 09-2687-PHX-MHM, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011). (ECF 79 at 8.) Plaintiffs respond that because the house was acquired during plaintiffs' marriage it is community property, and therefore Pedersen has standing, citing *Odone v. Marzocchi*, 34 Cal.2d 431, 435 (1949) and *Mears v. Mears*, 180 Cal.App.2d 484, 499 (1st Dist. 1960), *disapproved on other grounds, See v. See*, 64 Cal. 2d 778, 892 (1966) (ECF 81 at 8.) Additionally, plaintiffs argue that because payments for the house were made from community funds, Pedersen has developed an interest through the source of the payments as well. (*Id.*)

Plaintiffs' argument that the house was purchased during the marriage cannot be credited. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). The Deed of Trust, submitted in defendant's Request for Judicial Notice (ECF 80), identifies "Sonika J. E. Tinker, a single woman" as the borrower. (ECF 80, Ex. 1 at 1.) Absent evidence that Tinker and

---

[2] Defendant bases its motion exclusively on Federal Rule of Civil Procedure 12(b)(6), and does not contest plaintiff's allegations. (ECF 79 at 2, 8.) The court therefore understands defendant's argument to go only to sufficiency of the pleadings, and not jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

1    Pedersen were in fact married when the house was purchased, the court will not assume Tinker's

2    description in the Deed of Trust she signed is erroneous.   (*Id.* at 14.)

3            Where community funds are used to make payments on a loan for separate

4    property, the community accumulates an interest in the property.  *In re Marriage of Marsden*,

5    130 Cal. App. 3d 426, 436-37 (Ct. App. 1982) (citing *In re Marriage of Moore*, 28 Cal.3d 366,

6    371-72 (1980)).   Although a community interest may be insufficient to support a claim for

7    breach of contract where the plaintiff is not a party to the contract, it is sufficient to state other

8    claims, including tort claims.  *Gutierrez v. State Farm Mut. Ins. Co.*, 5:11-CV-03111 EJD, 2012

9    WL 398828, at *2-3 (N.D. Cal. Feb. 7, 2012),

10           Defendant's cases on this point are distinguishable.  *Cleveland v. Deutsche Bank*

11   *Nat. Trust Co.*, 08CV0802JM(NLS), 2009 WL 250017, at *2 (S.D. Cal. Feb. 2, 2009), cited by

12   *Thomas*, is the most applicable to the present situation, and in that case the court denied standing

13   entirely.  However, in that case plaintiffs did not suggest payments were made from community

14   property.  *Thomas* and *Zinnel* dealt with relationships between a father and daughter, and

15   beneficiary and trust, respectively.  *Thomas*, 2011 WL 676902, at *4; *Zinnel*, 2011 WL 4048517,

16   at *7.  Those cases are therefore similarly inapplicable because California's community property

17   laws pertain only to relationships between spouses.  *See* CAL. FAM. CODE § 751.

18           However, plaintiffs do not successfully allege either of the facts critical to their

19   theory of Pedersen's standing.  First, plaintiffs fail to allege that they are or ever have been

20   married.  (ECF 76.)  Second, plaintiffs make allegations that can be construed as suggesting

21   community funds were used to pay for the mortgage.  (*See id.* ¶ 6.)  However, the complaint also

22   contains references suggesting that plaintiff Tinker alone made payments, or creating further

23   ambiguity.  (*See, e.g.*, *id.* ¶¶ 7, 9, 13, 15.)  Generally, it appears that "Tinker" and "Plaintiffs" are

24   used interchangeably in the complaint, preventing the court from drawing a conclusion as to

25   whether community funds were used to make payments.  (*Compare id.* ¶¶ 13, 15, 19.)

26   /////

27   /////

28

1    The court therefore dismisses plaintiff Pederson from the lawsuit for failure to

2    allege standing, but grants leave to amend one more time, if amendment is possible consonant

3    with Federal Rule of Civil Procedure.

4           B.      Scope of Amendment

5           Defendant argues that the court permitted amendment only as to the fraud claims

6    relating to the workout agreements.  (ECF 79 at 10-11.)  Plaintiffs make no response.  (ECF 81;

7    ECF 84 at 5.)  The scope of permissible amendment was explained in the court's order on

8    September 30, 2012: "[p]laintiffs will be given leave to amend this claim of fraud [as to the

9    Forbearance Agreements] against Aurora only."  (ECF 75 at 13.)  The fourth representation in the

10   fraud claim is that plaintiffs were in default, and the explanation of the falsity of the statement

11   suggests plaintiffs seek to prove Aurora was not in fact authorized to collect on the loan.  (ECF 76

12   ¶ 45.)  The sixth representation is that Aurora owned the note and was authorized to collect on it.

13   (*Id.* ¶ 61.)  These alleged false representations appear to the court to be an attempt to replead the

14   charges regarding the MERS system and chain of title which were specifically dismissed without

15   leave to amend.  (ECF 75 at 15-16.)  Upon consideration of the record of this case thus far, the

16   court will not accept them now.

17          District courts have inherent power to manage their dockets.  *Atchison, Topeka &*

18   *Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998).  Indeed, "[a]ll federal

19   courts are vested with inherent powers enabling them to manage their cases and courtrooms

20   effectively and to ensure obedience to their orders."  *Aloe Vera of Am., Inc. v. United States*,

21   376 F.3d 960, 964-65 (9th Cir. 2004) (per curiam) (internal quotations omitted) (quoting *F.J.*

22   *Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir.  2001)).

23   Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . .

24   any redundant, immaterial, impertinent, or scandalous matter."  "'Immaterial matter is that which

25   has no essential or important relationship to the claim for relief or the defenses being pleaded

26   [, and] [i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the

27   issues in question.'"  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other*

28

7

*grounds*, 510 U.S. 517 (2004) (internal citation omitted).  The court strikes the fourth and sixth representations from the complaint as immaterial, because they pertain to the title claim previously dismissed without leave to amend, and not to the remaining claim for fraud in the workout agreements.

>        C.        Economic Loss

>        Defendant argues that all claims are barred by the economic loss doctrine.  (ECF 79 at 9-10.)  Plaintiffs also do not respond to this argument.  (ECF 81; ECF 84 at 5.)  Defendant cites *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 667 (1988), *Applied Equip. Corp. v. Litton Saudi Arabi Ltd.*, 7 Cal.4th 503, 517 (1994), *Aas v. Super. Ct.*, 24 Cal.4th 627, 643 (2005), *Cal. Dept. of Toxic Substances v. Payless Cleaners*, 368 F.Supp.2d 1069, 1084 (E.D. Cal. 2005), and *United Guaranty Mortg. Indemnity v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163 (C.D. Cal. 2009).

>        The economic loss doctrine applies in "strict liability and negligence cases," as opposed to tort cases generally.  *Aas*, 24 Cal.4th at 643.  The doctrine does not apply in cases of fraud, because "parties cannot, and should not, be expected to anticipate fraud and dishonesty in every transaction."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 993 (2004).  In the instant case, plaintiffs allege that Aurora fraudulently represented the workout payments would be used to reduce their arrearages, but used the payments for another purpose.  (ECF 76 ¶¶ 21-22, 42-44.)  Where, as here, fraud is alleged to have induced the victim to enter into the contract in the first place, the economic loss rule is no bar to the action.  *United Guaranty*, 660 F. Supp. 2d at 1188 (*citing Lazar v. Super. Ct*, 12 Cal. 4th 631, 645 (1996)).

>        The cases cited by defendant are either inapplicable or support this conclusion. *Foley* discusses the interaction between contract and tort law only broadly and in the context of claims for wrongful discharge and breach of the covenant of good faith and fair dealing, neither of which are applicable to the present case.  47 Cal.3d at 665-71, 682-700.  In *Applied Equip. Corp.*, the issue was whether to recognize a tort for conspiracy to interfere with a contract, brought against the breaching party in the contract, again applicable only for broad statements

that did not bear on the particulars of intentional torts.  7 Cal.4th at 507-08.  *Aas*, which

considered the application of the economic loss doctrine in a negligence case, suggests implicitly

that the economic loss doctrine does not apply to intentional torts, because when the court spoke

generally of the doctrine it mentioned its application only in "strict liability and negligence

cases," 24 Cal.4th at 643.  *Payless Cleaners* noted the same limitation on the economic loss

doctrine.  368 F. Supp. 2d at 1084.  Finally, as noted above, *United Guaranty* affirmatively

recognized that economic loss was inapplicable when fraud induces a party to enter a contract.

660 F. Supp. 2d at 1188.

       D.      Insufficiency of Pleadings.

       Under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff who alleges

fraud "must state with particularity the circumstances constituting the fraud," but may describe

generally the state of mind animating the fraud. The pleading must "'be specific enough to give

defendants notice of the particular misconduct . . . so that they can defend against the charge and

not just deny that they have done anything wrong.'" *Sanford v. Memberworks, Inc.*, 625 F.3d 550,

558 (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d. 1120, 1124 (9th Cir. 2009)).

To avoid dismissal, the complaint must describe the time, place, and specific content of the false

representations and identify the parties to the misrepresentations. *Id.*; *Dooms v. Federal Home

Loan Mortgage Corporation*, No. CV F 11-0352 LJO DLB, 2011 WL 1232989, at *14 (E.D. Cal.

Mar. 31, 2011).  In instances of corporate fraud, plaintiffs must plead the misrepresentations with

particularity but may plead the roles of individual defendants based on information and belief.

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

       Defendants argue that the fifth and sixth representations in the current complaint

are insufficiently pled.  (ECF 79 at 11-13.)  Because the sixth representation has been stricken,

the court need consider only the fifth representation.

       Defendant notes a number of insufficiencies in the pleading of the fifth

representation.  First, names or other identifying characteristics of the persons responsible are

entirely lacking.  Second, the dates of the conversations are not adequately pleaded.  Third, the

letter entered by plaintiffs as evidence of these conversations matches the allegations regarding the conversations in neither date nor content.  Plaintiffs respond by attaching records of the first names, employee numbers, and dates for each conversation, and requesting permission to amend their complaint if the complaint is deficient.

The complaint is indeed deficient.  First, plaintiffs have not provided any identifying information for the employees with whom they dealt, even though they have the information in their possession. Second, plaintiffs must plead the "when" of the conversations and written communications, which also are within plaintiffs' possession.  There appear to be at least seven conversations comprising the fifth representation, but only two dates are given: January 2011 for one specific conversation, and January 6, 2011, for the group of conversations. However, the court does not find the deficiencies in the letter, received a year before the events comprising the fraud, injurious to the complaint.  The complaint does not need to be supported by evidence, but rather merely needs to allege sufficient facts; any assertions that the evidence is insufficient are premature.

In summary, plaintiffs have successfully pleaded the specific content of each conversation alleged within the fifth representation.  However the conversations lack specific dates, the first name of the employee and/or their employee number, information plaintiffs have demonstrated is within their possession.

Rule 15(a) allows that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a).  Accordingly, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Forman v. Davis*, 371 U.S. 178, 182 (1962).  Because the necessary information

/////

is demonstrably within plaintiffs' possession, they will be granted leave to amend this

representation without including claims the court has dismissed with prejudice.

The court therefore dismisses the fourth representation, which is truly an

independent claim, with leave to amend one more time.

E.     Necessary Elements of the Fraud Claim

Finally, defendant argues that the first three false representations fail to establish

any of the elements of fraud.  A claim for fraud has five elements: (1) the defendant made a false

representation as to a past or existing material fact; (2) the defendant knew the representation was

false at the time it was made; (3) in making the representation, the defendant intended to deceive

the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the

plaintiff suffered resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *Ali v.

Humana, Inc.*, No. 12-cv-00509-AWI-GSA, 2010 WL 2376972 at *5 (E.D. Cal. Jun. 22, 2012).

1.     Representations

Plaintiffs allege that all three workout agreements represented (1) that payments

would be applied to the mortgage arrearages, and (2) that if plaintiffs provided their financial

information, Aurora would consider their request for a loan modification.  (ECF 76 ¶¶ 42-44.)

Plaintiffs have provided the workout agreements.

Initially, defendant argues that the first workout agreement was not accepted, but

rather modified by Tinker.  (ECF 79 at 14.)  This objection would presumably apply to the second

workout agreement as well, where a section of the agreement was similarly stricken.  (ECF 76 Ex.

B at 2 & Ex. C at 3.)  The court overrules this objection at this stage of the litigation.  California

Civil Code § 1584 states that "acceptance of the consideration offered with a proposal, is an

acceptance of the proposal."  Further, "[a] voluntary acceptance of the benefit of a transaction is

equivalent to a consent to all the obligations arising from it, so far as the facts are known, or

ought to be known, to the person accepting."  CAL. CIV. CODE § 1589; *see also Endurance Am.

Specialty Co. v. Lance-Kashian & Co.*, CV F 10-1284 LJO BAM, 2011 WL 5417103, at *16

(E.D. Cal. Nov. 8, 2011).  Because it has been alleged that defendant accepted plaintiffs'

1   payments (ECF 76 ¶ 13), plaintiffs have successfully alleged a contract of some form existed

2   between the parties.  Although it may not yet be clear exactly what the terms of the contract were

3   with regard to the altered sections, those sections are irrelevant to the representations plaintiffs

4   allege.  Therefore, the contents of the documents were representations by defendant once

5   defendant accepted plaintiffs' money.

6          Defendant alternatively appears to argue that because plaintiffs allege no

7   acceptance of the workout agreements, the complaint is deficient.  However, plaintiffs did allege

8   that the workout agreements were representations, a statement of fact, and were not required to

9   plead the legal theories supporting that contention.  FED. R. CIV. P. 8(a)(1).

10          The first workout agreement is submitted as Exhibit B to the SAC.  The first

11   representation alleged, that payments made would be applied to the mortgage arrearages, is an

12   obvious and fundamental element of the workout plan.  The representation appears throughout the

13   plan, but the clearest expression is on page 4, paragraph 9, of the agreement and in paragraph a.1

14   of the attached repayment plan.  However, the court cannot locate any representation of

15   consideration for a loan modification within the document, and plaintiffs have not specified any

16   representation in their opposition.  (ECF 81 at 7-8.)  Therefore, for the first workout agreement

17   the court will consider only the representation that the payment would be applied to the arrearages

18   and will strike the claim that the workout agreement included an assurance of a loan modification.

19          The second workout agreement is submitted as Exhibit C to the SAC.  As

20   defendant notes, the workout agreement makes clear in the attached repayment plan, paragraph

21   a.2, that completion of the workout agreement would not guarantee a loan modification.  (ECF 79

22   at 15.)  However, paragraph a.2 does state that:

23          [I]t shall be the Customer's responsibility to provide Aurora Loan
            Services with accurate and complete financial information in
24          support of the Customer's request for a loan modification or other
            workout option.  Customer <u>must</u> also provide Lender with a
25          completed Borrower's Financial Statement and proof of income
            (copies of Customer's two (2) most recent pay stubs) to enable
26

27   /////

28

12

1
2

> Lender to properly evaluate Customer's current financial situation and the Customer's request for a loan modification or other loan workout option."

3   (ECF No. 76-2 at 23 (emphasis in original)).

4           A fair reading of this section of the contract is that it requires that if the above

5   information were submitted, defendant would perform an evaluation.  The minor detail that

6   plaintiffs were required to send information to defendant does not materially change the

7   representation.  The second workout agreement contains the representation that plaintiffs would

8   be considered for a loan modification.  Additionally, as with the first workout agreement, the

9   second workout agreement represents that payment would be applied to the arrearages, on page 4,

10  paragraph 10, and in paragraph a.1 of the attached repayment plan.

11          The third workout agreement, contained in Exhibit D to the SAC, is identical to

12  the second in all material respects, including the paragraphs that contain the representations.

13  Therefore, the third workout agreement also represents both that plaintiffs would be considered

14  for a loan modification and that payments would be applied to the arrearages.

15          In summation, the first workout agreement represented only that payments would

16  be applied to the arrearages.  The second and third workout agreements represented both that

17  payments would be applied to the arrearages and that plaintiffs would be evaluated for a loan

18  modification, once they sent in the necessary information.  *See* ECF No. 76-2 at 36.

19          2.      Falsity

20          Defendant argues that because plaintiffs acknowledge they were considered for

21  loan modifications, the representation that they would be considered for a loan modification

22  cannot be false.  Specifically, defendants note that plaintiffs allege they were denied loans on

23  March 12, 2010 and on January 6, 2011.  (ECF 79 at 14; ECF 76 ¶¶ 14, 18.)  However, the

24  specified paragraphs merely state that defendant denied plaintiffs loan modifications.  The clear

25  thrust of the complaint with regards to the representation plaintiffs would be evaluated for a loan

26  modification is that instead of sincerely evaluating plaintiff's suitability, defendant simply

27  /////

28

1   rejected plaintiffs reflexively.  (*Id.* ¶ 19.)  Therefore, the mere fact that a denial letter was sent

2   does not necessarily contradict plaintiffs' claims at the pleading stage.

3          Defendant does not take issue with plaintiffs' allegations as to the representation

4   regarding application of payments to the arrearage.  (ECF 76 ¶ 21.)  It therefore appears clear that

5   plaintiffs have successfully alleged falsity as to that representation.

6          3.      Knowledge of Falsity and Intent to Deceive

7          Neither party addresses these elements.  They are alleged in paragraph 21 of the

8   SAC.

9          4.      Reliance

10          Defendants argue it is unclear how plaintiffs relied on their representations.  (ECF

11   79 at 14.)  Plaintiffs state they relied on the representations by entering into the workout plans.

12   (ECF 81 at 7-8.)  Defendants offer no response (ECF 84 at 7-8), and if the workout agreements

13   did not contribute to reducing the debt or obtaining a loan modification, plaintiffs would have

14   lacked incentive to participate in them.  (ECF 76 ¶¶ 33-36.)

15          5.      Damages

16          Lastly, defendant argues that plaintiffs were unharmed by any representations,

17   because they have not alleged that but for the deception they could have either repaid the

18   arrearage or ceased to be in default.  (ECF 79 at 14-15.)  Plaintiffs respond broadly that they were

19   damaged.  (ECF 81 at 8.)  The SAC alleges damages in paragraphs 64 and 66.  Where delinquent

20   homeowners make payments on their loan in exchange for a promised benefit, those payments are

21   damages when the promise is broken.  *Menan v. U.S. Bank Nat. Ass'n*, CIV. S-12-0109 LKK,

22   2013 WL 595349, at *5 (E.D. Cal. Feb. 14, 2013).

23          Therefore, plaintiffs have successfully alleged fraud in the workout agreements.

24   Defendant's motion as to the workout agreements is denied.

25   /////

26   /////

27   /////

28

14

V.      CONCLUSION

        For the foregoing reasons, defendant's motion to dismiss is GRANTED as to plaintiff Pedersen and DENIED as to the claim of fraud, though the fourth, fifth and sixth representations are stricken from the complaint with leave to amend only the fifth representation. Any amended complaint is due within fourteen days of the date of this order.

        IT IS SO ORDERED.

DATED:  August 1, 2013.

_____
UNITED STATES DISTRICT JUDGE